UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELENOR NANIA, )
    Plaintiff )
    v. ) Civil Action No. 00 CV 12298-RGS
     )
ARTERY CLEANERS CORP., )
    Defendant )

## ANSWER AND DEMAND FOR TRIAL BY JURY

### Jurisdiction

1.    Defendant admits the allegations contained in Paragraph 1 of the Complaint.

2.    Defendant admits the allegations contained in Paragraph 2 of the Complaint as it relates to Count II only. Defendant denies the allegations contained in Paragraph 2 of the Complaint as it relates to Count III.

### Parties

3.    Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4.    Defendant admits the allegations contained in Paragraph 4 of the complaint, except to deny the allegation that the name of the Defendant is Artery Cleaners Corp.. Defendant's name is Artery Cleaners and Launderers Corp..

### Facts

5.    Defendant admits the allegations contained in Paragraph 5 of the Complaint as it relates to the Plaintiff's period of employment. Defendant denies so much of Paragraph 5 as it relates to the Plaintiff's alleged position with the company.

6.    Defendant denies the allegations contained in Paragraph 6 of the Complaint.

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

F I L E D
IN CLERK'S OFFICE

Mar 26   2 24 PM '01

U.S. DISTRICT COURT
DISTRICT OF MASS.

ALFRED AND DELORES RAYMOND,
individually and on behalf of all others similarly
situated,

                     Plaintiff,

v.

XCHANGE, INC. (f/k/a EXCHANGE
APPLICATIONS, INC.) ANDREW J.
FRAWLEY,  F. DANIEL  HALEY,
ROBIN GREEN, and DAVID G.
McFARLANE,
                     Defendants.

Case No.

# 01 - 10507 RWZ

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

      Plaintiff, by their attorneys, make the following allegations upon information and belief

(except as to the allegations specifically pertaining to the named plaintiffs and their counsel), based

upon the facts alleged below, which are predicated upon, *inter alia*, a review and analysis of

relevant filings made by or on behalf of Xchange, Inc., formerly known as Exchange Applications,

Inc. ("Xchange" or the "Company") with the Securities and Exchange Commission ("SEC"), press

releases, news and analyst reports, and an investigation undertaken by plaintiffs' counsel.

Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth

below after a reasonable opportunity for discovery.

### JURISDICTION AND VENUE

      1.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of

the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a) (the "Exchange Act") and

Rule 10b-5, 17 C.F.R. 240.10b-5 promulgated under Section 10(b) by the SEC.



2.     This Court has jurisdiction of this action pursuant to Section 27 of the Exchange Act, as amended, 15 U.S.C. §78aa.

3.     Venue is properly laid in this judicial district pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b) and (c).  The acts and conduct complained of, including the preparation, issuance and dissemination of materially false and misleading information to the investing public, occurred in substantial part in this judicial district.  In addition, defendant Xchange maintains its corporate headquarters in this District in Boston, Massachusetts.

## PARTIES

### *Plaintiffs*

4.     Plaintiffs Alfred & Delores Raymond  purchased common stock of Xchange, Inc. during the Class Period described herein as reflected in her Certification attached hereto, and suffered damages as a consequence.

### *Defendants*

5.     Defendant Xchange develops and sells software and services in the eCustomer Relationships Management ("eCRM") industry, to assist companies doing business via the Internet with personalized customer communication and marketing compatibilities.  Xchange is organized under the laws of the State of Delaware and maintains its corporate headquarters at 89 South Street, Boston, Massachusetts 02111.  Xchange common stock is publicly traded on the NASDAQ National Market System, an efficient, open and developed market, under the trading symbol "EXAP."  As of August 10, 2000, Xchange had approximately 31,465,785 shares of its common stock issued and outstanding.

6.     Defendant Andrew J. Frawley ("Frawley") is Chief Executive Officer, Chairman

of the Board, and a founder of the Company.   Frawley beneficially owns approximately 1,521,502, or 6%, of the Company's common stock.

7.     Defendant F. Daniel Haley ("Haley") is currently Xchange's Chief Strategy Officer. During the Class Period, Haley served as Vice President for Growth and Emerging Markets and was designated as the Company's "Chief Deal Officer."  Haley reports directly to Defendant Frawley.

8.     Defendant David F. McFarlane ("McFarlane") was the Company's President and Chief Operating Officer throughout the Class Period.  McFarlane resigned as President and COO in January 2001.

9.     Defendant Robin Green ("Green") served as Senior Vice President, Solution Services throughout the Class Period and was appointed General Manager of the ASP Business Unit in October 2000.

10.     Defendants Frawley, Haley, McFarlane and Green are referred to collectively herein as "the Individual Defendants."

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

11.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of herself and on behalf of all persons who purchased Xchange common stock (the "Class") from July 24, 2000 through September 29, 2000 (the "Class Period").  Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such

3

excluded party.

12.     The members of the Class are so numerous that joinder of all members is impracticable.   There are over 31 million shares of Xchange common stock outstanding. Throughout the Class Period, Xchange common stock was actively traded on the NASDAQ National Market System.  The precise number of class members is unknown to Plaintiffs at this time but class members are believed to number in the thousands.  In addition, the names and addresses of the class members can be ascertained from the books and records of XChange and/or its stock transfer agent.

13.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have no interests antagonistic to her fellow Class members. Plaintiffs has retained competent counsel experienced in class action litigation under the securities laws to further ensure such protection and intend to prosecute this action vigorously.

14.     Plaintiffs' claims are typical of the claims of the other members of the Class because Plaintiffs' and all the class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants.

15.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged.  Plaintiffs know of no difficultly which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

16.     Common questions of law and fact exist as to all members of the Class and

4

predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

        a.      Whether the federal securities laws were violated by defendants' acts as alleged herein;

        b.      Whether public statements, documents, filings and releases disseminated by defendants to the investing public concerning Xchange omitted and/or misrepresented material facts; and

        c.      The extent of damages sustained by members of the Class and the appropriate measure thereof.

## FACTUAL ALLEGATIONS

### Background

17.    At least by July 24, 2000, Xchange was confronted with several known adverse events and trends that required the Company to adopt more conservative revenue recognition methods with respect to a steadily increasing portion of its new contracts than had historically been the case in order for their publicly reported financial statements to comply with generally accepted accounting principles ("GAAP").

18.    While the majority of the Company's revenue on software sale contracts had historically been fully recognized immediately upon execution of the contract and delivery of the subject software, prior to and continuing throughout the Class Period, the nature of the Company's sales had shifted to contracts which included substantial service components that required the revenue from such contracts be recorded on a "percentage-of-completion" method.  Thus, while investors expected the Company to recognize revenue on the contracts which were announced and

entered into before and during the Class Period as the Company had historically done, contrary to this expectation and pursuant to GAAP, the nature of the contracts entered into by the Company during the Class Period precluded the Company from immediately recognizing revenues upon delivery. Rather, the income stream from these contracts would be deferred and spread out over several quarters or even years.

19. Also, as a consequence of the shift in the mix and nature of the contracts described above, XChange's products and services required increasing degrees of customization and tailoring to specific client needs causing the sales and implementation cycles to lengthen while full product delivery and functionality and customer acceptance was deferred. Accordingly, these factors substantially increased the known risks affecting, and the conditions precedent to, account collectibility.

20. Throughout the Class Period, however, as the Company's revenue recognition problems became aggravated, defendants continued to tout the contracts it entered into, report "record" financial results, make public statements that Xchange was continuing to meet and exceed revenue and profit goals, and misrepresent and omit material facts about Xchange's business, financial results and prospects, all of which perpetrated a fraud on Plaintiffs and the market for Xchange common stock during the Class Period as set forth below.

### Defendants' Fraud During the Class Period

21. On July 24, 2000, Xchange issued a press release over *PR Newswire* in which it announced "record financial results for the second quarter of 2000, its eighth consecutive quarter of increasing pro-forma profitability." In the July 24 release, defendants stated, among other things, the following:

6

Xchange's strong execution on the quarter is exemplified by the following metrics:

Sales to more than 35 companies, including nine existing clients who purchased additional components of the Xchange 4.0 suite for eCRM;

10 percent of orders from new clients were for multiple components of the Xchange 4.0 suite;

40 percent of clients selected Xchange 4.0 on a hosted basis; and

The company signed reseller or Value-Added Service Provider (VASP) deals with nine partners, demonstrating that Xchange is the de facto standard among leading eCRM service providers.

Xchange's total revenue for Q2 2000 was $19.6 million, an increase of 91 percent over Q2 1999. Software revenue increased 121% over Q2 1999 to $13.4 million, and comprised 68 percent of total revenue for the quarter. Services revenue for Q2 2000 was $6.3 million, an increase of 49% over Q2 1999. Pro forma net income, at $0.06 per share excluding costs associated with the amortization of extraordinary items, was up 167% over Q2 1999. Pro forma operating income, at $2.3 million, was up 200 percent over Q2 1999. These results include a two-week stub period for the CustomerAnalytics acquisition, which was announced in early June.

According to Andy Frawley, chairman and CEO of Xchange, "We're pleased to report another record quarter. The Xchange team executed flawlessly on its Q2 plan, achieving continued diversification of our account base, strong growth in our ASP business, and signing up several new key resellers for our eCRM solutions. During the quarter, we added 200 employees and signed on more than 35 clients including Circuit City Stores, Inc., Marks & Spencer and Away.com." Xchange currently employs more than 500 professionals, and has approximately 250 clients in 33 countries.

"Xchange continues to be one of the only profitable companies in the eCRM space," Frawley continued, "which we believe not only gives us an edge with clients and prospects, who enjoy a greater level of comfort when doing business with Xchange, but also provides investors with proof that we're committed to increasing shareholder value."

**Diversified geographies, orders and industries reaffirm Xchange's strength in the marketplace**
Xchange's commitment to increase its international presence, expand its solutions offerings and adapt its solutions for new vertical markets was apparent in Q2 2000. New software customers in Q2 included Bank of Ireland, Bank of Scotland, Libertel, Liberty, Heilig-Meyers, National Geographic and the U.S. Tennis Association. New ASP customers included Away.com, BareEscentuals, FreeShop.com and PictureVision. Xchange sold

7

additional components of its eCRM solutions suite to nine existing clients, including Ameritrade and Bell Atlantic (which has merged with GTE to form Verizon Communications). New and expanded VASP partners, who have purchased Xchange's software and will re-sell it as a service to their own clients, include Acxiom, ClientLogic, Donnelley Marketing, Epsilon, MessageMedia, NetPerceptions and EDS.

Xchange sold eight licenses for Xchange Optimizer, its new, vertical-specific analytics solution; and shipped Xchange Real Time to two clients. "We anticipate that sales of our analytics solution and Xchange Real Time will represent significant portions of Xchange's revenue by 2001," said Frawley. "Response to these solutions from our clients and prospects has been simply outstanding."

Via the acquisition of CustomerAnalytics, Xchange recently added local marketing capabilities to its eCRM solutions suite. By Q4 of 2000, Xchange plans to adapt and market this technology, originally developed for financial services firms, into additional vertical industries, including retail, travel and tourism, hotel management, brokerage and others. Frawley noted that moving eCRM technology into new vertical markets is nothing new for Xchange: originally focused on financial services, Xchange has successfully expanded its own client base dramatically in the past three years. "We've proven that we can execute well in new markets," noted Frawley.

**New partnerships playing a vital role in Xchange's growth**
During Q2, Xchange continued to aggressively develop its partner channel, signing or expanding reseller agreements with many major marketing industry firms. Aside from the VASP partnerships mentioned above, new and expanded partnerships in Q2 include:

> A co-marketing agreement with Vignette.

> A strategic partnership with Braun Consulting to enhance the Xchange Real Time™™ solution with an adapter to Clarify's call center software.

> Reseller agreements with NextClick and Hitachi.

"Partner relationships are a crucial part of our growth strategy," explained David McFarlane, president and COO of Xchange. "They not only represent recurring revenue streams for Xchange, but also increase the number of people selling Xchange services by an order of magnitude."

22.     On July 25, 2000 and thereafter, based upon defendants' positive statements in the July 24 press release (and in subsequent calls and discussions with securities analysts) concerning continued record revenue growth and profitability and defendants' omission of any discussion of applicable known adverse factors or trends, several widely-followed Wall Street securities analysts (including analysts with US Bancorp Piper Jaffray, Chase Securities, H&Q, Legg Mason Wood

Walker, Barrington Research and Robinson Humphrey) reiterated their "buy" or "strong buy" recommendations for Xchange common stock, substantially raised their revenue and net income estimates for the Company, and/or substantially raised their 12-month price targets for said stock.

23. The defendants' public statements referred to in ¶21-22 above were false and misleading when made because:

    a. Defendants failed to reveal that many of the new contracts that Xchange had entered into differed substantially from the majority of those the Company historically obtained in that they required the Company to defer recognition of the substantial revenues attributable to such contracts over a period of time;

    b. Defendants failed to reveal that revenue from many of Xchange's material new contracts was contingent and could not be immediately recognized;

    c. Defendants failed to reveal that the mix of the Company's contracts had shifted and was continuing to shift from being weighted in contracts for which revenues could be immediately recognized upon execution and delivery to contracts which by their terms and nature prohibited the immediate recognition of revenue under GAAP; and

    d. Defendants failed to reveal that its expansion into new markets was forcing and would continue to force the Company to defer revenue recognition on its sales contracts contrary to Xchange's historical performance.

24. Throughout the Class Period, as XChange continued to experience increasing problems with, *inter alia*, extended delays with product sales, customer acceptance, customization, implementation and payment cycles for its service and software sales, resulting in the inability to recognize revenue upon execution and delivery of its products as it had done historically, Defendants concealed material facts concerning these problems from investors, securities analysts, XChange shareholders and the investment public, failed to correct their earlier statements that had

become false and misleading in light of said problems, and continued to make falsely positive statements concerning the Company's revenues, profitability and prospects.

25.      As late as September 29, 2000 (the last day of the Class Period), securities analysts continued to receive from Defendants and disseminate to the investing public falsely positive information about Xchange.  For example, Robinson Humphrey stated in its morning recap on September 29, 2000 the following:

> We believe the recent pullback in the shares of EXAP represents an extremely attractive entry point for short and long term investors.  In our opinion, EXAP has been unjustly penalized due to year end tax-loss selling by mutual funds, as well as negative sentiment created by the recent filing of an S-3 (previously restricted shareholders filing to sell stock).  We do not view the filing or recent insider sales as a cause for concern and expect strong 3Q 00 results in late October to be one of many near terms catalysis for the stock.  Based on our conversations with management and other sources, we believe the current quarter is running in line to ahead of expectations.  We believe the company is gaining traction with its analytics product, which was rolled out this quarter, and the demand for its core eMarketing products has been strong.  Our current revenue estimates for the quarter are $23.0 million and our EPS estimate of $0.06.  EXAP is currently trading at 26x our admittedly conservative 2001 EPS estimate and 3.4x our 2001 revenue estimate, a substantial discount to its peer group.  We continue to rate the shares of EXAP a BUY with a 6-12 month target of $40.

26.      Later in the day on September 29, 2000, *Rueters* reported the following:

> Software maker Exchange Applications, Inc. said on Friday that it expects its third-quarter earnings per share to fall short of previous forecasts.   Boston-based Exchange Applications, which makes software that helps companies manage their customer relationships, said it expects a net loss ranging from 18 to 24 cents per share, compared with a loss of 1 cent in the year-earlier period.  Analysts on average had forecast a per-share profit of 7 cents, according to research firm First Call/Thomson Financial.  The company also said that revenues for the quarter will range between $12 million and $16 million, compared with revenues of $11.2 million a year earlier. The company cited among the factors that contributed to these results a more complicated sales process making transactions more

> difficult to implement, and several transactions closing in the fourth
> quarter instead of the third quarter as expected. Shares of Exchange
> Applications fell $3-7/16 to $9-1/4 in NASDAQ trading on Friday.
> The stocks' 52-week range is between $10-1/4 and $74-3/4.

In response to this news, the price of the Company's stock plummeted, losing nearly 60% of its

value on a volume of trading that was over seven times greater than any other day during the Class

Period.

27.    During the Class Period, as Xchange's common stock price rose as a result of

Defendants' issuance of misleading statements, Defendants' failure to correct previous false and

misleading statements and forecasts, and Defendants' concealment of material revenue delays and

shortfalls during the third quarter, Defendant Frawley and several of this fellow insiders filed

Forms 144 in an attempt to sell substantial quantities of Xchange common stock at prices over $20

per share, as follows:

| Date | Seller | Number of Shares | Estimated Proceeds |
|------|--------|------------------|--------------------|
| 9/15/00 | Haley F. Daniel (Chief Deal Officer) | 4,000 | $89,500. |
| 9/15/00 | O'Brien, Janet & John G. (Affiliated Person) | 3,800 | $85,025. |
| 9/15/00 | Borland, Gino (Affiliated Person) | 10,500 | $220,373. |
| 9/15/00 | Frawley, Andrew J. | 25,200 | $528,899. |
| 9/15/00 | McGonagle, Michael D. (Vice President, Product Development) | 5,950 | $123,820. |
| 9/15/00 | McFarlane, David G. (Chief Operating Officer) | 10,000 | $223,750. |
| 9/15/00 | Haley, Daniel | 6,500 | $145,001. |

| 9/14/00 | O'Brien, Janet & John G. | 4,100 | $90,712. |
|---------|--------------------------|-------|----------|
| 9/14/00 | Borland, Gino | 16,500 | $368.083. |
| 9/14/00 | Townsend, Norman W., Jr. (Affiliated Person) | 2,650 | $58,631. |
| 9/14/00 | Frawley, Andrew J. | 37,000 | $825,403. |
| 9/14/00 | McGonagle, Michael D. | 6,750 | $150,712. |
| 9/11/00 | O'Brien, Janet & John G. | 800 | $19,600. |
| 9/11/00 | Borland, Gino | 2,900 | $68,374. |
| 9/11/00 | Townsend, Norman W., Jr. | 800 | $19,600. |
| 9/11/00 | Haley, F. Daniel | 1,000 | $23,574. |
| 9/11/00 | Frawley, Andrew J. | 6,500 | $153,254. |
| 9/11/00 | McFarlane, David G. | 2,500 | $58,939. |
| 9/08/00 | Fitzgerald, David L. | 3,500 | $72,270. |
| 8/29/00 | Fitzgerald, David, L. | 25,000 | $524,975. |

28.     On October 2, 2000, with XChange common stock having dropped to $4.25 per share (from over $28.00 at the beginning of the Class Period), Robinson-Humphrey made the following statement in the aftermath:

> On Friday, EXAP reported that 3Q00 results would be dramatically below expectations. The company expects revenue to fall in the $12-$16 million range vs. our estimate of $23 million and EPS should be a loss of $0.24 to a loss of $0.18 vs. our estimate of positive $0.06. *This report comes despite assurances from several members of management, two weeks ago, that current business trends were strong.* (emphasis added).

### COUNT I
### [Against Each Of The Defendants For Violation Of
### Section 10(b) Of The Exchange Act]

29.     Plaintiffs repeat and reallege each and every allegation contained above.

30.     This claim is brought against each of the defendants with respect to the entire Class Period and on behalf of the Class.

31.     The defendants named in this count, directly and indirectly, by the use of the means

12

and instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of fraudulent conduct to artificially raise and maintain the artificially inflated market price of Xchange common stock during the Class Period. These defendants employed devices, schemes and artifices to defraud and engaged in acts, practices, and a course of conduct as alleged herein, which operated as a fraud and deceit upon the market for, and purchasers of, Xchange stock during the Class Period.

32.     At the time of the course of conduct alleged above, Plaintiffs and the other members of the Class were ignorant of the facts alleged herein. Plaintiffs and the class members could not in the exercise of reasonable diligence have known the actual facts. In reliance on the integrity of the market price of these securities, Plaintiffs and other members of the Class were induced to and did purchase Xchange stock at artificially inflated prices. Had Plaintiffs and other members of the Class known the truth, they would not have taken such action.

33.     Each of the defendants, with knowledge or in reckless disregard of the fraudulent nature of the conduct complained of herein, caused and permitted the actions which are alleged to have occurred.

34.     By virtue of the foregoing, each of the defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

35.     Plaintiffs and other members of the Class have been damaged by these defendants' violations as described in this Count and seek recovery for the damages caused thereby.

## COUNT II
### [Against The Individual Defendants For Violations Of Section 20(a) Of The Exchange Act]

36.     Plaintiffs repeat and reallege the allegations set forth above as if set forth fully herein.

37.     Defendants Frawley, McFarlane, Green and Haley acted as and were controlling persons of Xchange within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, substantial stock holdings, participation in and/or awareness

of Xchange's operations and/or intimate knowledge of the firm's internal workings, business practices, procedures and shortcomings, and the actual occurrences detailed in this complaint, the Individual Defendants had the power to influence and control and/or did influence and control, directly or indirectly, the decision-making of Xchange, including the practices and efforts undertaken with respect to Xchange which Plaintiffs contends are deceitful. The Individual Defendants at all times had unlimited access to Xchange's internal reports and other information about the conduct alleged by Plaintiffs to be fraudulent, manipulative, misleading and deceitful prior to and/or shortly after these events were taking place and had the ability to prevent them from occurring or cause them to be corrected.

38.     As set forth above, XChange violated Section 10(b) and Rule 10b-5 by its acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons of XChange, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the wrongful conduct of the Individual Defendants, Plaintiffs and other members of the Class suffered damages in connection with their purchases of XChange's common stock during the Class Period.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, Plaintiffs, on behalf of herself and the other members of the Class, pray for judgment as follows:

A.     Declaring this action to be properly maintained as a Plaintiff class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, certifying the Class as defined herein above, and appointing Plaintiffs and their undersigned counsel to represent the class;

B.     Awarding Plaintiffs and the Class damages together with interest thereon;

C.     Awarding Plaintiffs and the Class their costs and expenses of this litigation, including reasonable attorneys' fees and experts' fees; and

D.     Awarding Plaintiffs and the Class such other and further relief the Court deems just and proper under the circumstances.

<div align="center">

14

</div>

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: March 26, 2001

Respectfully submitted

Peter Lagorio (BBO # 567379)
GILMAN & PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906
Telephone: (781) 231-7850


OF COUNSEL:

Marc S. Henzel
LAW OFFICES OF MARC S. HENZEL
210 West Washington Square
Third Floor
Philadelphia, Pennsylvania 19106
Telephone: (215) 625-9999


Counsel to Plaintiffs and the Putative Class

15

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

F I L E D
IN CLERK'S OFFICE

MAR 26   3 24 PM '01

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| NANCY K. GARRITY, JOANNE CLARKE and ARTHUR GARRITY, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

Docket No. 00CV12143RWZ

## AMENDED ANSWER OF DEFENDANT JOHN HANCOCK LIFE INSURANCE COMPANY

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, defendant John Hancock Life Insurance Company[1] ("John Hancock") hereby answers the individually numbered allegations in the Amended Complaint filed by plaintiffs Nancy K. Garrity, Joanne Clarke and Arthur Garrity (collectively, "plaintiffs"). Unless otherwise specified, the numbered paragraphs of the Amended Answer correspond with the numbered paragraphs of the Amended Complaint:

1.     On information and belief, John Hancock admits the allegations in the first sentence of paragraph 1. John Hancock further admits that Ms. Garrity is a former employee of John Hancock. John Hancock denies all of the remaining allegations in the second sentence of paragraph 1.

2.     On information and belief, John Hancock admits the allegations in the first sentence of paragraph 2. John Hancock further admits that Ms. Clarke is a former employee of

---

[1] Effective February 1, 2000, the legal name of the corporate entity formerly known as John Hancock Mutual Life Insurance Company was changed to John Hancock Life Insurance Company.



1

John Hancock.  John Hancock denies all of the remaining allegations in the second sentence of paragraph 2.

3.      On information and belief, John Hancock admits the allegations in paragraph 3.

4.      John Hancock admits the allegations in the first sentence of paragraph 4.  John Hancock states that the allegations in the second sentence of paragraph 4 refer to a document which speaks for itself.  John Hancock denies the allegations in paragraph 4 to the extent they exceed, misstate or mischaracterize the contents of such document.  John Hancock further states that the allegations in the second sentence of paragraph 4 amount to conclusions of law, to which no response is required.

5.      John Hancock states that the allegations in paragraph 5 amount to conclusions of law, to which no response is required.

6.      John Hancock states that the allegations in paragraph 6 amount to conclusions of law, to which no response is required.

7.      John Hancock admits the allegations in paragraph 7.

8.      John Hancock denies the allegations in paragraph 8.

9.      John Hancock admits that, as case managers, Ms. Garrity and Ms. Clarke were each required to perform some data entry functions as part of their respective duties, and denies the remaining allegations in paragraph 9 to the extent such allegations suggest that the computers and work stations used by them to perform these functions were owned by or otherwise belonged to Ms. Garrity and Ms. Clarke.

10.     John Hancock denies the allegations in paragraph 10.  Further answering, John Hancock states that plaintiffs improperly characterize the computers provided by John Hancock

to its employees as "personal computers," as such computer equipment at all times remained the exclusive property of John Hancock.

11.     John Hancock is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 11. John Hancock admits that it provided training programs to employees under various circumstances but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 11.

12.     John Hancock denies the allegations in paragraph 12.

13.     John Hancock is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.     John Hancock is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.     John Hancock denies the allegations in paragraph 15.

16.     John Hancock states that it is unable to fully understand the allegations in paragraph 16 due to plaintiffs' use of vague and ambiguous terms such as "surreptitiously," "record" and "archive," for which plaintiffs provide no meaningful context. On this basis, among others, John Hancock denies the allegations in paragraph 16.

17.     John Hancock denies the allegations in paragraph 17.

18.     John Hancock denies the allegations in the first sentence of paragraph 18. John Hancock admits the allegations in the second sentence of paragraph 18, except that it denies that the passwords chosen by employees were "secret," to the extent that such passwords were accessible to John Hancock systems personnel. John Hancock admits the allegations in the third sentence of paragraph 18 to the extent that employees were instructed never to reveal their

3

passwords, but denies the remaining allegations in the third sentence of paragraph 18. John Hancock admits the allegations in the fourth sentence of paragraph 18.

19.     John Hancock denies the allegations in paragraph 19.

20.     John Hancock admits the allegations in the first clause of paragraph 20, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20.

21.     John Hancock admits that, on or about June 30, 1999, it received a complaint from an employee who received electronic mail from Ms. Garrity. John Hancock is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 21. John Hancock admits the allegations in the second sentence of paragraph 21 only to the extent they can be read to allege that, according to its standard practice in such circumstances, John Hancock initiated an investigation of Ms. Garrity's electronic mail account prior to contacting Ms. Garrity. John Hancock denies any remaining allegations in the second sentence of paragraph 21.

22.     John Hancock denies the allegations in 22.

23.     John Hancock admits that, in the course of investigating the complaint received from an employee who had complained about receiving electronic mail from Ms. Garrity, it read messages Ms. Garrity sent to or received from others, including messages that Ms. Garrity may have deleted from her electronic mail "in" box. John Hancock denies the remaining allegations in paragraph 23.

24.     John Hancock denies the allegations in paragraph 24.

25.     John Hancock admits that, during the course of investigating the complaint received from an employee who had received e-mail from Ms. Garrity, it investigated the e-mail

4

accounts of employees to whom Ms. Garrity sent sexually explicit messages, including Ms. Clarke. John Hancock denies any remaining allegations and characterizations in paragraph 25.

26.     John Hancock denies that more than one Human Resources representative was present for the termination described in the first sentence of paragraph 26, but admits the remaining allegations in the first sentence of paragraph 26. John Hancock admits that Ms. Garrity was told that the grounds for her dismissal was her violation of John Hancock's electronic mail policy, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 26. John Hancock denies the allegations in the third sentence of paragraph 26.

27.     John Hancock admits the allegations in the first sentence of paragraph 27. John Hancock admits that Ms. Clarke was told that the grounds for her dismissal was her violation of John Hancock's electronic mail policy, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 27. John Hancock denies the allegations in the third sentence of paragraph 27.

28.     John Hancock repeats and incorporates its responses to the allegations contained in paragraphs 1 through 27 as if fully set forth here.

29.     John Hancock denies the allegations in paragraph 29.

30.     John Hancock denies the allegations in paragraph 30.

31.     John Hancock repeats and incorporates its responses to the allegations contained in paragraphs 1 through 30 as if fully set forth here.

32.     John Hancock states that the allegations in paragraph 32 amount to conclusions of law, to which no response is required.

33.     John Hancock states that the allegations in paragraph 33 amount to conclusions of law, to which no response is required.

34.     John Hancock denies the allegations in paragraph 34.

35.     John Hancock denies the allegations in paragraph 35.

36.     John Hancock denies the allegations in paragraph 36.

37.     John Hancock denies the allegations in paragraph 37.

38.     John Hancock repeats and incorporates its responses to the allegations contained in paragraphs 1 through 37 as if fully set forth here.

39.     John Hancock denies the allegations in paragraph 39.

40.     John Hancock denies the allegations in paragraph 40.

41.     John Hancock denies the allegations in paragraph 41.

42.     John Hancock repeats and incorporates is responses to the allegations contained in paragraphs 1 through 41 as if fully set forth here.

43.     John Hancock admits that it has terminated approximately thirty employees for violations of its e-mail policy, and denies the remaining allegations in paragraph 43.

44.     John Hancock denies the allegations in paragraph 44.

45.     The allegations in the first sentence of paragraph 45 refer to a document which speaks for itself. John Hancock denies the allegations in paragraph 45 to the extent they exceed, misstate or mischaracterize the contents of such document. John Hancock denies the allegations in the second sentence of paragraph 45.

46.     John Hancock denies the allegations in paragraph 46.

47.     John Hancock denies the allegations in paragraph 47.

48.     John Hancock denies the allegations in paragraph 48.

49.     John Hancock repeats and incorporates its responses to the allegations contained in paragraphs 1 through 48 as if fully set forth here.

50.     John Hancock denies the allegations in paragraph 50.

51.     John Hancock denies the allegations in paragraph 51.

52.     John Hancock denies the allegations in paragraph 52.

53.     The remaining allegations are prayers for relief, to which no further response is required.

### FIRST AFFIRMATIVE DEFENSE

As to each count of the Complaint, plaintiffs fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of waiver.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent that they were filed outside the applicable statutes of limitation.

### SIXTH AFFIRMATIVE DEFENSE

Count V of plaintiffs' Complaint is barred because any statements made by John Hancock with respect to plaintiffs were true.

### SEVENTH AFFIRMATIVE DEFENSE

Count V of plaintiffs' Complaint is barred because any statements made by John Hancock with respect to plaintiffs were conditionally privileged.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

To the extent plaintiffs have suffered the damages alleged in the Complaint, such damages were not caused by John Hancock, but by the acts or omissions of plaintiffs or others.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs had no reasonable expectation of privacy in their use of John Hancock's computer systems, including its electronic mail system.

## ELEVENTH AFFIRMATIVE DEFENSE

John Hancock states that its actions with respect to the plaintiffs were at all times reasonable, privileged and justified by legitimate business needs.

## TWELFTH AFFIRMATIVE DEFENSE

Ms. Garrity and Ms. Clarke were at-will employees and could be terminated by John Hancock at its discretion without notice or cause.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs assumed the risk of discharge and damages through their conduct in using John Hancock's electronic mail system for purposes unrelated to John Hancock's business.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs claims are barred to the extent they consented to the actions of which they now complain.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have the ability and opportunity to mitigate any alleged damages, and, upon information and belief, have failed to do so.

WHEREFORE, John Hancock respectfully requests that this Court:

1.    dismiss all counts of the Complaint;

2.    award John Hancock its reasonable attorneys' fees, costs and expenses incurred in defending this action; and

3.    grant to John Hancock such further relief as is just, warranted and reasonable under the circumstances.

Respectfully submitted,

JOHN HANCOCK LIFE INSURANCE
COMPANY

By its attorneys,

Neil Jacobs, Esq. (BBO #249300)
Laura E. Schneider, Esq. (BBO #562030)
Jessica A. Foster, Esq. (BBO #636841)
Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  March 26, 2001

9

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERK'S OFFICE

MAR 26  3 24 PM '01

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| NANCY K. GARRITY, JOANNE CLARKE and ARTHUR GARRITY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

Docket No. 00CV12143RWZ

## AMENDED ANSWER OF DEFENDANT JOHN HANCOCK LIFE INSURANCE COMPANY

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, defendant John Hancock Life Insurance Company[1] ("John Hancock") hereby answers the individually numbered allegations in the Amended Complaint filed by plaintiffs Nancy K. Garrity, Joanne Clarke and Arthur Garrity (collectively, "plaintiffs"). Unless otherwise specified, the numbered paragraphs of the Amended Answer correspond with the numbered paragraphs of the Amended Complaint:

1.     On information and belief, John Hancock admits the allegations in the first sentence of paragraph 1. John Hancock further admits that Ms. Garrity is a former employee of John Hancock. John Hancock denies all of the remaining allegations in the second sentence of paragraph 1.

2.     On information and belief, John Hancock admits the allegations in the first sentence of paragraph 2. John Hancock further admits that Ms. Clarke is a former employee of

---

[1] Effective February 1, 2000, the legal name of the corporate entity formerly known as John Hancock Mutual Life Insurance Company was changed to John Hancock Life Insurance Company.



1

John Hancock.  John Hancock denies all of the remaining allegations in the second sentence of paragraph 2.

3.      On information and belief, John Hancock admits the allegations in paragraph 3.

4.      John Hancock admits the allegations in the first sentence of paragraph 4.  John Hancock states that the allegations in the second sentence of paragraph 4 refer to a document which speaks for itself.  John Hancock denies the allegations in paragraph 4 to the extent they exceed, misstate or mischaracterize the contents of such document.  John Hancock further states that the allegations in the second sentence of paragraph 4 amount to conclusions of law, to which no response is required.

5.      John Hancock states that the allegations in paragraph 5 amount to conclusions of law, to which no response is required.

6.      John Hancock states that the allegations in paragraph 6 amount to conclusions of law, to which no response is required.

7.      John Hancock admits the allegations in paragraph 7.

8.      John Hancock denies the allegations in paragraph 8.

9.      John Hancock admits that, as case managers, Ms. Garrity and Ms. Clarke were each required to perform some data entry functions as part of their respective duties, and denies the remaining allegations in paragraph 9 to the extent such allegations suggest that the computers and work stations used by them to perform these functions were owned by or otherwise belonged to Ms. Garrity and Ms. Clarke.

10.     John Hancock denies the allegations in paragraph 10.  Further answering, John Hancock states that plaintiffs improperly characterize the computers provided by John Hancock

to its employees as "personal computers," as such computer equipment at all times remained the exclusive property of John Hancock.

11.     John Hancock is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 11. John Hancock admits that it provided training programs to employees under various circumstances but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 11.

12.     John Hancock denies the allegations in paragraph 12.

13.     John Hancock is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.     John Hancock is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.     John Hancock denies the allegations in paragraph 15.

16.     John Hancock states that it is unable to fully understand the allegations in paragraph 16 due to plaintiffs' use of vague and ambiguous terms such as "surreptitiously," "record" and "archive," for which plaintiffs provide no meaningful context. On this basis, among others, John Hancock denies the allegations in paragraph 16.

17.     John Hancock denies the allegations in paragraph 17.

18.     John Hancock denies the allegations in the first sentence of paragraph 18. John Hancock admits the allegations in the second sentence of paragraph 18, except that it denies that the passwords chosen by employees were "secret," to the extent that such passwords were accessible to John Hancock systems personnel. John Hancock admits the allegations in the third sentence of paragraph 18 to the extent that employees were instructed never to reveal their

3

passwords, but denies the remaining allegations in the third sentence of paragraph 18. John Hancock admits the allegations in the fourth sentence of paragraph 18.

19.     John Hancock denies the allegations in paragraph 19.

20.     John Hancock admits the allegations in the first clause of paragraph 20, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20.

21.     John Hancock admits that, on or about June 30, 1999, it received a complaint from an employee who received electronic mail from Ms. Garrity. John Hancock is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 21. John Hancock admits the allegations in the second sentence of paragraph 21 only to the extent they can be read to allege that, according to its standard practice in such circumstances, John Hancock initiated an investigation of Ms. Garrity's electronic mail account prior to contacting Ms. Garrity. John Hancock denies any remaining allegations in the second sentence of paragraph 21.

22.     John Hancock denies the allegations in 22.

23.     John Hancock admits that, in the course of investigating the complaint received from an employee who had complained about receiving electronic mail from Ms. Garrity, it read messages Ms. Garrity sent to or received from others, including messages that Ms. Garrity may have deleted from her electronic mail "in" box. John Hancock denies the remaining allegations in paragraph 23.

24.     John Hancock denies the allegations in paragraph 24.

25.     John Hancock admits that, during the course of investigating the complaint received from an employee who had received e-mail from Ms. Garrity, it investigated the e-mail

4

accounts of employees to whom Ms. Garrity sent sexually explicit messages, including Ms. Clarke. John Hancock denies any remaining allegations and characterizations in paragraph 25.

26.     John Hancock denies that more than one Human Resources representative was present for the termination described in the first sentence of paragraph 26, but admits the remaining allegations in the first sentence of paragraph 26. John Hancock admits that Ms. Garrity was told that the grounds for her dismissal was her violation of John Hancock's electronic mail policy, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 26. John Hancock denies the allegations in the third sentence of paragraph 26.

27.     John Hancock admits the allegations in the first sentence of paragraph 27. John Hancock admits that Ms. Clarke was told that the grounds for her dismissal was her violation of John Hancock's electronic mail policy, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 27. John Hancock denies the allegations in the third sentence of paragraph 27.

28.     John Hancock repeats and incorporates its responses to the allegations contained in paragraphs 1 through 27 as if fully set forth here.

29.     John Hancock denies the allegations in paragraph 29.

30.     John Hancock denies the allegations in paragraph 30.

31.     John Hancock repeats and incorporates its responses to the allegations contained in paragraphs 1 through 30 as if fully set forth here.

32.     John Hancock states that the allegations in paragraph 32 amount to conclusions of law, to which no response is required.

33. John Hancock states that the allegations in paragraph 33 amount to conclusions of law, to which no response is required.

34. John Hancock denies the allegations in paragraph 34.

35. John Hancock denies the allegations in paragraph 35.

36. John Hancock denies the allegations in paragraph 36.

37. John Hancock denies the allegations in paragraph 37.

38. John Hancock repeats and incorporates its responses to the allegations contained in paragraphs 1 through 37 as if fully set forth here.

39. John Hancock denies the allegations in paragraph 39.

40. John Hancock denies the allegations in paragraph 40.

41. John Hancock denies the allegations in paragraph 41.

42. John Hancock repeats and incorporates is responses to the allegations contained in paragraphs 1 through 41 as if fully set forth here.

43. John Hancock admits that it has terminated approximately thirty employees for violations of its e-mail policy, and denies the remaining allegations in paragraph 43.

44. John Hancock denies the allegations in paragraph 44.

45. The allegations in the first sentence of paragraph 45 refer to a document which speaks for itself. John Hancock denies the allegations in paragraph 45 to the extent they exceed, misstate or mischaracterize the contents of such document. John Hancock denies the allegations in the second sentence of paragraph 45.

46. John Hancock denies the allegations in paragraph 46.

47. John Hancock denies the allegations in paragraph 47.

48. John Hancock denies the allegations in paragraph 48.

49.     John Hancock repeats and incorporates its responses to the allegations contained in paragraphs 1 through 48 as if fully set forth here.

50.     John Hancock denies the allegations in paragraph 50.

51.     John Hancock denies the allegations in paragraph 51.

52.     John Hancock denies the allegations in paragraph 52.

53.     The remaining allegations are prayers for relief, to which no further response is required.

### FIRST AFFIRMATIVE DEFENSE

As to each count of the Complaint, plaintiffs fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of waiver.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent that they were filed outside the applicable statutes of limitation.

### SIXTH AFFIRMATIVE DEFENSE

Count V of plaintiffs' Complaint is barred because any statements made by John Hancock with respect to plaintiffs were true.

### SEVENTH AFFIRMATIVE DEFENSE



FILED
IN CLERK'S OFFICE

MAR 22   3 09 PM '01

U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
DANCROSS ASSOCIATES, L.P.,       )
                                  )
          Plaintiff,              )
                                  )
     v.                           )
                                  )
OFFICEMAX, INC.,                  )
                                  )
          Defendant.              )
_____)

Civil Action No. 00-_____

**01- 10489 RWZ**

**NOTICE OF REMOVAL**

To:     The Judges of the United States District Court for the District of Massachusetts,

Eastern Section:

Pursuant to 28 U.S.C. §§ 1441 and 1446 and Local Rule 81, defendant, OfficeMax, Inc.

("OfficeMax"), hereby removes the above-captioned action from Suffolk Superior Court to the

United States District Court for the District of Massachusetts.  In support of this removal,

OfficeMax states as follows:

1.      On or about February 27, 2001, plaintiff, DanCross Associates, L.P., commenced

a civil action against OfficeMax by filing a Summons and Complaint in Superior Court, Suffolk

County, Massachusetts, entitled <u>DanCross Associates, L.P. v. OfficeMax, Inc.</u>, Civil Action No.

01-0907B.L.S. (the "State Court Action").  OfficeMax was served with a copy of the Summons

and Complaint on or about February 27, 2001.

2.      True copies of said Summons and Complaint, along with copies of all other

pleadings and orders served upon OfficeMax in this action to date, are attached hereto as



Exhibit A. No other process, pleadings or orders have been served upon or by OfficeMax in this State Court Action.

3. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within thirty (30) days after the receipt of the Summons and Complaint by OfficeMax.

## PARTIES

4. On information and belief, plaintiff, DanCross Associates, L.P., is now and was at the time of the filing of the Complaint, and at all time intervening a Pennsylvania corporation with a place of business in the Commonwealth of Pennsylvania. (See Complaint ¶ 1.)

5. Defendant, OfficeMax, is now and was at the time of the filing of the Complaint, and at all time intervening, an Ohio corporation with its principal place of business in Ohio. Defendant, OfficeMax, is not and was not incorporated in the Commonwealth of Massachusetts at the time of the filing of the Complaint and does not have its principal place of business in the Commonwealth of Massachusetts. (See Complaint ¶ 2.)

## JURISDICTION

6. This is a civil action over which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332, the diversity jurisdiction statute. Complete diversity of citizenship exists between all proper parties to this action.

7. In this action, plaintiff requests declaratory and compensatory relief and asserts a cause of action for state unfair business practices arising from its dealings with OfficeMax with regard to a lease signed by OfficeMax and plaintiff's predecessor in interest. The Complaint seeks compensatory and statutory damages in excess of the minimum jurisdictional limits of the Massachusetts Superior Courts. The amount in controversy in this case appears to a reasonable legal certainty to be in excess of $75,000 exclusive of interest and costs.

8.      Because complete diversity exists between all parties to this action, and the amount in controversy in this case appears to a reasonable legal certainty to be in excess of $75,000, exclusive of interests and costs, this action is removable pursuant to 28 U.S.C. § 1441(a).

9.      A copy of this Notice of Removal is being served on all adverse parties and the Clerk of the Superior Court, Suffolk County, Massachusetts.

**WHEREFORE**, defendant, OfficeMax, prays that this Court will consider this Notice of Removal as provided by law governing the removal of cases to this Court; that this Court will make the proper orders to effect the removal of this case from the Superior Court, Suffolk County, Massachusetts, to this Court; and that this Court will make such other orders as may be appropriate to effect the preparation and filing of a true record of all proceedings that may have been had in the Superior Court, Suffolk County, Massachusetts.

Respectfully submitted,

OF COUNSEL:

John D. Parker
Priya M. Travassos
BAKER & HOSTETLER LLP
3200 National City Center
1900 East 9th Street
Cleveland, OH 44114-3485
(216) 621-0200

John A. Nadas (BBO #366200)
Paul D. Popeo (BBO #567727)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA 02109
(617) 248-5000

3236701_1.DOC

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was
served upon the attorney of record for each other party
by mail(by hand) on   3-22-01   .

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

N.A.A.C.P., BOSTON CHAPTER,
          Plaintiff,

v.

ANDREW CUOMO, Secretary
of Housing and Urban Development,
          Defendant.

CIVIL ACTION
NO.  78-850-WJS

ORDER ON PLAINTIFF'S APPLICATION FOR FEES

March 27, 2001

SKINNER, D.J.

        Plaintiff has submitted a fee application for a total of $420,782.  I disallow time spent on seminars (-$2,812) and travel to seminars (-$322).  I disallow amounts submitted for work on the new issues created by a change in the demographics of Boston (-$9,149).  The amount of conferencing appears excessive and I accept the defendant's suggestion that there should be a 5% reduction (-$8,540).  The plaintiff has applied a 22% discount to the fees of partners, and I have extended that discount to the fees for Attorney McLindon as a senior associate charging in excess of $100 per hour (-$56,740).  The work for the benefit of the Lawyers Committee for Civil Rights, while related to the issues in this case, was not monitoring of the consent decree (-$6,334).

        While I have allowed attorneys' fees in excess of the $75 per hour statutory cap, I am satisfied that this is justified by the increase in the cost of living over the period involved.  I also am of the opinion that this law firm had special expertise in the housing problems of the City



**DOCKETED**

of Boston acquired of the 23-year history of the case, and that no other equally qualified attorneys could have been engaged at less expense.  Monitoring of the consent decree required an understanding of the complex demographic and societal forces at work in the City.  Finally, I acknowledge the fidelity of this firm's commitment over a 23-year period and accordingly approve an award in excess of the statutory cap.   I therefore award Sugarman, Rogers, Barshak & Cohen, P.C. a fee in the amount of $336,895.

The application of Lisa Sloan is denied without prejudice, since it is not clear why she was hired, or what she contributed.

Walter Jay Skinner
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,  )
          Plaintiff,  )
                    )
                    )
       v.  )      Civil Action No.
                    )
$10,830.00 IN U.S. CURRENCY,  )
          Defendant.  )

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorney, Donald K.

Stern, United States Attorney for the District of Massachusetts,

in a civil action of forfeiture pursuant to Title 7, United

States Code, Section 2024(g), and Title 18, United States Code,

Section 981(a)(1)(A), alleges that:

1.    This Court has jurisdiction in this matter pursuant to

28 U.S.C. §§ 1345, 1355, and 1356.  Venue is appropriate pursuant

to 28 U.S.C. § 1395.

2.    The in Rem defendant ("the Defendant Currency") is now

and, during the pendency of this action, will be within the

jurisdiction of this Court.

3.    The Defendant Currency consists of $10,830.00 (ten

thousand eight hundred and thirty dollars) in United States

currency, seized on September 2, 1997, from Cheng's Market, 166-

168 Eastern Avenue, Springfield, Massachusetts, during an

authorized search by agents of the United States Department of

Agriculture ("USDA"), office of the Inspector General ("OIG").

4.    As outlined in detail in the Affidavit of USDA Special

Agent Kathleen M. Redmond, attached hereto as Exhibit A, and



incorporated herein by reference, the United States has probable cause to believe that the Defendant Currency is subject to forfeiture to the United States, pursuant to 7 U.S.C. § 2024(g), as the Defendant Currency was used to facilitate a commission of a violation of 7 U.S.C. § 2024(b) and (c), the unauthorized use, transfer, acquisition, alteration, or possession of food stamps and the presentation for payment or redemption of food stamps that have been illegally received, transferred, or used, or was traceable to the proceeds of such a violation.

5.    Further, the United States has probable cause to believe that the Defendant Currency represents the proceeds of financial transactions in connection with a Specified Unlawful Activity involving such food stamp coupons, either by deposit into a financial institution, or by way of sale or transfer to another food store, distributor, or illegal enterprise, and constitutes a money laundering offense, pursuant to 18 U.S.C. § 1956.

6.    By virtue of the facts set forth in Paragraphs 4 and 5 and the attached Affidavit, the Defendant Currency is subject to forfeiture to the United States of America pursuant to 7 U.S.C. § 2024(g) and 18 U.S.C. § 981.

7.    By reason of these facts, the Defendant Currency is properly condemned as forfeited to the United States of America pursuant to 7 U.S.C. § 2024(g) and 18 U.S.C. § 981.

2

WHEREFORE, the United States of America requests:

(1)   that a Warrant and Monition, in the form submitted, be issued to the United States Marshal for the District of Massachusetts, commanding her to:  (a) take custody of the Defendant Currency, and (b) give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

(2)   that judgment of forfeiture be decreed against the Defendant Currency;

(3)   that thereafter the <u>in</u> <u>Rem</u> Defendant Currency be disposed of according to law; and

(4)   for costs and all other relief to which the United States may be entitled.

Respectfully submitted,

DONALD K. STERN
United States Attorney

By:   Shelbey D. Wright

Shelbey D. Wright
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Date:   05/09/01

3

<u>Verification</u>

I, Kathleen M. Redmond, Special Agent, United States Department of Agriculture, Office of the Inspector General, state that I have read the foregoing Complaint for Forfeiture <u>in</u> <u>Rem</u> and the attached Affidavit, and the contents thereof are true to the best of my knowledge, information, and belief.

Kathleen M. Redmond
Special Agent
United States Department of
Agriculture, Office of the
Inspector General

Sworn and subscribed to before me this _8th_ day of March, 2001.

Notary Public

My commission expires:

4-7-06

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.:

---

CAROL B. DAVIDSON; SSN: 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
                    Plaintiff,

    vs.

WILLIAM A. HALTER, Acting Commissioner,
Social Security Administration,
                    Defendant.

---

## JURISDICTION

This is a request for review of a final decision of the Commissioner of Social Security denying the application of Susan Stuart for Social Security disability benefits under Title II of the Social Security Act, 42 United States Code, section 402, *et seq.* Jurisdiction to review the final decision of the Defendant herein is conferred on this Court by 42 United States Code, section 405(g) and 42 United States Code, section 1383(c)(3).

## PARTIES

Plaintiff is a citizen and resident of the Commonwealth of Massachusetts, and has been at all times relevant to this action.

Defendant is the Acting Commissioner of the Social Security Administration, and in this capacity is charged with the responsibility for determining the eligibility of those persons who apply for benefits pursuant to 42 U.S.C., sec. 402, *et seq.*

## FACTS

Plaintiff filed an application for disability benefits under Title II of the Social Security Act on August 27, 1996, alleging disability beginning August 1, 1994. After being



denied both initially and at the reconsideration stage, she applied for an Administrative Law Judge hearing on January 13, 1997. A hearing was held on December 1, 1998, at which plaintiff appeared with her attorney and her husband. A vocational expert offered testimony. Her claim was denied in a decision dated March 11, 1999, in which the Administrative Law Judge found that there was insufficient evidence to support a finding of disabled prior to September 30, 1994, the date her insured status lapsed. The Appeals Council denied her request for review on or about January 8, 2001. Plaintiff's administrative remedies have therefore been exhausted.

Plaintiff seeks reversal of the Commissioner's decision based upon the following:

1. The ALJ did not comply with Social Security Ruling 83-20 by failing to obtain the testimony of a medical advisor on the issue of the onset date of the plaintiff's disability, and by failing to make specific inferences as to the onset date of plaintiff's disability as provided by the ruling. SSR 83-20 provides that the determination of onset involves consideration of the applicant's allegations, work history, and the medical and other evidence concerning impairment severity. Other sources of documentation may be explored, including information from, "[F]amily members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." The ruling also states, "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." The record does not reflect that the ALJ made any inquiry as to the onset of claimant's disability from any clinical source, whether treating physician, or medical advisor. The ALJ improperly based his denial upon the mere absence of clinical evidence during the time in question, instead of fully developing the record on that issue.

2.  The ALJ made an error of fact in finding that plaintiff's school activities were inconsistent with her stated impairment, when she in fact was not in attendance at the time of her alleged onset date of September 1994.

3.  The ALJ did not adequately consider all the factors required in evaluating plaintiff's pain, as required by *Avery*.

4.  The ALJ's consideration of the medical evidence was incomplete and selective.

5.  The ALJ's failed to adequately consider the medical evidence that was supportive of the plaintiff's claim.

6.  The ALJ's decision goes against the greater weight of the evidence, and is not supported by substantial evidence.

WHEREFORE:  Plaintiff prays that this Honorable Court:

1.  reverse the decision by the Commissioner and award the plaintiff disability benefits, or in the alternative,

2.  remand the case for further hearing.

3.  award attorney's fees under the Equal Access to Justice Act, 28 U.S.C., sec. 2412, on the grounds that the Commissioner's action in this case was not substantially justified; and

4.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Lindsay P. Rand, Esq., Attorney for Defendant
Nashawaty, Hayden & Rand, P.A.
420 Washington Street, Suite 400
Braintree, MA  02184-9934
781 849-9844

Dated: 3/8/01

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BEDDA EMOUS )
)
)
Plaintiff, )
v. ) CIVIL ACTION
) No.01CV-10399RWZ
)
NEW ENGLAND SCHOOL OF LAW, )
JOHN F. O'BRIEN and CORNELIUS F. DALY )
)
)
Defendants. )
)

## ANSWER OF DEFENDANTS NEW ENGLAND SCHOOL OF LAW, DEAN JOHN F. O'BRIEN AND PROFESSOR CORNELIUS F. DALY

Defendants New England School of Law, Dean John F. O'Brien and Professor Cornelius F. Daly (together "NESL") hereby respond to the Complaint of plaintiff Bedda Emous ("Emous"), as follows:

1.     Defendants admit that Emous was dismissed from NESL in July, 2000. The remaining allegations of paragraph 1 are legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

2.     NESL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.

3.     NESL admits the allegations contained in paragraph 3, with one exception: the allegation that NESL is a "place of public accommodation" is a



-2-

legal conclusion to which no response is required.   To the extent that a response is required, the allegations are denied.

4.   NESL admits the allegations contained in Paragraph 4, except to deny that John F. O'Brien's title is Dean of Students.   NESL responds further that his title is Dean.

5.   NESL admits the allegations contained in paragraph 5.

6.   Upon information and belief, Emous was born on February 24, 1947 and was 52 years old at the time she enrolled at NESL.   NESL denies Emous matriculated to the NESL's evening division in September, 1999.

7.   NESL is without knowledge and information as to when Emous received and signed an enrollment letter but admits she made her first payment to NESL on April 26, 1999.   NESL further states Emous was accepted into the evening division of NESL by letter dated April 5, 1999 and, in fact, enrolled in the school's evening division.

8.   NESL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained paragraph 8.

9.   NESL states that plaintiff was older than some students in her class, and denies all other allegations contained in paragraph 9.

10.   NESL denies the allegations contained in paragraph 10.

11.   NESL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of

-3-

paragraph 11; and, denies the allegations contained in the second sentence of paragraph 11.

12.    NESL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained paragraph 12.

13.    NESL admits Emous made a telephone call to Dean Calamare, but denies the remaining allegations in paragraph 13.

14.    NESL admits that Dean Calamare consulted with Dean O'Brien and made a telephone call to Emous, but denies plaintiff's characterization of that discussion and lacks sufficient knowledge and information regarding the identity of her alleged harassers.

15.    NESL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15.

16.    NESL denies the allegations contained in paragraph 16.

17.    NESL admits that it offers the options of a day division and an evening division to enrolling first year students, but denies that an option of special part-time division is offered to all students.    NESL is without knowledge or information sufficient to form a belief as to the truth of the other allegations contained in paragraph 17.

18.    NESL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18.

19.    Upon information and belief, NESL denies the allegations contained paragraph 19.

-4-

20.   Upon information and belief, NESL denies the allegations contained paragraph 20.

21.   Upon information and belief, NESL admits the allegations contained in paragraph 21.

22.   NESL admits plaintiff purchased a health insurance plan, and is without knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 22.

23.   Upon information and belief, NESL admits there was some discussion between Emous and NESL about insurance but denies there was a specific request for coverage or denial of an insurance claim as alleged in paragraph 23.

24.   NESL admits that Emous made a telephone call to Dean Hamilton but denies Emous' characterization of the conversation.   NESL is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 24.

25.   NESL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25, and, states further that this paragraph is not susceptible of a response as the implied predicate facts about the conversation between Dean Hamilton and Emous are false.

26.   NESL admits that Emous spoke with Professor Finneran generally about her fatigue, and is without knowledge or information

-5-

sufficient to form a belief as to the truth of the other allegations contained in paragraph 26 and therefore denies same.

27.   Upon information and belief, NESL admits the allegations contained in the first sentence of paragraph 27, and lacks knowledge as to the truth of the allegations in the remainder of paragraph 27.

28.   NESL admits the allegations contained in the first two sentences of paragraph 28, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained the third sentence of paragraph 28.

29.   NESL admits the allegations contained in paragraph 29.

30.   NESL admits the allegations contained in the first sentence paragraph 30 , and is without knowledge or information sufficient to form a belief as to the truth of the allegations contained the second and third sentences of that paragraph.

31.   NESL states that the letter to Professor Daly speaks for itself and insofar as the allegations contained in paragraph 31 mischaracterize or are inconsistent with that letter, defendants deny them.

32.   NESL states that the July 6, 2000 letter speaks for itself and insofar as the allegations contained in paragraph 32 mischaracterize or are inconsistent with that letter, defendants deny them.

33.   NESL states that the Petition for Reinstatement and attachments thereto speak for themselves and insofar as the allegations

-6-

contained in paragraph 33 mischaracterize or are inconsistent with that letter, defendants deny them.  Further, NESL admits Emous sent the Petition to Professor Daly, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that paragraph.

34.   NESL admits the allegations contained in the first two sentences of paragraph 34. Further answering, upon information and belief, Emous made statements about her medical condition and treatment.  NESL further states that the doctor's letter speaks for itself and insofar as the allegations contained in paragraph 34 mischaracterize or are inconsistent with that letter, defendants deny them.

35.   NESL admits the allegations contained in paragraph 35.

36.   NESL states that the letters referenced in paragraph 36 speak for themselves and insofar as the allegations contained in paragraph 36 mischaracterize or are inconsistent with that letter, defendants deny them. Further, NESL is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Emous' motivations.

37.   NESL admits there was a meeting between Emous, Dean O'Brien and Professor Plumeri, but denies plaintiff's characterization of that meeting in paragraph 37.

38.   NESL admits Emous filed her charge with the MCAD and that the Commission assented to her Motion for Commissioner to Assent to the

-7-

Bringing of a Civil Action.  The rest of the allegations in paragraph 38 state legal conclusions to which no response is required.

## COUNT I
## BREACH OF CONTRACT

39.     In response to paragraph 39, NESL restates and incorporates by reference its responses to the allegations contained in paragraphs 1 through 38.

40.     NESL denies the allegations contained in paragraph 40.

41.     NESL states that the source referenced in paragraph 41 speaks for itself and that to the extent any of the allegations contained in paragraph 41 mischaracterize or are in any manner inconsistent with that letter, defendants deny them.

42.     The allegations in paragraph 42 state legal conclusions to which no response is required.  To the extent a response is required, NESL is without knowledge or information sufficient to form a belief as to the truth of those allegations.

43.     NESL denies the allegations contained in paragraph 43.

44.     NESL denies the allegations contained in paragraph 44.

-8-

## COUNT II
## DISABILITY DISCRIMINATION

45.     In response to paragraph 45, NESL restates and incorporates by reference its responses to the allegations contained in paragraphs 1 through 44.

46.     NESL admits it is a private educational institute.     The remainder of the allegations in paragraph 46 state legal conclusions to which no response is necessary.  To the extent a response is required, NESL denies these allegations.

47.     NESL admits the allegations contained in paragraph 47.

48.     NESL denies the allegations contained in paragraph 48.

49.     NESL denies the allegations contained in paragraph 49.

50.     NESL denies the allegations contained in paragraph 50.

51.     NESL denies the allegations contained in paragraph 51.

52.     NESL denies the allegations contained paragraph 52.

53.     NESL denies the allegations contained paragraph 53.

54.     NESL denies the allegations contained paragraph 54.

## COUNT III
## AGE AND GENDER DISCRIMINATION

55.     In response to paragraph 55, NESL restates and incorporates by reference its responses to the allegations contained in paragraphs 1 through 54.

LITDOCS:395622.1

-9-

56.     The allegations in paragraph 56 state legal conclusions to which no responses are required.

57.     NESL denies the allegations contained paragraph 57.

58.     NESL denies the allegations contained paragraph 58.

## COUNT IV
## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

59.     In response to paragraph 59, NESL restates and incorporates by reference its responses to the allegations contained in paragraphs 1 through 58.

60.     NESL denies the allegations contained in paragraph 60.

61.     NESL denies the allegations contained in paragraph 61.

62.     NESL denies the allegations contained in paragraph 62.

63.     NESL denies the allegations contained in paragraph 63.

## COUNT V
## PERMANENT INJUNCTIVE RELIEF

64.     In response to paragraph 64, NESL restates and incorporates by reference its responses to the allegations contained in paragraphs 1 through 63.

65.     NESL denies the allegations contained in paragraph 65.

66.     NESL denies the allegations contained in paragraph 66.

NESL denies that plaintiff is entitled to any of the relief sought in its unnumbered prayer and subparts, 1-7.  NESL responds further that plaintiff is not entitled to injunctive relief.

-10-

## AFFIRMATIVE DEFENSES

Defendant reserves the right to amend its answer and to add additional defenses as discovery and investigation may warrant.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, on the grounds that the Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, on the grounds that Defendants' conduct was at all times justified and lawful.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, by unilateral mistake.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, by the equitable doctrines of laches, waiver and/or estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, by the doctrine of accord and satisfaction.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, by failure and/or lack of consideration.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, by the statute of frauds.

-11-

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, on the grounds that she did not suffer any legally cognizable harm that was proximately caused by NESL's conduct.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, on the grounds that any damages suffered by the plaintiff are the consequences of plaintiff's own acts and/or omissions, or of those of third persons not in control of NESL.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, on the grounds that plaintiff has failed to mitigate her damages, if any, as is required by law.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, by ratification.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, wholly or in part, by the unclean hands doctrine.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff was careless, negligent and at fault as to the matters alleged in the Complaint and such carelessness, negligence and fault legally caused or contributed to the injuries that plaintiff complains of, thereby barring or proportionately reducing any recovery by plaintiff.

-12-

## FOURTEENTH AFFIRMATIVE DEFENSE

At all times, NESL acted reasonably, in good faith and with all due care.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's injuries and damages, if any, were unforeseeable because NESL was not on notice of any alleged disability.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's injuries and damages, if any, were unforeseeable because NESL was not on notice of any request for an accommodation for any alleged disability.

WHEREFORE, defendant NESL requests entry of judgment dismissing plaintiff's Complaint with prejudice, and awarding defendant its

-13-

costs and attorney's fees for defending this action and such other relief as may be appropriate and just.

Respectfully submitted,

NEW ENGLAND SCHOOL OF LAW,
DEAN JOHN F. O'BRIEN and
PROFESSOR CORNELIUS F. DALY

By their attorneys,

Henry T. A. Moniz,   BBO No. 555178
Rosalyn E. Garbose, BBO No. 564376
BINGHAM DANA LLP
150 Federal Street
Boston, MA 02110
617-951-8000

Dated: March 8, 2001

## CERTIFICATE OF SERVICE

I, Rosalyn E. Garbose, hereby certify that the foregoing pleading has been served upon all counsel of record by U.S. Mail, on March 8, 2001.

Rosalyn E. Garbose

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ALEC S. COSTERUS,

     Plaintiff,

  v.

BARRY NEAL, et al.,

     Defendants.

Civil Action
No. 00-12156-MEL

MEMORANDUM AND ORDER

LASKER, D.J.

     Alec Costerus brings this action *pro se* against the
Commonwealth of Massachusetts, various employees of the
Commonwealth (collectively, the "Commonwealth"), two
Massachusetts towns, Concord and Marion and assorted town
employees alleging that they violated his state and federal
"constitutional rights" to store and posses firearms.  On
December 1, 2000, the Commonwealth moved to dismiss the claims
against it.  The motion is granted.


I.

     On April 10, 1978, Costerus applied for and received a
Firearms Identification Card ("FID-Card") from the police station
in his then hometown of Marion, Massachusetts.  The FID-Card
allowed him to possess firearms.  In the mid-1980s, Costerus
moved out of Massachusetts.  Under Massachusetts gun laws (M.G.L.

1



Ch. 140, §§ 121-131P), Costerus was required to notify the
authority that had granted him his FID-Card of his move within
thirty days.  Costerus failed to notify the Marion Police
Department.  Subsequently, Costerus moved to Concord,
Massachusetts, where he lives today.

In 1998, Massachusetts overhauled its gun laws,
generally increasing the regulation of gun ownership.  Under St.
1998, Ch. 180, § 73, the plaintiff, as a holder of an FID-Card
issued before the new law, had one year to comply with the new
restrictions.

Costerus' Complaint centers around a purportedly illegal
search, seizure and arrest by the Corcord police which occurred
on March 21, 1999.  On that day, Costerus alleges the following:
that he had a verbal fight with his wife; after the fight, he
sought police assistance to gather "a few days worth of clothes;"
the police instructed him to go to the police station and to wait
while defendant, Officer Barry Neal spoke to his wife; while at
the station, Costerus saw a pamphlet concerning the new gun laws;
Costerus then inquired about what he needed to do to comply with
the new law; when Officer Neal returned from the Costerus' home
(where Costerus' wife had told him that a non-physical fight had
occurred), Officer Neal questioned Costerus about his gun
ownership and whether he had a valid FID-Card; Costerus answered,
"yes--but it was issued twenty years ago--however, I still think

2

it is valid;" Officer Neal then responded "a lot has changed in twenty years" and arrested Costerus for unlawful possession of a firearm, presumably believing that he did not have a valid FID-Card; Officer Neal ordered another officer to search Costerus' home; the officer then searched and seized several guns from the home without consent or a warrant; while Costerus was being booked, the police required that he give them his social security number or else he would "never get out of here;" and finally, that Costerus was then held overnight in police custody.

On March 22, 1999, Costerus was arraigned in Concord District Court and charged with two counts of illegal possession of a firearm (M.G.L. ch. 269, § 10(h)) and with domestic assault and battery (M.G.L. ch. 265, § 13A). Later, Costerus was charged with not properly securing weapons which were found in his home (M.G.L. ch. 140, § 131L(c)). All of the charges, except for not properly securing his firearms, were subsequently voluntarily dropped by the Commonwealth. This final charge was dropped because the state court had ruled that the Commonwealth's evidence was barred as the "fruit of a poisonous tree" because Officer Neal had failed to give Costerus <u>Miranda</u> warnings when he was arrested.

After the charges against Costerus had been dropped, he filed an application with the Concord Chief of Police, Leonard J. Wetherbee, for a "License to Carry," the license created under

3

the new 1998 law that allowed the holder to own certain types of guns ("large capacity weapons").   Chief Wetherbee denied his request because of Costerus': (1) "failure to comply with a Concord Police Administrative Policy requiring the completion of a firearms safety course when applying for a License to Carry;" and (2) "his recent involvement in domestic and firearms related issues in the Town of Concord."   Costerus then appealed the denial to the Massachusetts Superior Court, which reversed it as an abuse of discretion.   Chief Wetherbee is currently appealing this decision.   Costerus also applied to renew his FID-Card before the expiration of the one-year grace period.   After a two-month investigation, which according to Costerus "illegally invaded into the plaintiff's privacy," Chief Wetherbee granted the license.

Based on these events, Costerus, proceeding *pro se*, has filed a ninety-four page Complaint with over forty Counts mainly asserting that the Commonwealth, Concord and Marion defendants violated his rights to store and possess firearms under the Massachusetts and federal constitutions.   The Commonwealth now moves to dismiss all of the Counts against it because: (1) Eleventh Amendment immunity bars some of Costerus' claims; (2) Costerus' Due Process and Second Amendment claims are not actionable; (3) The district attorney defendants, Martha Coakley and Erin Duggan are entitled to absolute prosecutorial immunity;

4

and (4) Costerus' § 1983 claims are invalid because the
Commonwealth and its officials are not "persons" subject to the
statute.

## II.

### A. Eleventh Amendment Immunity

The Commonwealth argues that the Eleventh Amendment
bars Counts 8, 9, 20, 24, 25, 30, 34 and 35 because these Counts
attempt to hold the Commonwealth liable for violations of
Massachusetts law in federal court.  In support of its position
the Commonwealth cites Pennhurst State Sch. and Hosp. v.
Holderman, 465 U.S. 98, 121 (1984), in which the Supreme Court
held that a suit in federal court against a state alleging
violation of its own laws is barred by the Eleventh Amendment.

Costerus responds that Eleventh Amendment immunity does
not apply because: (1) he is a citizen of Massachusetts and is
suing Massachusetts; (2) he is requesting prospective injunctive
relief; and (3) the supplemental jurisdiction statute, 28 U.S.C.
§ 1367, overrides, or abrogates, the Eleventh Amendment.

The Commonwealth's motion is granted.[1]  The reasons
given by Costerus for rejecting Eleventh Amendment immunity are

---

[1]   The Commonwealth has moved to dismiss Counts 24, 25, and 34 based on
the Pennhurst rule.  Counts 25 and 34 make claims exclusively under federal
law.  Count 24 makes claims under both Massachusetts and federal law.  The
Commonwealth's Pennhurst argument has been understood as requesting only the
dismissal of claims brought under Massachusetts law and accordingly, Counts
25, 34 (federal claims) and those portions of Count 24 which are based
exclusively on federal law are not dismissed based on Pennhurst.

without merit.  First, although the words of the Eleventh
Amendment would appear to allow suits against a state by its own
citizens, the Amendment has been consistently interpreted to bar
such suits.  Hans v. Louisiana, 134 U.S. 1 (1890).

Second, the fact that Costerus seeks to remedy
purported violations of Massachusetts law through prospective
injunctive relief is irrelevant to Eleventh Amendment analysis.
As the Supreme Court explained in Pennhurst, 465 U.S. at 106: "a
federal court's grant of relief against state officials on the
basis of state law, whether prospective or retroactive ...
conflicts directly with the principles of federalism that
underlie the Eleventh Amendment."

Third, Costerus' argument that Congress abrogated the
States' Eleventh Amendment immunity in passing the supplemental
jurisdiction statute (28 U.S.C. § 1367) is without merit.  In
order for Congress to have abrogated the States' Eleventh
Amendment immunity through the passage of the supplemental
jurisdiction statute, it would have had to have passed the
statute both: (1) pursuant § 5 of the Fourteenth Amendment;[2] and
(2) with an "unequivocal" intent to abrogate the States' Eleventh
Amendment immunity.[3]  Neither factor is even arguably present
here.  See Freeman v. Oakland Unified Sch. Dist., 179 F.3d 846

---

[2]   Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996) and its
progeny have held that claims of Congressional abrogation of Eleventh
Amendment immunity could only be made under § 5 of the Fourteenth Amendment.

[3]   Green v. Mansour, 474 U.S. 64, 68 (1985).

(9th Cir. 1999) (holding that in enacting 28 U.S.C. § 1367
Congress did not abrogate the States' Eleventh Amendment
immunity).


## B. Costerus' Second Amendment Claims

The Commonwealth moves to dismiss Counts 6, 7, 9, 11,
12, 16, 17, and 22 to the extent that they rely on the Second
Amendment because the Amendment: (1) is inapplicable to the
States; and (2) does not create an individual right.  Presser v.
Illinois, 116 U.S. 252, 265 (1886); United States v. Miller, 307
U.S. 174, 178 (1939).

Costerus responds that a passing reference made in
Justice Harlan's dissent in Poe v. Ullman, 367 U.S. 497, 543
(1961), to the "right to bear arms" and quoted in two majority
opinions not dealing with the Second Amendment,[4] establishes such
a right.

The Commonwealth's motion is granted.  Presser and
Miller control.  Justice Harlan's reference in his dissent in
Poe, to "the right to bear arms" does not purport to be an
adjudication that such a right exists and the quotation of his
dissent in later cases appears solely in a discussion of the
nature of Due Process.

---

[4] Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 848
(1992); Moore v. City of East Cleveland, 431 U.S. 494, 502 (1976).

7

Moreover, even if the Second Amendment did confer an individual right (enforceable against a State), Costerus has not demonstrated how the Commonwealth's statutory scheme abridged the right.  The Commonwealth's gun control statute allows law-abiding persons to possess firearms with certain restrictions intended solely to insure the safety of its citizens.  Such a statute, which strikes a reasoned balance between the interests of gun owners and the interests of citizens to be free from the potential dangers of guns does not offend, even a quite expansive and personal conception, of the Second Amendment.  Accordingly, Counts 6, 7, 9 and 16 are dismissed in their entirety and Counts 11, 12, 18, and 22 are dismissed to the extent that they make Second Amendment claims.

## C. Costerus' Due Process Claims

In Counts 11, 14, 15, 16, 17, 19, 22 and 25 Costerus asserts that the Commonwealth's gun statute violates Due Process because it grants the Chiefs of Police discretion to: (1) deny Costerus a "license to carry;" (2) refuse to renew his FID-Card; and (3) seize his guns.  Moreover, Costerus argues that "because M.G.L. Ch. 140, § 131L is a new statute with no *mens rea* requirement, it violates [Costerus'] Fifth Amendment due process rights [because he can be] subject to prosecution without proof of knowledge that he was violating the statute."  Complaint, ¶ 178.

8

The Commonwealth moves to dismiss.  It argues that: (1) the statute complies with Due Process because adequate post-deprivation remedies are available;  and (2) Costerus cannot assert Due Process claims based on denials of gun licenses because neither a "property" nor "liberty" interest is implicated.  The Commonwealth also denies that its gun statute imposes criminal liability for weapons storage without requiring *mens rea,* a guilty state of mind.

The Commonwealth's motion is granted.  Costerus' Due Process claims based on the Commonwealth's initial denial of a gun license fail because Massachusetts provides an adequate post-deprivation remedy.  Under M.G.L. ch. 140, § 129B, Costerus was entitled to and received judicial review of the initial gun license denial.  The Supreme Court has held that the availability of post-deprivation judicial review is a particularly important factor in determining whether Due Process has been accorded. Zinermon v. Burch, 494 U.S. 113 (1990).  Because judicial review was readily available to Costerus, his Due Process claims are not actionable.

Many of these claims also fail because neither a "property" nor a "liberty" interest is implicated by the Commonwealth's initial denial of a "License to Carry."  Costerus did not have a "legitimate claim of entitlement" to a "License to Carry."  Chief of Police of Shelburne v. Moyer, 16 Mass.App.Ct.

543, 547, 453 N.E.2d 461 (1983)(plaintiff did not have a liberty or property interest in a gun license); see, Board of Regents v. Roth, 408 U.S. 564 (1972) (describing the stringent standard for making a federal Due Process claim based on an "entitlement"). An applicant seeking "License to Carry" has neither a "property" nor "liberty" interest, but is seeking a privilege, which can be extended (or refused) by the Commonwealth without Due Process implications.[5] See Medina v. Rudman, 545 F.2d 244, 250-51 (1st Cir. 1976) (holding that a potential greyhound license applicant under New Hampshire law had neither a liberty or property interest in her application); Luk v. Commonwealth, 421 Mass. 415, 658 N.E.2d 664, 669 (1995) (holding that a driver's license is neither a contract nor property right); Town of Milton v. Commonwealth, 416 Mass. 471, 623 N.E.2d 482, 484 (1993) (holding that under Massachusetts law for a statute to create a contract there must be clear legislative intent to do so); and Mosby v. McAteer, No. 99-6504, 2001 WL 91407 (R.I. Super. Jan. 10, 2001) (holding that an applicant for a gun license under Rhode Island's

---

[5]  Similarly, Count 21, Costerus' "impairment of contract" claim is based on his FID-Card which he alleges is a "contract" with the Commonwealth. This claim is dismissed.  Under Massachusetts law, Consterus' FID-Card was a license, not a contract, and cannot be the basis of an impairment of contract claim.  See Luk, 658 N.E.2d at 669 (holding that a driver's license is not a contract right).  Count 25, alleges that the Commonwealth conspired with local authorities to deny Costerus the "privilege" to deprive him of gun ownership purportedly in violation of the Due Process Clause.  This claim is without merit because even if officers of the Commonwealth had "conspired" to deprive him of gun ownership such a claim would not be actionable in federal court because the "conspiracy" did not deprive him of any federally protected right and adequate post-deprivation remedies exist.

parallel gun licensing statute did not have either a "liberty" or "property" interest in their application).

Nor does the Commonwealth's criminal firearms storage statute (M.G.L. 140, § 131L) violate Due Process.  Contrary to Costerus' argument, the courts have held that violation of a parallel statute (M.G.L. ch. 269, § 10(a)) requires a guilty state of mind.  Commonwealth v. Sampson, 383 Mass. 750, 422 N.E.2d 450, 456 (1981) and Commonwealth v. Jackson, 369 Mass. 904, 344 N.E.2d 166, 173 (1976), both held that a guilty state of mind is required in order to convict a person of the closely analogous crime of unlawful possession of a firearm and there is no reason to believe that the Supreme Judicial Court would rule any differently with respect to the firearms storage statute then it did when presented with the firearms possession statute.


## D. Costerus' Claims Against the District Attorney Defendants

In Counts 6, 8, 9, 11 and 33, Costerus asserts claims against District Attorney Martha Coakley and Assistant District Attorney Erin Duggan for their roles in prosecuting him for the events of March 21, 1999.  The Commonwealth moves to dismiss on the grounds of prosecutorial immunity.  The Commonwealth's motion is granted.  Coakley and Duggan are entitled to absolute immunity from a suit for monetary damages for actions taken in their official capacity as advocates of the state.  Buckley v.

11

<u>Fitzsimmons</u>, 509 U.S. 259, 269 (1993).  Count 33 is dismissed.[6]

## E. Costerus' 42 U.S.C. § 1983 Claims Against the Commonwealth

In Counts 24, 34 and 35, Costerus seeks to hold the Commonwealth liable under 42 U.S.C. § 1983 for the actions of its officers undertaken in their official capacities which purportedly violated federal law.  The Commonwealth moves to dismiss, arguing that neither it nor its officers are "persons" subject to § 1983, citing <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989), in support of its position.  The Commonwealth's motion is granted to the extent that it seeks to prevent Costerus from suing the Commonwealth or its officials for money damages.  In <u>Will</u>, 491 U.S. at 70 n.10, the Supreme Court noted that while generally a state official is not a "person" subject to suit under § 1983, a state official <u>is</u> considered a "person" under § 1983 when she is sued in her official capacity for prospective injunctive relief.  Thus, to the extent that Costerus seeks prospective injunctive relief under § 1983 against officials of the Commonwealth his claims are not barred by <u>Will</u>.

---

[6]  Counts 6, 8, 9 and 11 are already dismissed, as described above, by either the Eleventh Amendment or because they do not state a federal claim.  Count 33 is dismissed against the District Attorney defendants because it asserts a claim exclusively for money damages which is contrary to <u>Buckley</u>'s absolute immunity rule.  Costerus claims that he may sue the district attorney defendants for prospective injunctive relief. Costerus is correct, however, as his Complaint is currently written, it does not do so.

12

However, this point is academic.  These Counts still fail to state a claim because, as described above, Costerus has not alleged an actionable violation of federal law.

### III.

From Costerus' ninety-four page Complaint and other filings it is clear that he is an intelligent and tenacious person who is understandably troubled by his interactions with the Concord Police Department over his possession of firearms. However, the fact that Costerus appears to have stated a claim against Concord does not give him an unfettered license to file a multiplicity of patently frivolous claims against either the Commonwealth or the Town of Marion.  Fed.R.Civ.P. 11 prohibits such conduct even by a party appearing *pro se*.  In the future, Costerus should exercise more care in separating his tenable legal arguments from those which are unsupportable.  The Commonwealth's motion to dismiss is granted.  Costerus' state law claims and his federal claims which are barred exclusively by Zinermon are dismissed without prejudice.  Costerus' other federal claims are dismissed with prejudice.

It is so ordered.

Dated:     March 9, 2001
           Boston, Massachusetts          _____
                                                    U.S.D.J.

13

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAWRENCE E. BLAND, JR.,                 )
    Petitioner,                          )
                                         )
v.                                       )        C.A. No. 00-12020-RWZ
                                         )
TIMOTHY HALL,                            )
    Respondent.                          )

## ANSWER

    Respondent, pursuant to Rule 5 of the Rules Governing Section 2254 Cases, answers the numbered paragraphs of the petition for writ of habeas corpus as follows:

1.    The respondent admits the allegations in paragraph 1.

2.    The respondent admits the allegation in paragraph 2.

3.    The respondent admits in part the allegation in paragraph 3. Further answering, the respondent states that the petitioner was sentenced as follows:

4.    The respondent admits in part the allegation in paragraph 4. Further answering, the respondent states that the offenses involved are:

5.    The respondent admits the allegation in paragraph 5.

6.    The respondent admits the allegation in paragraph 6.

7.    The respondent admits the allegation in paragraph 7.

8.    The respondent admits the allegations in paragraph 8.

9.    The respondent denies the allegation in paragraph 9. Further answering, the petitioner did directly appeal his convictions to the Massachusetts Appeals Court ("Appeals Court"). In paragraph 9 and its subsections, the petitioner has given the information pertaining the



appeal of one of his post-conviction motions.  The respondent herein answers the number

paragraphs detailing the petitioner's direct appeal:

(a).  Appeals Court.

(b).  The Appeals Court held:  The judgments entered on counts one and three of

indictment no. 44725 are reversed, and the verdicts are set aside on those

counts.  The case is remanded to the Superior Court for entry of findings

of guilty of breaking and entering in the daytime with the intent to commit

a felony on counts one and three of indictment no. 44725 and for resentencing on

those counts.  The remaining judgments are affirmed.

(c).  March 26, 1996; Commonwealth v. Bland, 40 Mass. App. Ct. 1110, 662 N.E.2d

1063 (1996).

(d).  The petitioner raised the following issues on direct appeal:  1) error in denial of

motion for required finding of not guilty where evidence was insufficient; 2) error

in denial of motion to suppress; 3) error in denial of motion to sever an indictment;

4) prejudice resulting from loss of evidence; 5) prosecutorial misconduct for loss

of evidence; and  6) ineffective assistance of counsel for failure to request a re-

hearing on motion to suppress and failure to file motion to dismiss based on lost

evidence.

(e)(1).  Massachusetts Supreme Judicial Court ("SJC").

(e)(2).  Application for Leave to Obtain Further Appellate Review ("ALOFAR")

denied.

2

(e)(3). June 21, 1996; <u>Commonwealth v. Bland</u>, 423 Mass. App. Ct. 1101, 667 N.E.2d 1158 (1996).

(e)(4). Of the petitioner's six issues presented to the Appeals Court, the petitioner raised only one issue, error in denial of motion to suppress, to the Supreme Judicial Court in his ALOFAR.

(f). No answer is necessary because the petitioner has not designated a response in paragraph 9(f).

10. The respondent admits the allegation in paragraph 10. Further answering, the respondent states that the petitioner had two post-conviction motions in the trial court. The petitioner's motion to revise and revoke his sentence history is detailed in paragraph 11(a)(1)-(6), and his motion for new trial history may be found in paragraphs 11(b)(1)-(6). The petitioner did appeal the denial of each of these motions, and the respondent has also offered the appellate procedural history of each motion in paragraph 11(c).

11(a)(1)-(6). The respondent admits in part the allegations in paragraphs 11(a)(1)-(6). Further answering the respondent states that the petitioner did not receive an evidentiary hearing on his motion to revise and revoke.

11(b)(1)-(6). No answer is necessary because the petitioner has not designated a response in paragraphs 11(b)(1)-(6). However, the respondent offers the following procedural history of the petitioner's motion for post-conviction relief pursuant to Mass. R. Crim. P. 30(b):

(1). Barnstable County Superior Court.

(2). Motion for Post Conviction Relief pursuant to Mass. R. Crim. P. 30(b).

(3).     The petitioner asserted the following claims in an affidavit:  1) failure to preserve

evidence, police dispatch tape; and 2) ineffective assistance of counsel for failure

to object to the Commonwealth's amendment of indictment.

(4).     The petitioner did not receive a hearing.

(5).     Motion was denied by the trial court in a Memorandum and Order.

(6).     Denied on July 22, 1998.

11(c).  The respondent admits in part the allegations in paragraphs 11(c).  Further answering, the

respondent states that the petitioner appealed each of his post-conviction motions.  The

respondent offers the following appellate procedural history as to each motion:

(1).     On February 29, 2000, the Appeals Court affirmed the denial of his motion to

revise and revoke sentence in Commonwealth v. Bland, 48 Mass. App. Ct. 666,

724 N.E.2d 723 (2000).  To the Appeals Court, the petitioner asserted that his

the judge abused his discretion in the original sentencing and in the denial of the

motion to revise and revoke because the judge based those decisions upon invalid

and unconstitutional factors.  The petitioner sought further appellate review with

the SJC.   On April 27, 2000, the SJC denied the petitioner's ALOFAR in

Commonwealth v. Bland, 431 Mass. 1105, 733 N.E.2d 125 (2000).  The petitioner

raised the same claim to the SJC as he did to the Appeals Court.

(2).     On June 10, 1999, the Appeals Court affirmed the denial of his post-conviction

motion under Rule 30 in a summary disposition, Commonwealth v. Bland, 47

Mass. App. Ct. 1103, 711 N.E.2d 619 (1999).  The petitioner raised the following

issues to the Appeals Court:  1) error in failure to instruct on lesser included

4

offenses; 2) prejudice resulting from loss of evidence; and 3) ineffective assistance of counsel for failure to request lesser included offense instruction. The petitioner sought further appellate review with the SJC. On October 25, 1999, the SJC denied the petitioner's ALOFAR in Commonwealth v. Bland, 720 N.E.2d 468 (1999). The petitioner raised the following issues in his ALOFAR: 1) whether his lost evidence claim was waived for the purpose of further appellate review; and 2) whether the trial court erred in subsuming the lesser included offense into another indictment.

12A.   The respondent denies factually and legally the allegations in paragraph 12A.

12B-D.   No answer is necessary because the petitioner has not designated a response in paragraphs 12B-D.

13.   No answer is required because the petitioner has not specified a response in paragraph 13.

14.   The respondent has insufficient information to answer the allegation in paragraph 14.

15.   The respondent admits the allegations in paragraph 15.

16.   The respondent admits the allegation in paragraph 16.

17.   The respondent has insufficient information to answer the allegations in paragraph 17.

Further answering, and in response to Rule 5 of the rules following 28 U.S.C. §2254, the respondent states:

Enclosed with this Answer is the Respondent's Supplemental Appendix (Volume I: Exhibits 1-14; Volume II: Exhibits 15-22) which contain the following exhibits:

1.   Barnstable County Superior Court updated docket sheets for petitioner's criminal case, indictment nos. 44724-44729.

5

2.    Petitioner's Brief and Record Appendix on direct appeal to the Appeals Court in Commonwealth v. Bland, A.C. No. 1993-P-1606.

3.    Commonwealth's Brief on direct appeal to the Appeals Court in Commonwealth v. Bland, A.C. No. 1993-P-1606.

4.    Appeals Court unpublished opinion affirming in part the convictions of the petitioner in Commonwealth v. Bland, 40 Mass. App. Ct. 1110, 662 N.E.2d 1063 (1997) (Appeals Court No. 1993-P-1606).

5.    Petitioner's Request to File for Further Appellate Review to Supreme Judicial Court in Commonwealth v. Bland, SJC FAR-8431.

6.    Commonwealth's Opposition to the Defendant's Application for Further Appellate Review in Commonwealth v. Bland, SJC FAR-8431.

7.    Supreme Judicial Court's Order denying F.A.R. Application in Commonwealth v. Bland, 423 Mass. 1101, 667 N.E.2d 1158 (1996)(SJC FAR-8431).

8.    Petitioner's Brief and Record Appendix on Appeal from Denial of Motion for a New Trial to the Appeals Court in Commonwealth v. Bland, A.C. No. 1998-P-1943.

9.    Commonwealth's Brief on Appeal from Denial of Motion for a New Trial to the Appeals Court in Commonwealth v. Bland, A.C. No. 1998-P-1943.

10.   Commonwealth's Supplemental Appendix on Appeal from Denial of Motion for a New Trial to the Appeals Court in Commonwealth v. Bland, A.C. No. 1998-P-1943.

6

11.   Petitioner's Memorandum of Law in Lieu of Cross Brief in Support of Arguments Already Advanced in this Court to the Appeals Court in Commonwealth v. Bland, A.C. No. 1998-P-1943.

12.   Appeals Court unpublished opinion pursuant to Rule 1:28 in Commonwealth v. Bland, 47 Mass. App. Ct. 1103, 711 N.E.2d 619 (1999)(Appeals Court No. 1998-P-1943).

13.   Petitioner's Application for Further Appellate Review to Supreme Judicial Court in Commonwealth v. Bland, SJC FAR-10792.

14.   Supreme Judicial Court's Order denying petitioner's request for further appellate review in Commonwealth v. Bland, 720 N.E.2d 468 (1999)(SJC FAR-10792).

15.   Barnstable Superior Court Memorandum and Order on Defendant's Motion to Revise & Revoke in Commonwealth v. Bland, Indictment Nos. 44724-729.

16.   Petitioner's Brief and Record Appendix on Appeal from Denial of Motion to Revise and Revoke to the Appeals Court in Commonwealth v. Bland, A.C. No. 1998-P-0867.

17.   Commonwealth's Brief and Supplemental Appendix on Appeal from Denial of Motion to Revise and Revoke to the Appeals Court in Commonwealth v. Bland, A.C. No. 1998-P-0867.

18.   Petitioner's Post-Argument Letter to the Appeals Court in Commonwealth v. Bland, A.C. No. 1998-P-0867.

19.   Appeals Court published opinion in Commonwealth v. Bland, 48 Mass. App. Ct. 666, 724 N.E.2d 723 (2000)(Appeals Court No. 1998-P-0867).

7

20. Petitioner's Application for Further Appellate Review to Supreme Judicial Court in Commonwealth v. Bland, SJC FAR-11235.

21. Commonwealth's Opposition to Petitioner's Application for Further Appellate Review to Supreme Judicial Court in Commonwealth v. Bland, SJC FAR-11235.

22. Supreme Judicial Court's Notice of Denial of F.A.R. Application in Commonwealth v. Bland, SJC FAR-11235.

<div align="center">FIRST DEFENSE</div>

The petitioner's convictions rest on adequate and independent state law grounds, and are thus not cognizable in habeas review. See Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72 (1977); Ortiz v. DuBois, 19 F.3d 708 (1st Cir. 1994), cert. denied, 513 U.S. 1085 (1995).

<div align="center">SECOND DEFENSE</div>

The habeas petition should be denied where a new rule of constitutional law may not be announced or applied retroactively on collateral review. See Teague v. Lane, 489 U.S. 288 (1989).

<div align="center">THIRD DEFENSE</div>

The habeas petition should be denied where the state court's adjudication of the petitioner's claims on the merits did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States. See U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362 (2000).

## FOURTH DEFENSE

The habeas petition should be denied where the state court's adjudication of the petitioner's claims on the merits did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See U.S.C. § 2254 (e)(2). The petitioner cannot rebut the presumption of correctness of the state court's factual findings by "clear and convincing" evidence. See U.S.C. § 2254(e)(2).

The respondent hereby reserves the right to amend or supplement this Answer in the future should that need arise.

Respectfully submitted,

THOMAS REILLY
ATTORNEY GENERAL

Linda A. Wagner
Assistant Attorney General
BBO# 630332

## CERTIFICATE OF SERVICE

I, Linda A. Wagner, hereby certify that on this day I served a copy of the respondent's Answer upon the petitioner by causing the same to be placed in our office depository for mailing, first-class mail, postage prepaid, to:

Lawrence E. Bland, Jr., W52083
M.C.I. Norfolk
2 Clark Street
P.O. Box 43
Norfolk, MA 02056-0043

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 13TH DAY OF MARCH, 2001

Linda A. Wagner, BBO# 630332
Assistant Attorney General

9

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL A. MCGUIRE,

Plaintiff,

v.

ENTELA, INC.,

Defendant.

Civil Action
No. 01-cv-10251-RWZ

### ANSWER OF ENTELA, INC.

Defendant Entela, Inc., responds as follows to the correspondingly numbered paragraphs
of the Plaintiff's Complaint:

1.     Defendant lacks knowledge or information sufficient to form a belief as to the
truth of the allegations of paragraph 1.

2.     Admitted.

3.     Admitted.

4.     Admitted.

### COUNT I

### BREACH OF PROMISE

5.     Defendant incorporates by reference its responses in the preceding numbered
paragraphs.

6.     Admitted.

7.     Defendant lacks knowledge or information sufficient to form a belief as to the
truth of the allegations of paragraph 7.

8.     Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Defendant admits that an Event of Default under the Note has occurred.

Defendant denies that the entire Note is due and payable immediately because of the

Subordination Agreement attached as Exhibit A.

17.     Admitted.

18.     Denied based on the Subordination Agreement.

## COUNT II

### BREACH OF PROMISE

19.     Defendant incorporates by reference its responses in the preceding numbered

paragraphs.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Denied based on the Subordination Agreement.

27.     Admitted.

28.     Denied based on the Subordination Agreement.

## COUNT III

## BREACH OF PROMISE

29.     Defendant incorporates by reference its responses in the preceding numbered paragraphs.

30.     Admitted.

31.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31.

32.     Admitted.

33.     Denied based on the Subordination Agreement.

34.     Denied based on the Subordination Agreement.

## COUNT IV

## BREACH OF PROMISE

35.     Defendant incorporates by reference its responses in the preceding numbered paragraphs.

36.     Admitted.

37.     Admitted.

38.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38.

39.     Admitted.

40.     Admitted.

41.     Admitted.

42.    Admitted.

43.    Denied.

44.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44.

45.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45.

46.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46.

47.    Denied.

48.    Denied.

49.    Admitted.

50.    Denied.

51.    Denied.

<u>**COUNT V**</u>

<u>**ALLEGED ACTION ON GUARANTEE**</u>

52.    Defendant incorporates by reference its responses in the preceding numbered paragraphs.

53.    Admitted.

54.    Admitted.

55.    Admitted.

56.    Admitted.

57.    Admitted.

58.    Denied based on the Subordination Agreement.

## COUNT VI

## ATTORNEYS' FEES AND COSTS OF COLLECTION

59.    Defendant incorporates by reference its responses in the preceding numbered paragraphs.

60.    Admitted.

61.    Admitted.

62.    Denied based on the Subordination Agreement.

## COUNT VII

## CONSTRUCTIVE TRUST

63.    Defendant incorporates by reference its responses in the preceding numbered paragraphs.

64.    Defendant denies that it operates "the same business formerly operated by Integrity."  It admits the remaining allegations of paragraph 64.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

## COUNT VIII

## CHAPTER 93A

70.    Defendant incorporates by reference its responses in the preceding numbered paragraphs.

71.    Denied.

5

72.    Denied.

73.    Denied.

## AFFIRMATIVE AND OTHER DEFENSES

1.    The lawsuit brought by plaintiff is barred by the Subordination Agreement which

is attached as Exhibit A.  That Agreement, which was signed by plaintiff, provides in relevant

part:

2.    Following Creditor's receipt of notice that Borrower has defaulted
in any of its obligations or liabilities to Lender arising in
connection with the Superior Indebtedness, and so long as such
default continues,

(a)    Creditor will not ask, demand, sue for, take or receive from
Borrower, by way of setoff or in any other manner, the
whole or any part of the Subordinated Indebtedness.

Plaintiff received notice from Old Kent Bank on February 12, 2001.  A copy of the February 5,

2001 notice and its certified mail receipt dated February 12, 2001 are attached as Exhibit B.

Therefore, under the Subordination Agreement, plaintiff is barred from bringing this action.

2.    Plaintiff is barred from obtaining the relief it seeks by the doctrine of estoppel.

3.    Plaintiff is barred from obtaining the relief it seeks by the doctrine of waiver.

6

ENTELA, INC.

By its attorneys,

_A. O. Pattin_
Michael T. Gass (BBO #546874)
Alexis Goltra (BBO #641321)
PALMER & DODGE LLP
One Beacon Street
Boston, MA  02108
(617) 573-0100


David J. Gass
Charles Scholl
MILLER, JOHNSON, SNELL
    & CUMMISKEY, PLC
250 Monroe Avenue, N.W./ Suite 800
P.O. Box 306
Grand Rapids, MI  49503-0306
(616) 831-1700

Dated: March 12, 2001

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon
the attorney of record for each other party by hand on March 12, 2001.

_A. O. Pattin_

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC R. CRETE | ) |
| Plaintiff, | ) |
| VS. | ) |
| | ) |
| | ) |
| STEPHEN CIAVOLA, in his official and | ) |
| personal capacities, | ) |
| TERRANCE KANE, in his personal capacity | ) |
| EDWARD DAVIS III, in his personal | ) |
| and official capacities, | ) |
| RICHARD JOHNSON, in his official | ) |
| and personal capacities, and | ) |
| CITY OF LOWELL, MASSACHUSETTS | ) |
| Defendants. | ) |

C. A. No.: 01CV10104RWZ

**DEFENDANT'S, TERRANCE KANE, ANSWER TO PLAINTIFF'S
COMPLAINT AND DEMAND FOR TRIAL BY JURY**

**FIRST DEFENSE**

The defendant, TERRANCE KANE, hereby states that the plaintiff's complaint

fails to state a cause of action upon which relief can be granted.

**SECOND DEFENSE**

The defendant, TERRANCE KANE, hereby answers the plaintiff's Complaint,

Paragraph by Paragraph, as follows:

**JURISDICTION**

1       The allegations contained in this Paragraph No. 1 of the plaintiff's

complaint state a conclusion of law to which the defendant need not respond.

2.      The allegations contained in this Paragraph No. 2 of the plaintiff's

complaint state a conclusion of law to which the defendant need not respond.

1



## PARTIES

3.      The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 3 of the plaintiff's complaint.

4.      The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 4 of the plaintiff's complaint.

5.      The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 5 of the plaintiff's complaint.

6.      The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 6 of the plaintiff's complaint.

7.      The allegations contained in this Paragraph No. 7 of the plaintiff's complaint states a conclusion of law to which the defendant need not respond.

8.      The defendant denies the allegations contained in this Paragraph No. 8 of the plaintiff's complaint.

## GENERAL ALLEGATIONS

9.      The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 9 of the plaintiff's complaint.

10.      The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 10 of the plaintiff's complaint.

2

11.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 11 of the plaintiff's complaint.

12.     The defendant denies the allegations contained in this Paragraph No. 12 of the plaintiff's complaint.

13.     The defendants denies the allegations contained in this Paragraph No. 13 of the plaintiffs' complaint.

<div align="center">

**COUNT I:**
**USE OF EXCESSIVE FORCE IN VIOLATION**
**OF THE FOURTH AMENDMENT**
**BY DEFENDANT-CIAVOLA**

</div>

14.     The defendant repeats his responses to Paragraphs 1 through 13 of this Answer as if fully repeated and realleged herein.

15.     The allegations contained in this Paragraph No. 15 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

16.     The allegations contained in this Paragraph No. 16 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

17.     The allegations contained in this Paragraph No. 17 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

18.     The allegations contained in this Paragraph No. 18 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

19.     The allegations contained in this Paragraph No. 19 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

21.     The allegations contained in this Paragraph No. 21 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

22.     The allegations contained in this Paragraph No. 22 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

23.     The allegations contained in this Paragraph No. 23 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

24.     The allegations contained in this Paragraph No. 24 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

25.     The allegations contained in this Paragraph No. 25 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

26.     The allegations contained in this Paragraph No. 26 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

## COUNT II:
## ASSAULT AND BATTERY OF THE PLAINTIFF
## BY DEFENDANT-CIAVOLA

27.     The defendant repeats his responses to Paragraphs 1 through 26 of this Answer as if fully repeated and realleged herein.

4

28.     The allegations contained in this Paragraph No. 15 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

29.     The allegations contained in this Paragraph No. 16 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

<div align="center">

**COUNT III:**
**MALICIOUS PROSECUTION OF THE PLAINTIFF**
**UNDER THE FOURTH AMENDMENT**
**BY DEFENDANT-CIAVOLA**

</div>

30.     The defendant repeats his responses to Paragraphs 1 through 29 of this Answer as if fully repeated and realleged herein.

31.     The allegations contained in this Paragraph No. 31 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

32.     The allegations contained in this Paragraph No. 32 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

33.     The allegations contained in this Paragraph No. 33 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

34.     The allegations contained in this Paragraph No. 34 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

35.     The allegations contained in this Paragraph No. 35 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

## COUNT IV:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## BY DEFENDANT-CIAVOLA

36.     The defendant repeats his responses to Paragraphs 1 through 35 of this Answer as if fully repeated and realleged herein.

37.     The allegations contained in this Paragraph No. 37 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

38.     The allegations contained in this Paragraph No. 38 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

39.     The allegations contained in this Paragraph No. 39 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

40.     The allegations contained in this Paragraph No. 40 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

41.     The allegations contained in this Paragraph No. 41 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

42.     The allegations contained in this Paragraph No. 42 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

**COUNT V:**
**DELIBERATE INDIFFERENCE BY**
**DEFENDANTS-JOHNSON, DAVIS, AND THE CITY OF LOWELL**
**FOR DISPLAYING DELIBERATE INDIFFERENCE BY**
**FAILING TO SCREEN POLICE OFFICERS**

43.     The defendant repeats his responses to Paragraphs 1 through 42 of this Answer as if fully repeated and realleged herein.

44.     The allegations contained in this Paragraph No. 44 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

45.     The allegations contained in this Paragraph No. 45 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

46.     The allegations contained in this Paragraph No. 46 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

47.     The allegations contained in this Paragraph No. 47 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

48.     The allegations contained in this Paragraph No. 48 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

49.     The allegations contained in this Paragraph No. 49 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

50.     The allegations contained in this Paragraph No. 50 of the plaintiff's

complaint do not pertain to this defendant and thus do not require a response from the same.

51.   The allegations contained in this Paragraph No. 51 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

52.   The allegations contained in this Paragraph No. 52 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

53.   The allegations contained in this Paragraph No. 53 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

54.   The allegations contained in this Paragraph No. 54 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

55.   The allegations contained in this Paragraph No. 55 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

56.   The allegations contained in this Paragraph No. 56 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

57.   The allegations contained in this Paragraph No. 57 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

58.   The allegations contained in this Paragraph No. 58 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the

same.

59.     The allegations contained in this Paragraph No. 59 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

60.     The allegations contained in this Paragraph No. 60 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

<div align="center">

**COUNT VI:**
**TORTIOUS BATTERY BY**
**DEFENDANT-TERRANCE KANE**

</div>

61.     The defendant repeats his responses to Paragraphs 1 through 60 of this Answer as if fully repeated and realleged herein.

62.     The defendant denies the allegations contained in this Paragraph No. 62 of the plaintiff's complaint.

63.     The defendants denies the allegations contained in this Paragraph No. 63 of the plaintiffs' complaint.

64.     The defendant denies the allegations contained in this Paragraph No. 64 of the plaintiff's complaint.

65.     The defendants denies the allegations contained in this Paragraph No. 65 of the plaintiffs' complaint.

<div align="center">

**COUNT VII:**
**CONSPIRACY BETWEEN DEFENDANT-KANE AND**
**DEFENDANT-CIAVOLA TO USE EXCESSIVE FORCE**

</div>

66.     The defendant repeats his responses to Paragraphs 1 through 66 of this Answer as if fully repeated and realleged herein.

67.     The allegations contained in this Paragraph No. 67 of the plaintiff's complaint states a conclusion of law to which the defendant need not respond.

68.     The allegations contained in this Paragraph No. 68 of the plaintiff's complaint states a conclusion of law to which the defendant need not respond.

69.     The allegations contained in this Paragraph No. 69 of the plaintiff's complaint states a conclusion of law to which the defendant need not respond.

70.     The defendants denies the allegations contained in this Paragraph No. 70 of the plaintiffs' complaint.

71.     The defendants denies the allegations contained in this Paragraph No. 71 of the plaintiffs' complaint.

72.     The defendants denies the allegations contained in this Paragraph No. 72 of the plaintiffs' complaint.

73.     The defendants denies the allegations contained in this Paragraph No. 73 of the plaintiffs' complaint.

74.     The defendants denies the allegations contained in this Paragraph No. 74 of the plaintiffs' complaint.

75.     The defendants denies the allegations contained in this Paragraph No. 75 of the plaintiffs' complaint.

76.     The defendants denies the allegations contained in this Paragraph No. 76 of the plaintiffs' complaint.

77.     The defendants denies the allegations contained in this Paragraph No. 77 of the plaintiffs' complaint.

78.     The defendants denies the allegations contained in this Paragraph No. 78 of the plaintiffs' complaint.

79.     The allegations contained in this Paragraph No. 79 of the plaintiff's complaint states a conclusion of law to which the defendant need not respond.

## COUNT VIII:
## VIOLATION OF FIRST AMENDMENT AND
## M.G.L.C. 12, SECTION 11
## BY DEFENDANT-CIAVOLA

80.    The defendant repeats his responses to Paragraphs 1 through 79 of this Answer as if fully repeated and realleged herein.

81.    The allegations contained in this Paragraph No. 81 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

82.    The allegations contained in this Paragraph No. 82 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

83.    The allegations contained in this Paragraph No. 83 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

84.    The allegations contained in this Paragraph No. 84 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

85.    The allegations contained in this Paragraph No. 85 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

86.    The allegations contained in this Paragraph No. 86 of the plaintiff's complaint do not pertain to this defendant and thus do not require a response from the same.

87.    The allegations contained in this Paragraph No. 87 of the plaintiff's

complaint do not pertain to this defendant and thus do not require a response from the same.

## DEMAND FOR TRIAL BY JURY

88..    The allegations contained in this Paragraph No. 88 of the plaintiff's complaint state a conclusion of law to which the defendants need not respond.

## RELIEF REQUESTED

WHEREFORE, the defendant, TERRANCE KANE, denies that the plaintiff is entitled to judgment in any amount against this defendant and, furthermore, the defense asks this Honorable Court to enter judgment for the defendant and against the plaintiff along with interests, costs and attorneys fees.

## AFFIRMATIVE DEFENSES

### AFFIRMATIVE DEFENSE NO. 3

By way of affirmative defense, the defendant states that his actions are immune from suit as they were discretionary functions.

### AFFIRMATIVE DEFENSE NO. 4

By way of affirmative defense, the defendant states that the defendant's actions are entitled to a qualified good faith immunity.

### AFFIRMATIVE DEFENSE NO. 5

By way of affirmative defense, the defendant states that at all times relevant hereto, the defendant has acted without malice towards the plaintiff and that the defendant's actions relative to the plaintiff were privileged by virtue of the defendant's acting reasonably and in good faith within the scope of the defendant's authority as a Police Officer.

**AFFIRMATIVE DEFENSE NO. 6**

By way of affirmative defense, the plaintiff has failed to state a cause of action in

their complaint for which relief can be granted. Massachusetts Rules of Civil Procedure

12(b)(6).

**AFFIRMATIVE DEFENSE NO. 7**

By way of affirmative defense, the defendant says that the action is barred by the

applicable statute of limitations.

**AFFIRMATIVE DEFENSE NO. 8**

The plaintiff's claims are barred or limited by comparative negligence.

**AFFIRMATIVE DEFENSE NO. 9**

The plaintiff failed to give adequate notice of his claim as required by the
Massachusetts Tort Claims Act.

<div align="center">

**JURY CLAIM**

</div>

THE DEFENDANT CLAIMS A TRIAL BY JURY AS TO ALL ISSUES

PROPERLY TRIABLE TO A JURY.

<div style="margin-left:40%">

Respectfully submitted,
Defendant,
TERRANCE KANE,
By its attorneys,

BRODY, HARDOON, PERKINS & KESTEN

_____
Leonard H. Kesten, BBO # 542042
One Exeter Plaza
Boston, Massachusetts 02116
(617) 880-7100

</div>

Dated: 3/12/01

I hereby certify that a true copy of the
above document was served upon (each
party appearing pro se and) the attorney
of record for each (other) party by mail
(by hand) on 2 11 01         .
_____

13

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 01 10121MEL

```
                                    )
Thomas P. Savastano and             )
Marie I. Cupo,                      )
                Plaintiffs          )
                                    )
v.                                  )
                                    )
City of Newburyport, and            )          ANSWER
Lisa L. Mead, in her                )
capacity as Mayor of                )
City of Newburyport,                )
                Defendants          )
                                    )
```

Now come the City of Newburyport ("the City"), and Lisa L. Mead, in her capacity as Mayor the City of Newburyport ("Mead") Defendants in the above-captioned action, who, for their answer, state as follows.

## 1. INTRODUCTION

1.1 The first Paragraph ("par.") of the Verified Complaint ("Comp.") is a summary and statement of the nature of this action to which no responsive pleading is required.

1.2 Admitted.

1.3 The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of par. 1.3 of the Comp. and admit the allegations in the second sentence of par 1.3 of the Comp.

1.4 Denied.

- 2 -

1.5   Par. 1.5 of the Comp. is a summary and statement of the nature of this action to which no responsive pleading is required.

1.6   The City and Mead deny that the Plaintiffs are entitled to any of the relief sought in Par. 1.6 of the Comp.

## II. JURISDICTION AND VENUE

2.1   Par. 2.1 of the Comp. is a summary and statement of the nature of this action to which no responsive pleading is required.

2.2   Denied.

2.3   Denied.

2.4   Denied.

2.5   Admitted.

2.6   Admitted.

2.7   The City and Mead admit that the acts complained of in the Comp. were performed by persons acting in their individual capacities and deny the remaining allegations in par. 2.7 of the Comp.

## III. PARTIES

3.1   The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in par. 3.1 of the Comp.

3.2   The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in par. 3.2 of the Comp.

3.3   Admitted.

3.4   Admitted.

- 3 -

3.5  Admitted, except as to the City's property which is under the jurisdiction of the City's School Committee.

### IV. ALLEGATION OF FACTS

4.1  Admitted.

4.2  Admitted.

4.3  Admitted.

4.4  Admitted.

4.5  Admitted.

4.6  Admitted.

4.7  Denied.

4.7 (misnumbered) The City and Mead deny that there are over 200 different personalized messages on the bricks and admit the remaining allegations in misnumbered par. 4.7 of the Comp.

4.8  (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.8 of the Comp.

4.9 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.9 of the Comp.

4.9 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.9 of the Comp.

4.5 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.5 of the Comp.

- 4 -

4.6 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.6 of the Comp.

4.6 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.6 of the Comp.

4.7 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.7 of the Comp.

4.8 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.8 of the Comp.

4.9 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.9 of the Comp.

4.10 (misnumbered) The City and Mead deny that there are over 200 different personalized messages on the bricks and admit the remaining allegations in misnumbered par. 4.10 of the Comp.

4.11 (misnumbered) The City and Mead deny that said celebration was related to personalized bricks and admit the remaining allegations in misnumbered par. 4.11 of the Comp.

4.12 (misnumbered) The City and Mead deny that said communications occurred within a few days following September 16, 200, and admit the remaining allegations in misnumbered par. 4.12 of the Comp.

- 5 -

4.13 (misnumbered) Admitted.

4.14 and 4.14 (misnumbered) Both Denied.

4.15 (misnumbered) Admitted.

4.16 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 4.16 of the Comp.

4.17 (misnumbered) Denied.

## V. ALLEGATIONS OF LAW

5.1 Denied.

5.2 Denied.

5.3 Denied.

## V. FIRST CAUSE OF ACTION

### VIOLATION OF PLAINTIFFS' FEDERAL CONSTITUTIONAL RIGHT TO FREEDOM OF SPEECH

6.1 The City and Mead restate their answers to all previous par.'s of the Comp. as though fully set forth herein.

5.2 (misnumbered) Denied.

5.3 (misnumbered) Admitted.

5.5 (misnumbered) Admitted, except that the City and Mead deny that all such protected speech is protected.

5.6 (misnumbered) Admitted, except that the City and Mead deny that all such discrimination is content-based.

5.7 (misnumbered) Denied.

5.8 (misnumbered) Denied.

5.9 (misnumbered) Denied.

- 6 -

5.10 (misnumbered) Denied.

5.11 (misnumbered) Denied.

5.12 (misnumbered) Denied.

5.13 (misnumbered) Denied.

5.14 (misnumbered) Denied.

5.15 (misnumbered) Denied.

## VI. SECOND CAUSE OF ACTION

### VIOLATION OF PLAINTIFFS' FEDERAL CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAWS

6.1 (misnumbered) The City and Mead restate their answers to all previous par.'s of the Comp. as though fully set forth herein.

6.2 (misnumbered) Admitted.

6.3 (misnumbered) Admitted.

6.4 (misnumbered) Denied.

6.5 (misnumbered) Denied.

The City and Mead deny that the Plaintiffs are entitled to any of the relief sought in their prayer for relief.

## VII. THIRD CAUSE OF ACTION

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

7.1 (misnumbered) The City and Mead restate their answers to all previous par.'s of the Comp. as though fully set forth herein.

7.2 (misnumbered) Denied.

- 7 -

## VIII. FOURTH CAUSE OF ACTION

### VIOLATION OF PLAINTIFFS' FEDERAL CONSTITUTIONAL RIGHT TO FREE EXERCISE OF RELIGION

8.1 (misnumbered) The City and Mead restate their answers to all previous par.'s of the Comp. as though fully set forth herein.

8.2 (misnumbered) Denied.

8.3 (misnumbered) Admitted, except that the City and Mead deny that all conduct undertaken for religious reasons is protected by the Free Exercise Clause.

8.4 (misnumbered) Admitted, except that the City and Mead deny that a person's religious speech is without limitation by the government.

8.5 (misnumbered) The City and Mead are without knowledge or information sufficient to form a belief as to the truth of the allegations in misnumbered par. 8.5 of the Comp.

8.6 (misnumbered) Denied.

8.7 (misnumbered) Denied.

8.8 (misnumbered) Denied.

## IX. FOURTH CAUSE OF ACTION

### VIOLATION OF THE FEDERAL ESTABLISHMENT CLAUSE

9.1 (misnumbered) The City and Mead restate their answers to all previous par.'s of the Comp. as though fully set forth herein.

9.2 (misnumbered) Denied.

9.3 (misnumbered) Denied.

9.4 (misnumbered) Denied.

- 8 -

The City and Mead deny that the Plaintiffs are entitled to any of the relief sought in their prayer for relief.

PRAYER FOR RELIEF

The City and Mead deny that the Plaintiffs are entitled to any of the relief sought in par.'s a through d of the prayer for relief immediately following par. (misnumbered) 9.4 of the Comp.

### FIRST DEFENSE: NO STATE ACTION

The actions complained of in the Comp. were not state actions nor were they the result of state actions.

### SECOND DEFENSE: FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Plaintiffs failed to exhaust their administrative remedies prior to commencing this action.

### THIRD DEFENSE: SOVEREIGN IMMUNITY

The Plaintiffs' claims are barred by the doctrine of sovereign immunity.

### FOURTH DEFENSE: JUSTIFICATION

The City's and Mead's actions were justified by the Establishment Clause of United States Constitution and Article 97 of the Articles of Amendment of the Massachusetts Constitution.

### FIRST AFFIRMATIVE DEFENSE: CONSENT

The Plaintiffs consented to the actions which are the subject of the Comp.

- 9 -

### SECOND AFFIRMATIVE DEFENSE: WAIVER

By their actions, the Plaintiffs waived their constitutional and civil rights which they claim were infringed by the City and Mead.

The City and Mead,
by their attorney,


Mark J. Lanza   BBO # 549994
City Solicitor
City of Newburyport
37 Main Street - Suite 7
Concord, MA   01742
(978) 369-9100

DATED: March 12, 2001


CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above
document was served upon the attorney of
record for each party by mail (by hand)

on _____ March 12, 2001 _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY K. GARRITY, JOANNE CLARKE, DORIS A. FARRELL, and ARTHUR GARRITY, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN HANCOCK LIFE INSURANCE COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

*00-CV-12143-RWZ*

**PARTIES**

1.      Plaintiff, Nancy K. Garrity ("Ms. Garrity"), is an individual residing at 178 Winter Street, Hanover, Plymouth County, Massachusetts.  Ms. Garrity is a former employee of John Hancock Mutual Life Insurance Company, and, at the time of her discharge was a participant eligible to receive severance benefits under a severance pay plan sponsored by the Company  (the "Severance Plan").

2.      Plaintiff, Joanne Clarke ("Ms. Clarke"), is an individual residing at 11 Dorman Street, Hudson, Middlesex County, Massachusetts.  Ms. Clarke is a former employee of John Hancock Mutual Life Insurance Company, and, at the time of her discharge was a participant eligible to receive severance benefits under a severance pay plan sponsored by the Company.

Exhibit A

3. Plaintiff, Arthur Garrity ("Mr. Garrity"), is an individual residing at 178 Winter Street, Hanover, Plymouth County, Massachusetts. He is the husband of Ms. Garrity.

4. Defendant, John Hancock Life Insurance Company f/k/a John Hancock Mutual Life Insurance Company ("John Hancock"), is a Massachusetts corporation, with a principal place of business at John Hancock Place, Boston, Suffolk County, Massachusetts. Upon information and belief the Severance Plan is an employee welfare benefit plan within the meaning of §3(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1002 and John Hancock is the plan sponsor of the Severance Plan within the meaning of §3(10)(B) of ERISA, 29 U.S.C. §1002.

## JURISDICTION AND VENUE

5. The Court has: (i) exclusive jurisdiction over the claims of Ms. Garrity, and Ms. Clarke to obtain appropriate equitable relief, pursuant to §502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1); (ii) concurrent jurisdiction of the claims of Ms. Garrity and Ms. Clarke to recover the severance benefits they are entitled to, pursuant to §502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1); and (iii) pendant jurisdiction of the remaining claims brought against John Hancock pursuant to 28 U.S.C. §1367(a).

6. Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims brought against John Hancock occurred in this district; and pursuant to §502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2) because John Hancock resides and may be found in Massachusetts.

## FACTS

7.      Ms. Garrity and  Ms. Clarke are former employees of the Defendant John

Hancock.  Ms. Garrity and Ms. Clarke were employed as case managers in the

Defendant's Long Term Care Division.    Prior to being discharged, Ms. Garrity had

worked for John Hancock for approximately thirteen years and Ms. Clark for over two

years.

8.      Ms. Garrity and  Ms. Clarke were conscientious employees and each was

performing her job satisfactorily.  Neither had received any oral or written warnings

concerning their performance.  In fact, Ms. Garrity was in line to receive a promotion at

the time of her termination.

9.      As case managers, Ms. Garrity and Ms. Clarke were required to perform

some data entry functions and each had their own computer and work station to perform

these functions.

10.      In approximately late 1998 or early 1999 John Hancock installed a new

computer network which, for the first time, enabled its employees to log onto the internet

through their personal computers and correspond through electronic mail ("e-mail") not

only with their co-workers at John Hancock, but also individuals outside the Company.

11.      Ms. Garrity attended an in-house training program designed to instruct her

on the use of e-mail and the internet.   This training program was developed by John

Hancock and taught by its employees on-site at the John Hancock Education Center.

12.      During the course of this seminar, John Hancock's trainers showed Ms.

Garrity, among other things, how to use the Company's e-mail system to send and receive

personal e-mail messages and how to create separate folders for their personal e-mail correspondence.

13.     Ms. Garrity also received instruction during the training seminar how to delete e-mail from her "in box" once she had read it, and how to then delete any record of the e-mail she had received from her delete files.

14.     Ms. Clarke did not attend the same training seminars as Ms. Garrity, but received similar instruction how to use e-mail and the internet on an ad hoc basis from her fellow employees, who had attended such instructional seminars.

15.     At no time, either during the course of their training, or in materials they received in conjunction with this seminar, did John Hancock indicate that there were any restrictions placed on employees ability either to send and receive personal messages through John Hancock's e-mail system.

16.     John Hancock also never informed the Ms. Garrity or Ms. Clarke, either during its instructional seminars or otherwise, that its computer system had the ability to surreptitiously intercept, record and archive the personal e-mail messages they sent and received, or that John Hancock could recover this personal correspondence even after it had been deleted.

17.     John Hancock also failed to take reasonable or adequate steps to inform the Ms. Garrity or Ms. Clarke that it reserved the right to review their personal e-mail correspondence and to discipline them based on the content of these personal communications.

18.     In fact, through its policies and procedures, John Hancock emphasized the confidentiality of each employee's e-mail communications.  Thus, to gain access to their

e-mail account each employee was required to enter a secret password, chosen by the employee. Employees were repeatedly instructed never to reveal their passwords, even to their own supervisors. To further enhance security, John Hancock required employees to periodically change the passwords they had chosen.

19.     Believing that any communications they sent or received through their personal e-mail accounts would remain private and confidential, the Ms. Garrity and Ms. Clarke used their e-mail to correspond with friends, family and co-workers - occasionally on topics of an extremely private and potentially embarrassing nature.

20.     The Ms. Garrity and Ms. Clarke were not the only individuals to use e-mail for non-business communications and, upon information and belief, the use of e-mail for personal correspondence by John Hancock's employees is widespread and endemic.

21.     On or about June 30, 1999 John Hancock apparently received a complaint from an employee who had mistakenly been receiving e-mails from Ms. Garrity.  Rather than advising Ms. Garrity of the mistake and requesting her to stop sending e-mails to this individual, John Hancock surreptitiously launched a full scale investigation of Ms. Garrity's personal e-mail account.

22.     Participating in this investigation on behalf of John Hancock were two employees from its Work Force Diversity Unit, computer specialists (John Hancock's so-called "E-Mail Team"), the Human Resources Administrator responsible for Ms. Garrity's Division, representatives of John Hancock's legal department, and Ms. Gail Schaeffer ("Ms. Schaeffer"), the Vice President of Ms. Garrity's department, among others.

23.     In conjunction with this investigation, upon information and belief, representatives of John Hancock read not only messages Ms. Garrity had sent or forwarded to others but also messages that had been sent to her by friends and family, including messages she had attempted to delete, but which had been surreptitiously intercepted, recorded and archived by John Hancock.

24.     Mr. Garrity was one of the individuals who used e-mail to send private and personal messages to his wife.  At the time he sent these messages, Mr. Garrity believed that any communications directed to his wife's e-mail address would remain private.  He was unaware that John Hancock was surreptitiously intercepting, recording and archiving every incoming message received by its employees, that it might subsequently review these messages or that his wife could be subject to discipline because of something he sent to her private e-mail address.

25.     After completing its exhaustive review of Ms. Garrity's e-mail account, John Hancock's representatives expanded the scope of their investigation to include the e-mail accounts of any employee whom Ms. Garrity had sent a message that John Hancock deemed to be inappropriate, including the e-mail account of Ms. Clarke.

26.     On July 8, 1999 Ms. Garrity was advised by the head of her department, Ms. Shaeffer, and representatives of the Human Resources Department that her employment was being terminated, effective immediately.  She was told that the grounds for their dismissal was that they had violated John Hancock's e-mail policy by sending and receiving e-mails that the Company deemed obscene.  At the time of her termination Ms. Garrity was unaware that she was allegedly violating John Hancock's e-mail policy and had never received any warnings about her use of e-mail.

27.   On July 9, 1999, Ms. Clarke was advised by Ms. Shaeffer and a representative from the Human Resources Department that her employment was being terminated, effective immediately. She was told that the grounds for her dismissal was that she had violated John Hancock's e-mail policy by sending e-mails that the Company deemed obscene. At the time of her termination Ms. Clarke was unaware that she was allegedly violating John Hancock's e-mail policy and had not received any warnings about her use of e-mail.

## COUNT I - Invasion of Privacy

28.   The Plaintiffs repeat the allegations contained in paragraphs 1 through 27 and, by this reference, incorporate them herein.

29.   As a result of the training they received from John Hancock, and the fact that their e-mail accounts were protected by a password each had selected, the Plaintiffs had a reasonable expectation that the personal communications they sent and received through John Hancock's e-mail system would remain private.

30.   Notwithstanding the Plaintiffs' reasonable expectation that their personal e-mail correspondence would remain private, John Hancock, through its authorized agents and employees, unreasonably, substantially and seriously interfered with the Plaintiffs' privacy, in violation of G.L.c. 214 §1B of the Massachusetts General Laws, by, inter alia.: (i) surreptitiously intercepting, recording and archiving the Plaintiffs' e-mail correspondence; (ii) reading and reviewing the Plaintiffs' personal e-mail; and, (iii) publishing and disseminating the Plaintiffs' personal e-mail not only among numerous employees at John Hancock, but to individuals who are not John Hancock employees.

## COUNT II - Unlawful Interception of Wire Communications

31.     The Plaintiffs repeat the allegations contained in paragraphs 1 through 27 and, by this reference, incorporate them herein.

32.     The personal e-mail communications sent to and received from the Plaintiffs' friends, family and co-workers constitute "wire communications" within the meaning of G.L.c. 272 §99(B)(1) of the Massachusetts General Laws.

33.     John Hancock's computer system was a device or apparatus capable of surreptitiously intercepting, recording and archiving the Plaintiff's "wire communications" and constitutes an "intercepting device" within the meaning of G.L.c. 272 §99(B)(3) of the Massachusetts General Laws.

34.     John Hancock willfully committed, attempted to commit or procured another person to commit an interception of the Plaintiffs' e-mail communications by means of an intercepting device, in violation of G.L.c. 272 §99(C)(1) of the Massachusetts General Laws.

35.     John Hancock willfully disclosed or attempted to disclose to another person the contents of the Plaintiffs' e-mail communications, knowing that such information was obtained through an illegal interception, in violation of G.L.c. 272 §99(C)(3) of the Massachusetts General Laws.

36.     As a result of John Hancock's wrongful conduct the Plaintiffs have been damaged.

37.     The Plaintiffs have a private right of action against John Hancock for its willful interception and willful disclosure of their private e-mail communications and the damages arising from such conduct pursuant to G.L.c. 272 §99(Q).

### COUNT III - Wrongful Discharge in Violation of Public Policy

38.  The Plaintiffs repeat the allegations contained in paragraphs 1 through 27 and, by this reference, incorporate them herein.

39.  John Hancock's termination of the Ms. Garrity and Ms. Clarke was committed in violation of public policy of the Commonwealth of Massachusetts, which guarantees to every citizen the right to be free from unreasonable, substantial or serious interference with their privacy pursuant to G.L.c. 214 §1B and G.L.c. 272 §99 of the Massachusetts General Laws.

40.  Discharging Ms. Garrity and Ms. Clarke based solely on the contents of their private communications with friends, family and co-workers constitutes a wrongful termination of their employment in violation of public policy.

41.  As a result of John Hancock's wrongful conduct, the Ms. Garrity and Ms. Clarke have been damaged.

### COUNT IV - Wrongful Discharge in Violation to Deprive Plaintiffs Benefits Provided by the Severance Plan (ERISA §510)

42.  The Plaintiffs repeat the allegations contained in paragraphs 1 through 29 and, by this reference, incorporate them herein.

43.  Upon information and belief, in addition to Ms. Garrity and Ms. Clarke, John Hancock has terminated in excess of thirty other employees for alleged violations of John Hancock's e-mail policy.

44.  Upon information and belief, at the time John Hancock terminated the Ms. Garrity and Ms. Clarke and the other thirty-plus employees fired for allegedly inappropriate use of e-mail, it had decided to implement, but not yet announced, a reduction in force.

45.     Under the terms of the Severance Plan, salaried employees are eligible for severance benefits based on their salary and length of service if they are terminated as part of a reduction in force.  Ms. Garrity and Ms. Clarke, and, upon information and belief, most, if not all, of the other employees terminated for alleged violations of John Hancock's e-mail policy would have been eligible for severance benefits if their employment had been terminated due to a reduction in force.

46.     Shortly after terminating Ms. Garrity and Ms. Clarke, and in excess of thirty other employees, for alleged violations of its e-mail policy, John Hancock laid off numerous employees as part of a company-wide reduction in force.

47.     Upon information and belief John Hancock terminated Ms. Garrity and Ms. Clarke, and in excess of thirty other employees, for alleged violations of its e-mail policy to interfere with their attainment of rights to which they would have become entitled to under the Severance Plan in the event of a layoff, including severance benefits they would have been entitled to receive, in violation of §510 of ERISA, 29 U.S.C. §1140.

48.     Upon information and belief, John Hancock wrongfully terminated Ms. Garrity and Ms. Clarke, and in excess of thirty other employees, solely to reduce the cost of its anticipated reduction in force.

### COUNT V - Defamation

49.     The Plaintiffs repeat the allegations contained in paragraphs 1 through 27 and, by this reference, incorporate them herein.

50.     John Hancock defamed and slandered Ms. Garrity and Ms. Clarke by falsely accusing them of subscribing to pornographic sites on the internet and using their e-mail accounts to send and receive lewd, obscene and pornographic materials.

51.     Upon information and belief, John Hancock's false and defamatory statements were published and disseminated both among its employees and to other individuals.

52.     As a result of John Hancock's false and defamatory statements the Ms. Garrity and Ms. Clarke have been damaged.

WHEREFORE, the Plaintiffs request that this Court:

(a)     Enter judgment on their behalf as to Counts I through V;

(b)     Award them compensatory damages in an amount to be determined at trial with respect to Counts I through V;

(c)     Award them punitive damages in an amount to be determined at trial with respect to Counts I through V;

(d)     Award them reasonable attorneys' fees, with respect to Count II, pursuant to G.L.c. 272 §99(Q) and with respect to Count IV, pursuant to §502(g) of ERISA, 29 U.S.C. §1132(g)(1);

(e)     Award them other appropriate equitable relief, with respect to Count IV, pursuant to §502(a)(3)(B) of ERISA, 29 U.S.C. §1132(a)(3)(B);

(f)     Award such other relief as the Court shall deem just and reasonable.

**PLAINTIFFS DEMAND A JURY
TRIAL AS TO ALL ISSUES SO TRIABLE**

NANCY K. GARRITY,
JOANNE  CLARKE, and
ARTHUR GARRITY

By their attorney,

John G. H. Coster
(BBO #101450)
92 State Street, Suite 900
Boston, Massachusetts 02109
(617) 423-2224

12

UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH GOMES                    )
                 Plaintiff      )
VS.                             )       COMPLAINT **01  10424 MEL**
                                )       C.A. NO.
COMMISSIONER OF SOCIAL          )       (Social Security Appeal)
SECURITY,                       )
                 Defendant      )

APPEAL FROM THE ACTION OF THE APPEALS COUNCIL
OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES
DENYING DISABILITY INSURANCE BENEFITS UNDER
SECTION 205(g) OF THE SOCIAL SECURITY ACT,
42 USC SECTION 405(g), AS MENDED

## PARTIES

1.   Plaintiff, Joseph Gomes, whose social security number is 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, is a resident
     of the Commonwealth of Massachusetts, residing at 142 Washington Street,
     Westport, Bristol County, Massachusetts.

2.   The Defendant is the Commissioner of Social Security and at all times pertinent to
     this action was in the exercise of his duties as such.

## JURISDICTION

3.   The Court's jurisdiction of this cause is from Section 205(g) of the Social Security
     Act, 42 USC Section 405(g), to review a final decision of the Defendant.

## FACTUAL ALLEGATIONS

4.   The Plaintiff filed an application for Social Security Disability  which was denied
     administratively. Thereafter, the Plaintiff filed a timely Request for Reconsideration
     which was also denied administratively.

5.   Thereafter the Plaintiff filed a timely Request for Hearing before an Administrative
     Law Judge of the Office of Hearings and Appeal of the Defendant.  Such a Hearing
     was held at Providence, Rhode Island on January 14, 1998.  The Administrative
     Law Judge issued a Decision dated February 10, 1998 which found the Plaintiff not
     disabled and not entitled to benefits.  A copy of the Decision was received by
     Plaintiff's counsel on February 12, 1998,



6.      Thereafter, the Plaintiff filed a timely Appeal of the Decision of the Administrative Law Judge to the Appeals Council.  On or about January 8, 2001 the Appeals Council issued its "Action" on the Plaintiff's Request for Review of the Administrative Law Judge's decision and in that "Action" affirmed the decision of the Administrative Law Judge, denying benefits.

7.      The Plaintiff has therefore fully and completely exhausted his administrative remedies in this matter.

8.      The Plaintiff alleges that he was disabled from all substantial gainful activity from July 25, 1995 through the present date and continuing and that the evidence before the Defendant clearly proves this.   Thereby he is entitled Social Security Disability benefits.

9.      The findings of the Defendant that the Plaintiff is not disabled and entitled to benefits under the Social Security Act is not based on substantial evidence and are contrary to law and regulation.

        WHEREFORE, Plaintiff prays:

a.      That the Defendant be required to answer this Complaint and to file a certified copy of the transcript of the administrative record;

b.      That judgment be entered herein reversing the decision of the Defendant and requiring the Defendant to pay to the Plaintiff past, present and future benefits to which he is entitled under the Social Security Act; or

c.      Remand the case for further hearing;

d.      Award attorney's fees under the Equal Access to Justice Act, 28 USC §2412, on the grounds that the Commissioner's action in this case was not substantially justified; and

e.      That this Honorable Court grant such other relief as it may deem equitable and just.

                        Respectfully submitted, Joseph Gomes,
                        By his Attorneys,
                        BRIAN CUNHA & ASSOCIATES

                        Honey Polner, Esq., BBO #550438
                        311 Pine Street
                        Fall River, MA 02720
                        (508) 675-9500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO.

**01-10429 RWZ**

GREG GANNON and
CYNTHIA GANNON,
                    Plaintiffs

v.

CLEAR CHANNEL COMMUNICATIONS, INC. d/b/a
CLEAR CHANNEL COMMUNICATIONS WPRI TV,
CLEAR CHANNEL TELEVISION, INC.,
d/b/a CLEAR CHANNEL COMMUNICATIONS
WPRI TV, CLEAR CHANNEL BROADCASTING, INC.
d/b/a CLEAR CHANNEL COMMUNICATIONS
WPRI TV, LAURENCO M. XAVIER,
                    Defendants

COMPLAINT AND DEMAND FOR JURY TRIAL

       NOW COMES, the Plaintiffs, Greg Gannon and Cynthia Gannon, who
by and through counsel, complains as follows:

PARTIES

       1. The Plaintiff, Greg Gannon, is a resident at 210 Harrison
Avenue, Somerset, MA.

       2. The Plaintiff, Cynthia Gannon is married to Plaintiff Greg
Gannon and resides at 210 Harrison Avenue, Somerset, MA.

       3. Upon information and belief, Defendants CLEAR CHANNEL
COMMUNICATIONS, INC. d/b/a CLEAR CHANNEL COMMUNICATIONS WPRI TV,
CLEAR CHANNEL BROADCASTING, INC. d/b/a CLEAR CHANNEL COMMUNICATIONS
WPRI TV,  CLEAR CHANNEL TELEVISION, INC., d/b/a CLEAR CHANNEL
COMMUNICATIONS WPRI TV are Texas corporations with their principal
place of business at 200 East Basse Road, San Antonio, Texas 78209.

       4. Upon information and belief, Defendants have a business
facility located at CLEAR CHANNEL WPRI TV located at 25 Catamore
Boulevard, East Providence, RI.

       5. Defendant Laurenco M. Xavier resides at 67 Lonsdale Avenue,
Pawtucket, RI 02960.

JURISDICTION AND VENUE

       6. This Court has jurisdiction pursuant to this Court's
diversity jurisdiction.

       7. Given Defendants' extensive and sustained contacts with the



Commonwealth of Massachusetts for both general business purposes and in connection with the conduct at issue in this case, the negligence of an employee driving a motor vehicle owned by Defendants and during the course of his employment, resulting in a an accident in Seekonk, MA, this Court's exercise of personal jurisdiction over Defendants is consistent with the requirements of the Massachusetts Long Arm Statute, M.G.L. c. 223A Section 3 and the Due Process Clause of the Constitution of the United States of America.

8. The Venue is proper pursuant to M.G.L. c. 223 Section 1.

9. The amount in controversy in this action is in excess of the jurisdictional requirements of this Court.

FACTS

COUNT I

10. The Defendants are owners of the motor vehicle driven by employee Laurenco M. Xavier on 4/7/98.

11. On or about 4/7/98, Plaintiff was a passenger in a vehicle, a UPS truck that was parked on the west bound shoulder of Taunton Avenue in Seekonk, MA.

12. The driver of the UPS truck was Michael Manarelli who had parked the truck on the shoulder so that he could make a delivery at a UPS customer on Taunton Avenue in Seekonk, MA.

13. While the UPS truck was stopped and parked on Taunton Avenue, the vehicle driven by Defendant Xavier and owned by Defendants collided with the UPS truck and struck the rearend of the vehicle.

14. The Plaintiff was at all times herein stated in the exercise of due care.

15. Defendants and their employee Defendant Xavier negligently and carelessly operated their motor vehicle.

16. Defendant Xavier negligently and carelessly operated the motor vehicle owned by Defendants,resulting in injuries to the Plaintiff.

17. As a direct and proximate result of said collision and the negligence of Defendants, Plaintiff was seriously and permanently injured, was prevented from carrying out the duties of his occupation and all other activities,suffered great pain of the body and the mind, and was obligated to expend monies for medical care and attendance and will continue to expend monies for medical care as necessary.

WHEREFORE, Plaintiff demands judgment jointly and severally

against the Defendants, for compensatory damages together with interest and costs of suit, and such other relief as this Court deems appropriate and just.

### COUNT II

#### LOSS OF CONSORTIUM

18. The Plaintiff incorporates by reference Paragraphs 1 through 17 as if fully set forth herein.

19. As a result of the injuries suffered by Greg Gannon, Plaintiff, Cynthia Gannon has suffered the loss of her husband's society, companionship and consortium.

WHEREFORE, the Plaintiff Cynthia Gannon demands:

1. Judgment against the Defendants for compensation for her loss of her husband's society, companionship, consortium plus interest and costs.

2. This Honorable Court grant such other relief as is just and equitable.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS.

PLAINTIFFS,
By their Attorney

Mary Ann E. Rousseau, Esq.
38 Rock Street, Suite 28
Fall River, MA 02720
(508) 676-7141
BBO # 542116

DATED: 3/8/01

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| MICHELE Y. GRIFFITH, M.D.<br>INDIVIDUALLY AND AS MOTHER<br>AND NEXT FRIEND OF<br>CONRAD B. MUHAMMAD,<br>    Plaintiff<br><br>VS.<br><br>ARNOLD I. WEISS, D.D.S.,<br>ABC, INC. AND THE CENTER FOR<br>PEDIATRIC DENTAL CARE,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' COMPLAINT**
**CLAIM FOR TRIAL BY JURY**

01 cv 10446 MEL

The plaintiff, by her attorney, Lane Altman & Owens LLP, complaining of the

defendants, respectfully alleges:

## PARTIES

1.  The plaintiff, Michele Y. Griffith, M.D., individually and as mother and next friend of

    Conrad B. Muhammad, a minor, is a resident of 51 Bedford Avenue, Teaneck, New

    Jersey.

2.  The defendant, Arnold I. Weiss, D.D.S., at all times mentioned herein was a duly

    licensed dentist, practicing dentistry with the Center for Pediatric Dental Care at 1560

    Beacon Street, Brookline, Massachusetts.

3.  The defendant, ABC, Inc., is an entity responsible for the design and manufacture of a

    thirty (30) gauge stainless steel needle used to deliver nerve blocks during dental

    procedures.  The precise identity of ABC, Inc. is unknown at this time.

LANE ALTMAN & OWENS, LLP
101 FEDERAL STREET
BOSTON, MASS.  02110

(617) 345-9800



- 1 -

49870(1)

4. The defendant, The Center for Pediatric Dental Care is an unincorporated association of dentists providing pediatric dentist care, treatment and attention at 1560 Beacon Street, Brookline, Massachusetts.

### JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter under 28 U.S.C.s.1332, for the reason of diversity of citizenship among the plaintiff and defendant and because the amount in controversy, exclusive of interests and costs, exceeds $50,000.00.

6. Venue is proper in this Court under 28 U.S.C.s.391 (b) since the defendant is situated in this District, and the events and/or omissions giving rise to this action occurred in this District.

### COUNT I

7. The plaintiff, Michele Y. Griffith, M.D., repeats and realleges paragraphs 1 through 6, and by reference incorporates and makes them a part of this claim.

8. At all times relevant to this complaint, the defendant, Arnold I. Weiss, D.D.S., held himself out to the public as a capable pediatric dentist.

9. On or about May 16, 2000, the defendant, Arnold I. Weiss, D.D.S., had undertaken to provide medical care, treatment and attention to Conrad B. Muhammad, a minor.

10. In the course of his provision of medical care, treatment and attention to Conrad B. Muhammad, the defendant Arnold I. Weiss, D.D.S., undertook to deliver an interior alveolar nerve regional block to Conrad B. Muhammad during which procedure a portion of the thirty (30) gauge stainless steel needle the defendant, Arnold I. Weiss, D.D.S., was using to deliver the nerve block broke off and lodged in the medial

-2-

pterygoid of Conrad B. Muhammad.

11. The defendant, Arnold I. Weiss, D.D.S., failed to exercise reasonable care during and
    in provision of dental care, treatment and attention to Conrad B. Muhammad, in
    among others:

    (a)   Failing to properly and adequately perform the procedure;

    (b)   Failing to disclose in a reasonable manner all significant medical
          information that the defendant possesses or reasonably should possess that
          was material to an intelligent decision by the plaintiff to undergo the
          procedure;

    (c)   Failing to exercise due care under the circumstances; and

    (d)   Failing to appropriately follow-up and perform additional procedures.

12. A surgical procedure to remove the portion of the needle was performed on Conrad B.
    Muhammad at the Massachusetts General Hospital on May 16, 2000, and was
    unsuccessful.  The portion of the needle remains lodged in Conrad B. Muhammad's
    medial pterygoid.

13. As a result of the careless and negligent provision of dental care, treatment and
    attention by the defendant, Arnold I. Weiss, D.D.S., Conrad B. Muhammad, was
    caused to suffer severe and painful personal and emotional injuries.  He has been
    precluded from attending to his usual duties, occupations and advocations, all to his
    detriment.  He has suffered agonizing pain, aches and mental anguish and has
    incurred obligations and expended monies for medicine, medical care and treatment
    for the alleviation of his injuries.

    WHEREFORE, the plaintiff, Michele Y. Griffith, M.D., as mother and next friend of

LANE ALTMAN & OWENS, LLP
101 FEDERAL STREET
BOSTON,  MASS.  02110

(617) 345-9800

49870(1)

Conrad B. Muhammad, demands judgment on Count I against the defendant, Arnold I. Weiss, D.D.S.

## COUNT II

14. The plaintiff, Michele Y. Griffith, M.D., repeats and realleges paragraphs 1-13, and by reference incorporates and makes them a part of this claim.

15. The defendant, Arnold I. Weiss, D.D.S. administrated dental treatment, not during an emergency, to Conrad B. Muhammad, a minor, without the informed consent of his parent and/or guardian.

16. As a direct result of the battery, Conrad B. Muhammad was caused to suffer severe and painful personal and emotional injuries.

WHEREFORE, the plaintiff, Michele Y. Griffith, M.D., as mother and next friend of Conrad B. Muhammad, demands judgment on Count II against the defendant, Arnold I. Weiss, D.D.S.

## COUNT III

17. The plaintiff, Michele Y. Griffith, M.D., repeats and realleges paragraphs 1-16, and by reference incorporates and makes them as part of this claim.

18. The defendant, ABC, Inc., at all times material hereto was engaged in the assembly, inspection, testing, designing, promoting, advertisement, distribution and sale of thirty (30) gauge stainless steel needles.

19. In the course of the business, defendant ABC, Inc., assembled, inspected, tested, designed, marketed, distributed and sold thirty (30) gauge stainless steel needles.

20. On or about May 16, 2000 Conrad B. Muhammad was receiving an interior alveolar nerve regional nerve block delivered by Arnold I. Weiss, D.D.S. by use of thirty (30)

LANE ALTMAN & OWENS, LLP
101 FEDERAL STREET
BOSTON, MASS. 02110

(617) 345-9800

-4-

gauge stainless steel needle manufactured by the defendant, ABC, Inc., when the needle

broke off and lodged in the medial pterygoid of Conrad B. Muhammad causing his severe

injury.

21. Conrad B. Muhammad's injuries were proximately caused by:

(a)  Defendant, ABC, Inc.'s neglect assembly, design, inspection, testing

marketing, advertising, distributing and selling of the subject thirty (30)

gauge needle in a defective and dangerous condition.

(b)  Defendant, ABC, Inc.'s neglect failure to warn, instruct, adequately

warn, and adequately instruct the general public and foreseeable intended

users of the dangerous and defective condition of the subject thirty (30)

gauge stainless steel needle.

(c)  Defendant, ABC, Inc.'s negligent placement of the subject thirty (30)

gauge needle in the channels of trade when it knew or with reasonable care

should have known, said thirty (30) gauge stainless steel needle to be in a

dangerous and defective condition and in a manner that ABC, Inc. foresaw,

or in the reasonable exercise of due care, ought to have foreseen would

carry said product into contact with persons such as Conrad B.

Muhammad, defendant ABC, Inc. failed to use reasonable care to prevent

injury to such persons, including Conrad B. Muhammad.

22. The dangerous and defective condition of the subject thirty (30) gauge stainless steel

needle existed when the subject thirty (30) gauge stainless steel needle left the control of

ABC, Inc.

23. As the direct and proximate result of ABC, Inc.'s negligence, Conrad B. Muhammad

LANE ALTMAN & OWENS, LLP
101 FEDERAL STREET
BOSTON, MASS.  02110

(617) 345-9800

49870(1)

sustained severe and permanent injury.

WHEREFORE, the plaintiff Michele Y. Griffith, M.D., as mother and next friend of Conrad B. Muhammad, demands judgment on Count III against the defendant, ABC, Inc.

## COUNT IV

24. The plaintiff, Michele Y. Griffith, M.D., repeats and realleges paragraphs 1-23, and by reference incorporates and makes them a part of this claim.

25. Conrad B. Muhammad a natural person whom ABC, Inc. reasonably anticipated would be a user of the subject thirty (30) gauge stainless steel needle.

26. Defendant, ABC, Inc. expressly and impliedly warranted to the general public, intended users, and Conrad B. Muhammad that the subject thirty (30) gauge stainless steel needle, including its design and composition and use was safe, merchantable and fit for its intended purpose and uses.

27. ABC, Inc. breached express and implied warranties in that the subject thirty (30) gauge stainless steel needle, including its design and composition, rendered the product unreasonable dangerous, were not of merchantable quality and were unfit for its intended purposes and uses.

28. Conrad B. Muhammad relied to his detriment on the warranties made by the defendant ABC, Inc. concerning the subject thirty (30) gauge stainless steel needle.

29. Conrad B. Muhammad could not have reasonably discovered the defective and dangerous condition of the subject thirty (30) gauge stainless steel needle.

30. As the direct and proximate result of ABC, Inc.'s breaches of warranty, Conrad B. Muhammad sustained severe and permanent injury.

WHEREFORE, the plaintiff, Michele Y. Griffith, M.D., as mother and next friend

LANE ALTMAN & OWENS, LLP
101 FEDERAL STREET
BOSTON, MASS. 02110

(617) 345-9800

49870(1)

of Conrad B. Muhammad, demands judgment on Count IV against the defendant ABC, Inc.

## COUNT V

31. The plaintiff, Michele Y. Griffith, M.D., repeats and realleges paragraphs 1-30, and by reference incorporates and makes them part of this claim.

32. At all times relevant to this Complaint the defendant, The Center for Pediatric Dental Care held itself out to the public as a capable and competent association of pediatric dentists.

33. On or about May 16, 2000, Arnold I. Weiss, D.D.S., a member of The Center for Pediatric Dental Care, had undertook to provide dental care, treatment and attention to Conrad B. Muhammad, a minor.

34. Arnold I. Weiss, D.D.S. failed to exercise reasonable care during and in provision of dental care, treatment and attention to Conrad B. Muhammad, as set forth in paragraphs 10-13 of this Complaint.

35. As a result of the careless and negligent provision of dental care, treatment and attention by Arnold I. Weiss, D.D.S., a member of The Center for Pediatric Dental Care, Conrad B. Muhammad was caused to suffer severe and painful personal and emotional injuries for which the defendant, The Center for Pediatric Dental Care is liable.

WHEREFORE, the plaintiff, Michele Y. Griffith, M.D.,  as mother and next friend of Conrad B. Muhammad, demands judgment on Count V against the defendant, The Center for Pediatric Dental Care.

## COUNT VI

36. The plaintiff, Michele Y. Griffith, M.D., individually, repeats and realleges

LANE ALTMAN & OWENS, LLP
101 FEDERAL STREET
BOSTON, MASS. 02110

(617) 345-9800

- 7 -

49870(1)

paragraphs 1-35, and by reference incorporates and makes them a part of this claim.

37. As a result of the various acts and omissions of defendant, Arnold I. Weiss, D.D.S., the plaintiff Michele Y. Griffith, M.D., individually, has suffered the loss of consortium of her child, his companionship, services and their familial relationship, all to her detriment.

WHEREFORE, the plaintiff, Michele Y. Griffith, M.D., individually, demands judgment on Count VI against the defendant, Arnold I. Weiss, D.D.S.

## COUNT VII

38. The plaintiff, Michele Y. Griffith, M.D., individually, repeats and realleges paragraphs 1-37, and by reference incorporates and makes them a part of this claim.

39. As a result of the various acts and omissions of defendant, ABC, Inc., the plaintiff Michele Y. Griffith, M.D., individually, has suffered the loss of consortium of her child, his companionship, services and their familial relationship, all to her detriment.

WHEREFORE, the plaintiff, Michele Y. Griffith, M.D., individually, demands judgment on Count VII against the defendant, ABC, Inc.

## COUNT VIII

40. The plaintiff, Michele Y. Griffith, M.D., individually, repeats and realleges paragraphs 1-39, and by reference incorporates and makes them a part of this claim.

41. As a result of the various acts and omissions of defendant, The Center for Pediatric Dental Care, the plaintiff Michele Y. Griffith, M.D., individually, has suffered the loss of consortium of her child, his companionship, services and their familial relationship, all to her detriment.

WHEREFORE, the plaintiff, Michele Y. Griffith, M.D., individually, demands

LANE ALTMAN & OWENS, LLP
101 FEDERAL STREET
BOSTON, MASS.  02110

(617) 345-9800

- 8 -

judgment on Count VIII against the defendant, The Center of Pediatric Dental Care.

## JURY DEMAND

### THE PLAINTIFF DEMANDS A TRIAL BY JURY.

MICHELE Y. GRIFFITH, M.D.,
INDIVIDUALLY AS MOTHER
AND NEXT FRIEND OF
CONRAD B. MUHAMMAD
Plaintiff,

By their Attorneys,

HENRY F. OWENS III, BBO# 381135
LAWRENCE P. MURRAY, BBO# 561835

March 15, 2001

LMURRAY\\.201621_1

LANE ALTMAN & OWENS, LLP
101 FEDERAL STREET
BOSTON, MASS. 02110
—————
(617) 345-9800

49870(1)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-776

JULIE MONTEIRO, ON HER OWN  BEHALF )
AND AS NEXT FRIEND )
OF  HER MINOR DAUGHTERS, )
VANESSA ANNE MONTEIRO AND )
RENEE ELAINE MONTEIRO, )

　　　　　Plaintiffs

vs.

TOWN OF SANDWICH, MASSACHUSETTS, )
PAUL M. HARRINGTON, )
DAVID MALCOLMSON, )
JAMES SIMPSON AND )
STEVE CHAPMAN )

　　　　　Defendants

01CV 10175 · MEL

**DEFENDANTS',  TOWN OF SANDWICH, PAUL M. HARRINGTON,
MICHAEL MILLER, DAVID MALCOLMSON, JAMES SIMPSON AND
STEVE CHAPMAN,  ANSWER TO PLAINTIFFS' COMPLAINT WITH
CLAIM OF RIGHT TO TRIAL BY JURY**

### FIRST DEFENSE

The defendants hereby state that the plaintiffs' complaint fails to state a cause of action upon which relief can be granted.

### SECOND DEFENSE

The defendants hereby answer the plaintiffs' Complaint, Paragraph by Paragraph, as follows:

1.　The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 1 of the plaintiffs' complaint.

2.　The defendants admit the allegations contained in Paragraph No. 2 of the plaintiffs' complaint.

3.　The defendants admit the allegations contained in Paragraph No. 3 of the plaintiffs' complaint.

1

③

4.     The defendants admit the allegations contained in Paragraph No. 4 of the plaintiffs' complaint.

5.     The defendants admit the allegations contained in Paragraph No. 5 of the plaintiffs' complaint.

6.     The defendants admit the allegations contained in Paragraph No. 6 of the plaintiffs' complaint.

7.     The defendants admit the allegations contained in Paragraph No. 5 of the plaintiffs' complaint.

## COUNT ONE

8.     The defendants hereby repeat their responses to Paragraphs 1 through 7 of the plaintiffs' complaint.

9.     The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 9 of the plaintiffs' complaint.

10.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 10 of the plaintiffs' complaint.

11.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 11 of the plaintiffs' complaint.

12.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 12 of the plaintiffs' complaint.

13.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 13 of the plaintiffs' complaint.

14.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 14 of the plaintiffs' complaint.

15.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 15 of the plaintiffs' complaint.

16.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 16 of the plaintiffs' complaint.

17.     The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 17 of the plaintiffs' complaint.

18.     The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 18 of the plaintiffs' complaint.

19.     The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 19 of the plaintiffs' complaint.

20.     The defendants admit the allegations contained in Paragraph No. 20 of the plaintiffs' complaint.

21.     The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph No. 21 of the plaintiffs' complaint.

22.     The defendants admit the allegations contained in Paragraph No. 22 of the plaintiffs' complaint.

23.     The defendants deny the allegations contained in Paragraph No. 23 of the plaintiffs' complaint.

24.     The defendants deny the allegations contained in Paragraph No. 24 of the plaintiffs' complaint.

25.     The defendants deny the allegations contained in Paragraph No. 25 of the plaintiffs' complaint.

26.     The defendants deny the allegations contained in Paragraph No. 26 of the plaintiffs' complaint.

27.     The defendants deny the allegations contained in Paragraph No. 27 of the plaintiffs' complaint.

28.     The defendants deny the allegations contained in Paragraph No. 28 of the plaintiffs' complaint.

29.     The defendants deny the allegations contained in Paragraph No. 29 of the plaintiffs' complaint.

30.     The defendants admit  the allegations contained in Paragraph No. 30 of the plaintiffs' complaint.

31.     The defendants admit that after the police arrived, Julie Monteiro was sent to the hospital with her minor children.  The defendants cannot admit or deny the remaining allegations contained in Paragraph No. 31 of the

3

plaintiffs' complaint as they are without knowledge or information sufficient to form a belief as to the truth of those allegations.

32.   The defendants deny the allegations contained in Paragraph No. 32 of the plaintiffs' complaint.

33.   The defendants deny the allegations contained in Paragraph No. 33 of the plaintiffs' complaint.

34.   The allegations in this paragraph No. 34 contain ascertains of opinion to which the defendants need not respond, but to the extent that the allegations require a response, the defendants deny the same.

35.   The defendants deny the allegations contained in Paragraph No. 35 of the plaintiffs' complaint.

36.   The defendants deny the allegations contained in Paragraph No. 36 of the plaintiffs' complaint.

37.   The defendants deny the allegations contained in Paragraph No. 37 of the plaintiffs' complaint.

38.   The defendants deny the allegations contained in Paragraph No. 38 of the plaintiffs' complaint.

39.   The defendants deny the allegations contained in Paragraph No. 39 of the plaintiffs' complaint.

40.   The defendants deny the allegations contained in Paragraph No. 40 of the plaintiffs' complaint.

41.   The defendants deny the allegations contained in Paragraph No. 41 of the plaintiffs' complaint.

42.   The defendants deny the allegations contained in Paragraph No. 42 of the plaintiffs' complaint.

43.   The defendants deny the allegations contained in Paragraph No. 43 of the plaintiffs' complaint.

44.   The defendants admit that Paul Harrington was one of the officers who responded to the plaintiffs' home.  The defendants deny that he participated in activities as described by the plaintiffs in the allegations contained in Paragraph No. 44 of the plaintiffs' complaint.

45.   The defendants admit that David Malcolmson was one of the officers who responded to the plaintiffs' home. The defendants deny that he participated in activities as described by the plaintiffs in the allegations contained in Paragraph No. 45 of the plaintiffs' complaint.

46. The defendants admit that Michael Miller was one of the officers who responded to the plaintiffs' home. The defendants deny that he participated in activities as described by the plaintiffs in the allegations contained in Paragraph No. 46 of the plaintiffs' complaint.

47. The defendants admit that Steve Chapman was one of the officers who responded to the plaintiffs' home. The defendants deny that he participated in activities as described by the plaintiffs in the allegations contained in Paragraph No. 47 of the plaintiffs' complaint.

48. The allegations contained in Paragraph No. 48 of the plaintiffs' complaint state a conclusion of law to which the defendants need not respond.

49. The defendants deny the allegations contained in Paragraph No. 49 of the plaintiffs' complaint.

50. The defendants deny the allegations contained in Paragraph No. 50 of the plaintiffs' complaint.

WHEREFORE, the defendants deny that the plaintiffs are entitled to judgment in any amount against the defendants and, furthermore, the defense asks this Honorable Court to enter judgment for the defendants and against the plaintiffs along with interests, costs and attorneys fees.

## COUNT TWO

51. The defendants hereby repeat their responses to Paragraphs 1 through 50 of the plaintiffs' complaint.

52. The allegations contained in Paragraph No. 52 of the plaintiffs' complaint state a conclusion of law to which the defendants need not respond.

53. The defendants deny the allegations contained in Paragraph No. 53 of the plaintiffs' complaint.

54. The defendants deny the allegations contained in Paragraph No. 54 of the plaintiffs' complaint.

WHEREFORE, the defendants deny that the plaintiffs are entitled to judgment in any amount against the defendants and, furthermore, the defense asks this Honorable Court to enter judgment for the defendants and against the plaintiffs along with interests, costs and attorneys fees.

## COUNT THREE

55. The defendants hereby repeat their responses to Paragraphs 1 through 54 of the plaintiffs' complaint.

56.     The defendants state that the letter referenced in Paragraph No. 56 of the plaintiffs' complaint speaks for itself.

56.     (SIC) The defendants admit that the Town of Sandwich did not reply to the Demand Letter (Exhibit B).

57.     The defendants deny the allegations contained in Paragraph No. 57 of the plaintiffs' complaint.

58.     The defendants deny the allegations contained in Paragraph No. 58 of the plaintiffs' complaint.

59.     The defendants deny the allegations contained in Paragraph No. 59 of the plaintiffs' complaint.

60.     The defendants deny the allegations contained in Paragraph No. 60 of the plaintiffs' complaint.

61.     The defendants deny the allegations contained in Paragraph No. 61 of the plaintiffs' complaint.

62.     The defendants deny the allegations contained in Paragraph No. 62 of the plaintiffs' complaint.

63.     The defendants deny the allegations contained in Paragraph No. 63 of the plaintiffs' complaint.

64.     The defendants deny the allegations contained in Paragraph No. 64 of the plaintiffs' complaint.

65.     The defendants deny the allegations contained in Paragraph No. 65 of the plaintiffs' complaint.

WHEREFORE, the defendants deny that the plaintiffs are entitled to judgment in any amount against the defendants and, furthermore, the defense asks this Honorable Court to enter judgment for the defendants and against the plaintiffs along with interests, costs and attorneys fees.

## AFFIRMATIVE DEFENSES

## AFFIRMATIVE DEFENSE NO. 1

By way of affirmative defense, the defendants say that the action is barred by the applicable statute of limitations.

**AFFIRMATIVE DEFENSE NO. 2**

By way of affirmative defense, the defendants state that the defendants' actions are entitled to qualified good faith immunity.

**AFFIRMATIVE DEFENSE NO. 3**

By way of affirmative defense, the defendants say that the negligence of the plaintiffs was greater than the alleged negligence of the defendants and that such negligence of the plaintiffs contributed to its alleged injury and, therefore, the plaintiffs are barred from recovery under M.G.L. Ch. 231, §85.

**AFFIRMATIVE DEFENSE NO. 4**

By way of affirmative defense, the defendants say that the plaintiffs were guilty of contributory negligence and that the damages, if any, recovered by the plaintiffs from the defendants should be reduced in proportion to the said negligence of the plaintiffs in accordance with M.G.L. Ch. 231, §85.

**AFFIRMATIVE DEFENSE NO.5**

By way of affirmative defense, the defendants say that if the plaintiffs suffered injuries or damages, as alleged, such injuries or damages were caused by someone for whose conduct the defendants were not and are not legally responsible.

**AFFIRMATIVE DEFENSE NO. 6**

By way of affirmative defense, the defendants state that the plaintiffs cannot recover because the plaintiffs failed to give notice of the damages and/or injuries allegedly suffered by the plaintiffs to the defendants as required by the statutes of the Commonwealth of Massachusetts.

<div align="center">

**JURY CLAIM**

</div>

THE DEFENDANTS CLAIM A TRIAL BY JURY AS TO ALL ISSUES PROPERLY TRIABLE TO A JURY.

The Defendants,
Town of Sandwich, Paul M. Harrington,
Michael Miller, David Malcolmson,
James Simpson and Steve Chapman,
By its attorneys,

Leonard H. Kesten, BBO NO: 542042
BRODY, HARDOON, PERKINS & KESTEN
One Exeter Plaza
Boston, MA  02116
(617) 880-7100

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail by hand) on

7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROSEANNE WRIGHT,                    )
                                   )        C.A. NO. 00-12582RWZ
        Plaintiff,                 )
                                   )
v.                                 )
                                   )
JOHNSON & JOHNSON SHORT TERM       )
DISABILITY PLAN, JOHNSON &         )
JOHNSON LONG TERM DISABILITY       )
PLAN, JOHNSON & JOHNSON and        )
KEMPER NATIONAL SERVICES, INC.,    )
                                   )
        Defendants.                )

ANSWER OF DEFENDANT
KEMPER NATIONAL SERVICES, INC.

For its first defense to plaintiff's complaint, defendant Kemper National Services, Inc.

("Kemper") answers the correspondingly numbered paragraphs of plaintiff's complaint as

follows:

1.      This paragraph purports to characterize plaintiff's complaint and, as such, does not

require a response.

2.      This paragraph states a legal conclusion as to which no response is required.

3.      Kemper denies that plaintiff is a former employee of Johnson & Johnson ("J&J").

Kemper admits that while plaintiff was an employee of Johnson & Johnson Medical, Inc.

("JJMI"), she participated in a Short Term Disability Plan. Kemper is without sufficient

knowledge or information to form a belief as to the truth of plaintiff's allegations concerning her

residence. The remaining allegations contained in this paragraph state a legal conclusion as to

which no response is required.

4.      This paragraph states a legal conclusion as to which no response is required.



5.      This paragraph states a legal conclusion as to which no response is required.

6.      Kemper admits that J&J is a New Jersey corporation with a principal place of business at One Johnson & Johnson Plaza, New Brunswick, NJ 08933.  The remaining allegations contained in this paragraph state legal conclusions as to which no response is required.

7.      Kemper admits that it is a Florida corporation with a principal place of business at 1061 S.W. 80th Terrace, Plantation, Florida.  The remaining allegations contained in this paragraph state legal conclusions as to which no response is required.

8.      Kemper admits that plaintiff was employed by JJMI as a Clinical Nurse Educator and that her supervisor was Kathy L. Farley, the Manager for Worldwide Clinical Education for JJMI. Kemper is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph.

9.      Kemper denies that plaintiff was an employee of J&J.  Further answering, Kemper states that the terms of the STD plan speak for themselves and deny plaintiff's allegations to the extent they conflict with the terms of the STD plan.

10.     Kemper states that the terms of the LTD Plan speak for themselves and deny plaintiff's allegations to the extent they conflict with the terms of the LTD Plan.  Kemper is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

11.     Kemper lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

12.     Kemper lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

13.     Kemper lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

14.     Kemper admits that it received a letter from Dr. Davis dated August 17, 1998. Further answering, Kemper states that the contents of the August 17, 1998 letter speak for themselves, and deny plaintiff's allegations to the extent they conflict with the contents of the letter. Kemper lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in this paragraph.

15.     Defendants admit that plaintiff sought short term disability benefits under the STD Plan to begin on or about July 27, 1998. Kemper lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph.

16.     Kemper admits that it reviewed plaintiff's claim for short term disability benefits and denied plaintiff's claim by letter dated August 18, 1998. Further answering, defendants state that the contents of Kemper's August 18, 1998 letter speak for themselves, and deny plaintiff's allegations to the extent they contradict the contents of the Kemper letter. Kemper denies the remaining allegations contained in this paragraph.

17.     Defendants admit that Farley sent Gina Turner of Kemper a letter dated August 11, 1998 but deny that Farley is an employee of J&J. Further answering, defendants state that the contents of the August 11, 1998 letter speak for themselves, and deny plaintiff's allegations to the extent they conflict with the August 11, 1998 letter. Kemper admits that it based its determination, in part, on information concerning the requirements of plaintiff's clinical nurse educator position provided by Farley.

18.     Denied.

19.     Kemper admits that plaintiff appealed the denial of her claim for short term disability benefits by letter dated September 14, 1998. Further answering, Kemper states that the contents of the September 14, 1998 letter speak for themselves and deny plaintiff's allegations to the extent they conflict with the contents of this letter. Kemper denies that plaintiff demonstrated that her job required a considerable amount of standing and walking. Kemper lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph.

20.     Kemper admits that it denied plaintiff's appeal by letter dated September 24, 1998 and states that the contents of the September 24, 1998 letter speak for themselves. Kemper denies plaintiff's allegations to the extent they conflict with the contents of this letter.

21.     Kemper admits that plaintiff appealed the denial of her claim for short term disability benefits by letter dated October 27, 1998 and that by letter dated December 15, 1998, the Johnson & Johnson Disability Review Committee denied plaintiff's claim for short term disability benefits. Further answering, Kemper states that the contents of the Summary Plan Description and the December 15, 1998 letter speak for themselves and deny plaintiff's allegations to the extent they conflict with the contents of these documents.

22.     This paragraph states a legal conclusion as to which no response is required.

23.     Kemper denies that plaintiff was unable to return to her position with JJMI because of her disability. Kemper lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in this paragraph.

4

## Count I – Denial of Benefits

24.     Kemper incorporates by reference its responses to paragraphs 1 through 23 above.

25.     Denied.

26.     Denied.

## Count II – Breach of Fiduciary Duty

27-32.  These paragraphs purport to allege a claim against J&J only, and as such, no response is

required by Kemper.

## Count III – Interference With Protected Rights

33-35.  These paragraphs purport to allege a claim against J&J only, and as such, no response is

required by Kemper.

## Second Defense

Plaintiff's claims are barred, in whole or in part, by her failure to mitigate her damages.

## Third Defense

Plaintiff's claims are barred, in whole or in part, by her failure to state a claim for which

relief can be granted.

KEMPER NATIONAL SERVICES, INC.,
By its attorneys,

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of
the above document was served upon the
attorney of record for each party by mail by hand

Date: **3·8·01**    _Christa Luft_

Dated: March **8** , 2001
962024.1

_Christa vd Luft_

David R. Schmahmann (BBO#446020)
Christa von der Luft (BBO#600362)
Nutter, McClennen & Fish LLP
One International Place
Boston, MA 02110
(617) 439-2000

5

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SCOTT C. RUGGLES,                      )
    **Plaintiff**                          )
                                          )
V.                                     )        **C.A. NO.01-10105RWZ**
                                          )
STEPHEN CIAVOLA, in his official       )
and personal capacities,               )
RICHARD JOHNSON, in his official       )
and personal capacities,               )
EDWARD DAVIS, III, in his official     )
and personal capacities, and           )
CITY OF LOWELL, MASSACHUSETTS          )
    **Defendants**                        )

## DEFENDANT, CITY OF LOWELL'S
## ANSWER TO PLAINTIFF'S COMPLAINT

The Defendant, City of Lowell ("Defendant"), in the above-entitled action, answers Plaintiff's Complaint on behalf of City of Lowell only, as Defendants Edward Davis, III and Richard Johnson have not been served with Summons and Complaint in this action.

### JURISDICTION

1.    The Defendant states that Paragraph 1 contains no allegations of fact requiring an answer. To the extent that any such allegations are made, they are denied.

2.    The Defendant states that Paragraph 2 contains no allegations of fact requiring an answer. To the extent that any such allegations are made, they are denied.

### THE PARTIES

3.    The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 3.



4.   The Defendant admits so much of Paragraph 4 which states that Defendant Stephen Ciavola was a police officer employed by the City of Lowell, and denies the remaining allegations in Paragraph 4 and calls upon Plaintiff to prove same.

5.   The Defendant admits that Richard Johnson was the City Manager of the City of Lowell, and further answering, lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 5.

6.   The Defendant admits that Edward Davis was the Superintendent of Police for the City of Lowell, and further answering, lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 6.

7.   The Defendant admits the allegations in Paragraph 7.

## GENERAL ALLEGATIONS

8.   The Defendant admits the allegations in Paragraph 8.

9.   The Defendant admits the allegations in Paragraph 9.

10.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 10.

11.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 11.

12.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 12.

13.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 13.

14.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 14.

15.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 15.

16.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 16.

17.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 17.

18.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 18.

19.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 19.

20. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 20.

21. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 21.

**COUNT I:**
**USE OF EXCESSIVE FORCE IN VIOLATION**
**OF THE FOURTH AMENDMENT**
**BY DEFENDANT-CIAVOLA**

22. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 21 and incorporates them by reference as if fully set forth herein.

23. The Defendant states that Paragraph 23 is directed to a Defendant other than the City of Lowell and no answer is required.

24. The Defendant states that Paragraph 24 is directed to a Defendant other than the City of Lowell and no answer is required.

25. The Defendant states that Paragraph 25 is directed to a Defendant other than the City of Lowell and no answer is required.

26. The Defendant states that Paragraph 26 is directed to a Defendant other than the City of Lowell and no answer is required.

27. The Defendant states that Paragraph 27 is directed to a Defendant other than the City of Lowell and no answer is required.

28. The Defendant states that Paragraph 28 is directed to a Defendant other than the City of Lowell and no answer is required.

29. The Defendant states that Paragraph 29 is directed to a Defendant other than the City of Lowell and no answer is required.

30. The Defendant states that Paragraph 30 is directed to a Defendant other than the City of Lowell and no answer is required.

31. The Defendant states that Paragraph 31 is directed to a Defendant other than the City of Lowell and no answer is required.

32. The Defendant states that Paragraph 32 is directed to a Defendant other than the City of Lowell and no answer is required.

33. The Defendant states that Paragraph 33 is directed to a Defendant other than the City of Lowell and no answer is required.

<div align="center">

**COUNT II:**
**VIOLATION OF M.G.L. c.12, §11**
**BY DEFENDANT-CIAVOLA**

</div>

34. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 33 and incorporates them by reference as if fully set forth herein.

35. The Defendant states that Paragraph 35 is directed to a Defendant other than the City of Lowell and no answer is required.

36. The Defendant states that Paragraph 36 is directed to a Defendant other than the City of Lowell and no answer is required.

<div align="center">

**COUNT III:**
**ASSAULT AND BATTERY OF THE PLAINTIFF**
**BY DEFENDANT-CIAVOLA**

</div>

37. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 36 and incorporates them by reference as if fully set forth herein.

38. The Defendant states that Paragraph 38 is directed to a Defendant other than the City of Lowell and no answer is required.

39. The Defendant states that Paragraph 39 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT IV:
## MALICIOUS PROSECUTION OF THE PLAINTIFF
## UNDER THE FOURTH AMENDMENT
## BY DEFENDANT-CIAVOLA

40.   The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 39 and incorporates them by reference as if fully set forth herein.

41.   The Defendant states that Paragraphs 41 is directed to a Defendant other than the City of Lowell and no answer is required.

42.   The Defendant states that Paragraph 42 is directed to a Defendant other than the City of Lowell and no answer is required.

43.   The Defendant states that Paragraph 43 is directed to a Defendant other than the City of Lowell and no answer is required.

44.   The Defendant states that Paragraph 44 is directed to a Defendant other than the City of Lowell and no answer is required.

45.   The Defendant states that Paragraph 45 is directed to a Defendant other than the City of Lowell and no answer is required.

46.   The Defendant states that Paragraph 46 is directed to a Defendant other than the City of Lowell and no answer is required.

47.   The Defendant states that Paragraph 47 is directed to a Defendant other than the City of Lowell and no answer is required.


## COUNT V:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## BY DEFENDANT-CIAVOLA

48.   The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 47 and incorporates them by reference as if fully set forth herein.

49. The Defendant states that Paragraph 49 is directed to a Defendant other than the City of Lowell and no answer is required.

50. The Defendant states that Paragraph 50 is directed to a Defendant other than the City of Lowell and no answer is required

51. The Defendant states that Paragraph 51 is directed to a Defendant other than the City of Lowell and no answer is required

52. The Defendant states that Paragraph 52 is directed to a Defendant other than the City of Lowell and no answer is required

53. The Defendant states that Paragraph 53 is directed to a Defendant other than the City of Lowell and no answer is required

54. The Defendant states that Paragraph 54 is directed to a Defendant other than the City of Lowell and no answer is required

## COUNT VI:
## NEGLIGENCE BY THE
## CITY OF LOWELL

55. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 54 and incorporates them by reference as if fully set forth herein.

56. The Defendant denies the allegations in Paragraph 56 and calls upon Plaintiff to prove same.

57. The Defendant admits the allegations in Paragraph 57.

58. The Defendant denies the allegations in Paragraph 58 and calls upon Plaintiff to prove same.

59. The Defendant denies the allegations in Paragraph 59 and calls upon Plaintiff to prove same.

60. The Defendant denies the allegations in Paragraph 60 and calls upon Plaintiff to prove same.

61. The Defendant denies the allegations in Paragraph 61 and calls upon Plaintiff to prove same.

62. The Defendant denies the allegations in Paragraph 62 and calls upon Plaintiff to prove same.

63. The Defendant denies the allegations in Paragraph 63 and calls upon Plaintiff to prove same.

64. The Defendant denies the allegations in Paragraph 64 and calls upon Plaintiff to prove same.

65. The Defendant denies the allegations in Paragraph 65 and calls upon Plaintiff to prove same.

66. The Defendant denies the allegations in Paragraph 66 and calls upon Plaintiff to prove same.

67. The Defendant denies the allegations in Paragraph 67 and calls upon Plaintiff to prove same.

WHEREFORE the Defendant, City of Lowell, requests that this Honorable Court dismiss the Plaintiff's Complaint and award the Defendant, City of Lowell, attorney's fees and other costs incurred in defending this action.

## COUNT VII:
### DELIBERATE INDIFFERENCE BY
### DEFENDANTS-JOHNSON, DAVIS, AND THE CITY OF LOWELL
### FOR DISPLAYING DELIBERATE INDIFFERENCE BY
### FAILING TO SCREEN POLICE OFFICERS

68. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 67 and incorporates them by reference as if fully set forth herein.

69. The Defendant denies the allegations in Paragraph 69 and calls upon Plaintiff to prove same.

70. The Defendant denies the allegations in Paragraph 70 and calls upon Plaintiff to prove same.

71. The Defendant denies the allegations in Paragraph 71 and calls upon Plaintiff to prove same.

72. The Defendant denies the allegations in Paragraph 72 and calls upon Plaintiff to prove same.

73. The Defendant denies the allegations in Paragraph 73 and calls upon Plaintiff to prove same.

74. The Defendant denies the allegations in Paragraph 74 and calls upon Plaintiff to prove same.

75. The Defendant denies the allegations in Paragraph 75 and calls upon Plaintiff to prove same.

76. The Defendant denies the allegations in Paragraph 76 and calls upon Plaintiff to prove same.

77. The Defendant denies the allegations in Paragraph 77 and calls upon Plaintiff to prove same.

78. The Defendant denies the allegations in Paragraph 78 and calls upon Plaintiff to prove same.

79. The Defendant denies the allegations in Paragraph 79 and calls upon Plaintiff to prove same.

80. The Defendant denies the allegations in Paragraph 80 and calls upon Plaintiff to prove same.

81. The Defendant denies the allegations in Paragraph 81 and calls upon Plaintiff to prove same.

82. The Defendant denies the allegations in Paragraph 82 and calls upon Plaintiff to prove same.

83. The Defendant denies the allegations in Paragraph 83 and calls upon Plaintiff to prove same.

84. The Defendant denies the allegations in Paragraph 84 and calls upon Plaintiff to prove same.

85. The Defendant denies the allegations in Paragraph 85 and calls upon Plaintiff to prove same.

WHEREFORE the Defendant, City of Lowell, requests that this Honorable Court dismiss the Plaintiff's Complaint and award the Defendant, City of Lowell, attorney's fees and other costs incurred in defending this action.

## FIRST AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state a claim upon which relief can be granted under 42 U.S.C. §1983, because he fails to allege

a municipal custom, policy or practice or that any custom, policy or practice of Defendant, City of Lowell, caused injury to Plaintiff.

## SECOND AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state a claim under M.G.L. c.12, §11I, because he fails to allege a deprivation of constitutional rights by threats, intimidation or coercion by Defendant, City of Lowell.

## THIRD AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it has not violated a well-established constitutional right of the Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff's action is barred by the relevant statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff is not entitled to prospective equitable relief because he fails to support allegations of the likelihood of future injury, or to allege irreparable harm, or the unavailability of an adequate remedy at law.

## SIXTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state causes of action which rise to the level of constitutional violations.

## SEVENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is immune from liability based on respondeat superior as alleged under 42 U.S.C. §1983 and M.G.L. c.12, §§11H and 11I.

## EIGHTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that Plaintiff's Complaint fails to state a claim under M.G.L. c.12 §§11H and 11I in that the alleged failure to supervise, train and discipline by the Superintendent of Police does not amount to force, intimidation or coercion and the City of Lowell therefore cannot be held liable under the Massachusetts Civil Rights Act.

## NINTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it has not committed any act or acts constituting deliberate indifference to Plaintiff's constitutional rights and the Complaint therefore should be dismissed as to Defendant, City of Lowell.

## TENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is not liable for the intentional torts alleged in Plaintiff's Complaint under M.G.L. c.258.

## ELEVENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is immune from any claims of negligence alleged in the Complaint under M.G.L. c.258 §§2 and 10(a) and 10(b).

## TWELFTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the police officer named in Plaintiff's Complaint was not acting under color of law and therefore the Defendant, City of Lowell, is not liable to the Plaintiff for any act or acts alleged in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is immune from liability for punitive damages and said damages may not be assessed against the City of Lowell as requested in Plaintiffs' Complaint.

## FOURTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that Defendants Johnson and Davis are not liable for punitive damages when acting within their official capacities.

## FIFTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the hiring process used by the City of Lowell complied with and followed the rules and regulations of the Civil Service Commission, as promulgated under M.G.L. c.31 and the Defendant, City of Lowell, is therefore not liable for any acts complained of concerning violations of Plaintiff's rights by hiring Ciavola.

## SIXTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that Defendants Johnson and Davis are entitled to qualified immunity having acted in good faith pursuant to the rules and regulations of the Civil Service Commission and Division of Human Resources of Commonwealth of Massachusetts and M.G.L. c.31.

## SEVENTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that, not being a person, it is immune from liability under M.G.L. c.12, §§11H and 11I.

**THE DEFENDANT, CITY OF LOWELL, DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

March 14, 2001                          CITY OF LOWELL, DEFENDANT


                                        _Thomas F. Sweeney / cps_____
                                        Thomas E. Sweeney, City Solicitor
                                        BBO # 490360B
                                        City Hall, Law Department
                                        375 Merrimack Street, Rm. 64
                                        Lowell MA 01852-5986
                                        (978) 970-4050
                                        FAX (978) 453-1510


                            **<u>CERTIFICATE OF SERVICE</u>**


        I hereby certify that a true copy of the foregoing document was served on Daniel S.

Sharp, Esq., WHITFIELD, SHARP & SHARP, 196 Atlantic Avenue, Marblehead MA 01945,

via first-class mail, on March 14, 2001.

                                        _Thomas E. Sweeney / cps_____
                                        Thomas E. Sweeney, City Solicitor

<div align="center">

**UNITED STATESS DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

</div>

|  |  |  |
|---|---|---|
| **ERIC R. CRETE,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **V.** | ) | **C.A. NO.01-10104RWZ** |
| | ) | |
| **STEPHEN CIAVOLA**, in his official | ) | |
| and personal capacities, | ) | |
| **TERRANCE KANE**, in his personal | ) | |
| capacity | ) | |
| **EDWARD DAVIS, III** , in his personal | ) | |
| and official capacities, | ) | |
| **RICHARD JOHNSON**, in his official | ) | |
| and personal capacities, and **THE** | ) | |
| **CITY OF LOWELL, MASSACHUSETTS** | ) | |
| **Defendants** | ) | |

<div align="center">

**DEFENDANT, CITY OF LOWELL'S**
**ANSWER TO PLAINTIFF'S COMPLAINT**

</div>

The Defendant, City of Lowell ("Defendant"), in the above-entitled action, answers Plaintiff's Complaint on behalf of City of Lowell only, as Defendants Edward Davis, III and Richard Johnson have not been served with Summons and Complaint in this action.

<div align="center">

**JURISDICTION**

</div>

1.   The Defendant states that Paragraph 1 contains no allegations of fact requiring an answer. To the extent that any such allegations are made, they are denied.

2.   The Defendant states that Paragraph 2 contains no allegations of fact requiring an answer. To the extent that any such allegations are made, they are denied.

<div align="center">

**THE PARTIES**

</div>

3.   The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 3.

4.   The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 4.



5.   The Defendant admits that Richard Johnson was the City Manager of the City of Lowell, and further answering, lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 5.

6.   The Defendant admits the allegations in Paragraph 6.

7.   The Defendant admits the allegations in Paragraph 7.

8.   The Defendant lacks sufficient information to admit or deny the allegations in Paragraph 8.

## GENERAL ALLEGATIONS

8.   The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 8.

9.   The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 9.

10.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 10.

11.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 11.

12.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 12.

13.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 13.

### COUNT I:
### USE OF EXCESSIVE FORCE IN VIOLATION
### OF THE FOURTH AMENDMENT
### BY DEFENDANT-CIAVOLA

14.  The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 13 and incorporates them by reference as if fully set forth herein..

15.  The Defendant states that Paragraph 15 is directed to a Defendant other than the City of Lowell and no answer is required.

16.  The Defendant states that Paragraph 16 is directed to a Defendant other than the City of Lowell and no answer is required.

17.  The Defendant states that Paragraph 17 is directed to a Defendant other than the City of Lowell and no answer is required.

18. The Defendant states that Paragraph 18 is directed to a Defendant other than the City of Lowell and no answer is required.

19. The Defendant states that Paragraph 19 is directed to a Defendant other than the City of Lowell and no answer is required.

20. The Defendant states that Paragraph 20 is directed to a Defendant other than the City of Lowell and no answer is required.

21. The Defendant states that Paragraph 21 is directed to a Defendant other than the City of Lowell and no answer is required.

22. The Defendant states that Paragraph 22 is directed to a Defendant other than the City of Lowell and no answer is required.

23. The Defendant states that Paragraph 23 is directed to a Defendant other than the City of Lowell and no answer is required.

24. The Defendant states that Paragraph 24 is directed to a Defendant other than the City of Lowell and no answer is required.

25. The Defendant states that Paragraph 25 is directed to a Defendant other than the City of Lowell and no answer is required.

26. The Defendant states that Paragraph 26 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT II:
## ASSAULT AND BATTERY OF THE PLAINTIFF
## BY DEFENDANT-CIAVOLA

27. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 26 and incorporates them by reference as if fully set forth herein..

28. The Defendant states that Paragraph 28 is directed to a Defendant other than the City of Lowell and no answer is required.

29. The Defendant states that Paragraph 29 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT III:
## MALICIOUS PROSECUTION OF THE PLAINTIFF
## UNDER THE FOURTH AMENDMENT
## BY DEFENDANT-CIAVOLA

30. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 29 and incorporates them by reference as if fully set forth herein..

31. The Defendant states that Paragraph 31 is directed to a Defendant other than the City of Lowell and no answer is required.

32. The Defendant states that Paragraph 32 is directed to a Defendant other than the City of Lowell and no answer is required.

33. The Defendant states that Paragraph 33 is directed to a Defendant other than the City of Lowell and no answer is required.

34. The Defendant states that Paragraph 34 is directed to a Defendant other than the City of Lowell and no answer is required.

35. The Defendant states that Paragraph 35 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT IV:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## BY DEFENDANT-CIAVOLA

36. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 35 and incorporates them by reference as if fully set forth herein.

37. The Defendant states that Paragraph 37 is directed to a Defendant other than the City of Lowell and no answer is required.

38. The Defendant states that Paragraph 38 is directed to a Defendant other than the City of Lowell and no answer is required.

39. The Defendant states that Paragraph 39 is directed to a Defendant other than the City of Lowell and no answer is required.

40. The Defendant states that Paragraph 40 is directed to a Defendant other than the City of Lowell and no answer is required.

41. The Defendant states that Paragraph 41 is directed to a Defendant other than the City of Lowell and no answer is required.

42. The Defendant states that Paragraph 42 is directed to a Defendant other than the City of Lowell and no answer is required.

**COUNT V:**
**DELIBERATE INDIFFERENCE BY**
**DEFENDANTS-JOHNSON, DAVIS AND THE CITY OF LOWELL**
**FOR DISPLAYING DELIBERATE INDIFFERENCE BY**
**FAILING TO SCREEN POLICE OFFICERS**

43. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 42 and incorporates them by reference as if fully set forth herein.

44. The Defendant denies the allegations in Paragraph 44 and calls upon Plaintiff to prove same.

45. The Defendant denies the allegations in Paragraph 45 and calls upon Plaintiff to prove same.

46. The Defendant denies the allegations in Paragraph 46 and calls upon Plaintiff to prove same.

47. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 47 and calls upon Plaintiff to prove same.

48. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 48 and calls upon Plaintiff to prove same.

49. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 49 and calls upon Plaintiff to prove same.

50. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 50 and calls upon Plaintiff to prove same.

51. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 51 and calls upon Plaintiff to prove same.

52. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 52 and calls upon Plaintiff to prove same.

53. The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 53 and calls upon Plaintiff to prove same.

54. The Defendant denies the allegations in Paragraph 54 and calls upon Plaintiff to prove same.

55. The Defendant denies the allegations in Paragraph 55 and calls upon Plaintiff to prove same.

56. The Defendant denies the allegations in Paragraph 56 and calls upon Plaintiff to prove same.

57. The Defendant denies the allegations in Paragraph 57 and calls upon Plaintiff to prove same.

58. The Defendant denies the allegations in Paragraph 58 and calls upon Plaintiff to prove same.

59. The Defendant denies the allegations in Paragraph 59 and calls upon Plaintiff to prove same.

60. The Defendant denies the allegations in Paragraph 60 and calls upon Plaintiff to prove same.

## COUNT VI:
## TORTIOUS BATTERY BY
## DEFENDANT-TERRANCE KANE

61. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 60 and incorporates them by reference as if fully set forth herein.

62. The Defendant states that Paragraph 62 is directed to a Defendant other than the City of Lowell and no answer is required.

63. The Defendant states that Paragraph 63 is directed to a Defendant other than the City of Lowell and no answer is required.

64. The Defendant states that Paragraph 64 is directed to a Defendant other than the City of Lowell and no answer is required.

65. The Defendant states that Paragraph 65 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT VII:
## CONSPIRACY BETWEEN DEFENDANT-KANE
## AND DEFENDANT-CIAVOLA
## TO USE EXCESSIVE FORCE

66. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 65 and incorporates them by reference as if fully set forth herein.

67. The Defendant states that Paragraph 67 is directed to a Defendant other than the City of Lowell and no answer is required.

68. The Defendant states that Paragraph 68 is directed to a Defendant other than the City of Lowell and no answer is required.

69. The Defendant states that Paragraph 69 is directed to a Defendant other than the City of Lowell and no answer is required.

70. The Defendant states that Paragraph 70 is directed to a Defendant other than the City of Lowell and no answer is required.

71. The Defendant states that Paragraph 71 is directed to a Defendant other than the City of Lowell and no answer is required.

72. The Defendant states that Paragraph 72 is directed to a Defendant other than the City of Lowell and no answer is required.

73. The Defendant states that Paragraph 73 is directed to a Defendant other than the City of Lowell and no answer is required.

74. The Defendant states that Paragraph 74 is directed to a Defendant other than the City of Lowell and no answer is required.

75. The Defendant states that Paragraph 75 is directed to a Defendant other than the City of Lowell and no answer is required.

76. The Defendant states that Paragraph 76 is directed to a Defendant other than the City of Lowell and no answer is required.

77. The Defendant states that Paragraph 77 is directed to a Defendant other than the City of Lowell and no answer is required.

78. The Defendant states that Paragraph 78 is directed to a Defendant other than the City of Lowell and no answer is required.

79. The Defendant states that Paragraph 79 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT VIII:
## VIOLATION OF FIRST AMENDMENT AND
## M.G.L. c.12, §11
## BY DEFENDANT-CIAVOLA

80. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 79 and incorporates them by reference as if fully set forth herein.

81. The Defendant states that Paragraph 81 is directed to a Defendant other than the City of Lowell and no answer is required.

82. The Defendant states that Paragraph 82 is directed to a Defendant other than the City of Lowell and no answer is required.

83. The Defendant states that Paragraph 83 is directed to a Defendant other than the City of Lowell and no answer is required.

84. The Defendant states that Paragraph 84 is directed to a Defendant other than the City of Lowell and no answer is required.

85. The Defendant states that Paragraph 85 is directed to a Defendant other than the City of Lowell and no answer is required.

86. The Defendant states that Paragraph 86 is directed to a Defendant other than the City of Lowell and no answer is required.

87. The Defendant states that Paragraph 87 is directed to a Defendant other than the City of Lowell and no answer is required.

## DEMAND FOR TRIAL BY JURY

88. The Defendant demands a trial by jury on all issues so triable.

WHEREFORE the Defendant, City of Lowell, requests that this Honorable Court dismiss the Plaintiff's Complaint and award the Defendant, City of Lowell, attorney's fees and other costs incurred in defending this action.

## FIRST AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state a claim upon which relief can be granted under 42 U.S.C. §1983, because he fails to allege a municipal custom, policy or practice or that any custom, policy or practice of Defendant, City of Lowell, caused injury to Plaintiff.

## SECOND AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state a claim under M.G.L. c.12, §11I, because he fails to allege a deprivation of constitutional rights by threats, intimidation or coercion by Defendant, City of Lowell.

## THIRD AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it has not violated a well-established constitutional right of the Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff's action is barred by the relevant statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff is not entitled to prospective equitable relief because he fails to support allegations of the likelihood of future injury, or to allege irreparable harm, or the unavailability of an adequate remedy at law.

## SIXTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state causes of action which rise to the level of constitutional violations.

## SEVENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is immune from liability based on respondeat superior as alleged under 42 U.S.C. §1983 and M.G.L. c.12, §§11H and 11I.

## EIGHTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that Plaintiff's Complaint fails to state a claim under M.G.L. c.12 §§11H and 11I in that the alleged failure to supervise, train and discipline by the Superintendent of Police does not amount to force, intimidation or coercion and the City of Lowell therefore cannot be held liable under the Massachusetts Civil Rights Act.

## NINTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it has not committed any act or acts constituting deliberate indifference to Plaintiff's constitutional rights and the Complaint therefore should be dismissed as to Defendant, City of Lowell.

## TENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is not liable for the intentional torts alleged in Plaintiff's Complaint under M.G.L. c.258.

## ELEVENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is immune from any claims of negligence alleged in the Complaint under M.G.L. c.258 §§2 and 10(a) and 10(b).

## TWELFTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says  that the police officer named in Plaintiff's Complaint was not acting under color of law and therefore the Defendant, City of Lowell, is not liable to the Plaintiff for any act or acts alleged in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is immune from liability for punitive damages and said damages may not be assessed against the City of Lowell as requested in Plaintiffs' Complaint.

## FOURTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that Defendants Johnson and Davis are not liable for punitive damages when acting within their official capacities.

## FIFTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the hiring process used by the City of Lowell complied with and followed the rules and regulations of the Civil Service Commission, as promulgated under M.G.L. c.31 and the Defendant, City of Lowell, is therefore not liable for any acts complained of concerning violations of Plaintiff's rights by hiring Ciavola.

## SIXTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that Defendants Johnson and Davis are entitled to qualified immunity having acted in good faith pursuant to the rules and regulations of the Civil Service Commission and Division of Human Resources of Commonwealth of Massachusetts and M.G.L. c.31.

## SEVENTEENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that, not being a person, it is immune from liability under M.G.L. c.12, §§11H and 11I.

March 14, 2001                                **CITY OF LOWELL, DEFENDANT**

_Thomas E. Sweeney /cps_
Thomas E. Sweeney, City Solicitor
BBO # 490360B
City Hall, Law Department
375 Merrimack Street, Rm. 64
Lowell MA 01852-5986
(978) 970-4050
FAX (978) 453-1510

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served on Daniel S. Sharp, Esq., WHITFIELD, SHARP & SHARP, 196 Atlantic Avenue, Marblehead MA 01945, via first-class mail, on March 14, 2001.

_Thomas E. Sweeney /cps_
Thomas E. Sweeney, City Solicitor

# UNITED STATESS DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ERIC R. CRETE,**<br>    **Plaintiff**            )<br>                       )<br>**V.**                       )<br>                       )<br>**STEPHEN CIAVOLA**, in his official<br>and personal capacities,<br>**TERRANCE KANE**, in his personal<br>capacity<br>**EDWARD DAVIS, III** , in his personal<br>and official capacities,<br>**RICHARD JOHNSON**, in his official<br>and personal capacities, and **THE**<br>**CITY OF LOWELL, MASSACHUSETTS**<br>    **Defendants** | **C.A. NO.01-10104RWZ** |

## DEFENDANT, CITY OF LOWELL'S
## ANSWER TO PLAINTIFF'S COMPLAINT

    The Defendant, City of Lowell ("Defendant"), in the above-entitled action, answers Plaintiff's Complaint on behalf of City of Lowell only, as Defendants Edward Davis, III and Richard Johnson have not been served with Summons and Complaint in this action.

## JURISDICTION

1.    The Defendant states that Paragraph 1 contains no allegations of fact requiring an answer. To the extent that any such allegations are made, they are denied.

2.    The Defendant states that Paragraph 2 contains no allegations of fact requiring an answer. To the extent that any such allegations are made, they are denied.

## THE PARTIES

3.    The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 3.

4.    The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 4.



5.  The Defendant admits that Richard Johnson was the City Manager of the City of Lowell, and further answering, lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 5.

6.  The Defendant admits the allegations in Paragraph 6.

7.  The Defendant admits the allegations in Paragraph 7.

8.  The Defendant lacks sufficient information to admit or deny the allegations in Paragraph 8.

## GENERAL ALLEGATIONS

8.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 8.

9.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 9.

10.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 10.

11.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 11.

12.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 12.

13.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 13.

## COUNT I:
## USE OF EXCESSIVE FORCE IN VIOLATION
## OF THE FOURTH AMENDMENT
## BY DEFENDANT-CIAVOLA

14.  The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 13 and incorporates them by reference as if fully set forth herein..

15.  The Defendant states that Paragraph 15 is directed to a Defendant other than the City of Lowell and no answer is required.

16.  The Defendant states that Paragraph 16 is directed to a Defendant other than the City of Lowell and no answer is required.

17.  The Defendant states that Paragraph 17 is directed to a Defendant other than the City of Lowell and no answer is required.

18.  The Defendant states that Paragraph 18 is directed to a Defendant other than the City of Lowell and no answer is required.

19.  The Defendant states that Paragraph 19 is directed to a Defendant other than the City of Lowell and no answer is required.

20.  The Defendant states that Paragraph 20 is directed to a Defendant other than the City of Lowell and no answer is required.

21.  The Defendant states that Paragraph 21 is directed to a Defendant other than the City of Lowell and no answer is required.

22.  The Defendant states that Paragraph 22 is directed to a Defendant other than the City of Lowell and no answer is required.

23.  The Defendant states that Paragraph 23 is directed to a Defendant other than the City of Lowell and no answer is required.

24.  The Defendant states that Paragraph 24 is directed to a Defendant other than the City of Lowell and no answer is required.

25.  The Defendant states that Paragraph 25 is directed to a Defendant other than the City of Lowell and no answer is required.

26.  The Defendant states that Paragraph 26 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT II:
## ASSAULT AND BATTERY OF THE PLAINTIFF
## BY DEFENDANT-CIAVOLA

27.  The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 26 and incorporates them by reference as if fully set forth herein..

28. The Defendant states that Paragraph 28 is directed to a Defendant other than the City of Lowell and no answer is required.

29. The Defendant states that Paragraph 29 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT III:
## MALICIOUS PROSECUTION OF THE PLAINTIFF
## UNDER THE FOURTH AMENDMENT
## BY DEFENDANT-CIAVOLA

30. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 29 and incorporates them by reference as if fully set forth herein..

31. The Defendant states that Paragraph 31 is directed to a Defendant other than the City of Lowell and no answer is required.

32. The Defendant states that Paragraph 32 is directed to a Defendant other than the City of Lowell and no answer is required.

33. The Defendant states that Paragraph 33 is directed to a Defendant other than the City of Lowell and no answer is required.

34. The Defendant states that Paragraph 34 is directed to a Defendant other than the City of Lowell and no answer is required.

35. The Defendant states that Paragraph 35 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT IV:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## BY DEFENDANT-CIAVOLA

36. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 35 and incorporates them by reference as if fully set forth herein.

37. The Defendant states that Paragraph 37 is directed to a Defendant other than the City of Lowell and no answer is required.

38. The Defendant states that Paragraph 38 is directed to a Defendant other than the City of Lowell and no answer is required.

39. The Defendant states that Paragraph 39 is directed to a Defendant other than the City of Lowell and no answer is required.

40. The Defendant states that Paragraph 40 is directed to a Defendant other than the City of Lowell and no answer is required.

41. The Defendant states that Paragraph 41 is directed to a Defendant other than the City of Lowell and no answer is required.

42. The Defendant states that Paragraph 42 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT V:
### DELIBERATE INDIFFERENCE BY
### DEFENDANTS-JOHNSON, DAVIS AND THE CITY OF LOWELL
### FOR DISPLAYING DELIBERATE INDIFFERENCE BY
### FAILING TO SCREEN POLICE OFFICERS

43. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 42 and incorporates them by reference as if fully set forth herein.

44. The Defendant denies the allegations in Paragraph 44 and calls upon Plaintiff to prove same.

45. The Defendant denies the allegations in Paragraph 45 and calls upon Plaintiff to prove same.

46.  The Defendant denies the allegations in Paragraph 46 and calls upon Plaintiff to prove same.

47.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 47 and calls upon Plaintiff to prove same.

48.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 48 and calls upon Plaintiff to prove same.

49.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 49 and calls upon Plaintiff to prove same.

50.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 50 and calls upon Plaintiff to prove same.

51.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 51 and calls upon Plaintiff to prove same.

52.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 52 and calls upon Plaintiff to prove same.

53.  The Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 53 and calls upon Plaintiff to prove same.

54.  The Defendant denies the allegations in Paragraph 54 and calls upon Plaintiff to prove same.

55.  The Defendant denies the allegations in Paragraph 55 and calls upon Plaintiff to prove same.

56.  The Defendant denies the allegations in Paragraph 56 and calls upon Plaintiff to prove same.

57. The Defendant denies the allegations in Paragraph 57 and calls upon Plaintiff to prove same.

58. The Defendant denies the allegations in Paragraph 58 and calls upon Plaintiff to prove same.

59. The Defendant denies the allegations in Paragraph 59 and calls upon Plaintiff to prove same.

60. The Defendant denies the allegations in Paragraph 60 and calls upon Plaintiff to prove same.

## COUNT VI:
## TORTIOUS BATTERY BY
## DEFENDANT-TERRANCE KANE

61. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 60 and incorporates them by reference as if fully set forth herein.

62. The Defendant states that Paragraph 62 is directed to a Defendant other than the City of Lowell and no answer is required.

63. The Defendant states that Paragraph 63 is directed to a Defendant other than the City of Lowell and no answer is required.

64. The Defendant states that Paragraph 64 is directed to a Defendant other than the City of Lowell and no answer is required.

65. The Defendant states that Paragraph 65 is directed to a Defendant other than the City of Lowell and no answer is required.

## COUNT VII:
## CONSPIRACY BETWEEN DEFENDANT-KANE
## AND DEFENDANT-CIAVOLA
## TO USE EXCESSIVE FORCE

66. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 65 and incorporates them by reference as if fully set forth herein.

67. The Defendant states that Paragraph 67 is directed to a Defendant other than the City of Lowell and no answer is required.

68. The Defendant states that Paragraph 68 is directed to a Defendant other than the City of Lowell and no answer is required.

69. The Defendant states that Paragraph 69 is directed to a Defendant other than the City of Lowell and no answer is required.

70. The Defendant states that Paragraph 70 is directed to a Defendant other than the City of Lowell and no answer is required.

71. The Defendant states that Paragraph 71 is directed to a Defendant other than the City of Lowell and no answer is required.

72. The Defendant states that Paragraph 72 is directed to a Defendant other than the City of Lowell and no answer is required.

73. The Defendant states that Paragraph 73 is directed to a Defendant other than the City of Lowell and no answer is required.

74. The Defendant states that Paragraph 74 is directed to a Defendant other than the City of Lowell and no answer is required.

75. The Defendant states that Paragraph 75 is directed to a Defendant other than the City of Lowell and no answer is required.

76. The Defendant states that Paragraph 76 is directed to a Defendant other than the City of Lowell and no answer is required.

77. The Defendant states that Paragraph 77 is directed to a Defendant other than the City of Lowell and no answer is required.

78. The Defendant states that Paragraph 78 is directed to a Defendant other than the City of Lowell and no answer is required.

79. The Defendant states that Paragraph 79 is directed to a Defendant other than the City of Lowell and no answer is required.

<div align="center">

**COUNT VIII:**
**VIOLATION OF FIRST AMENDMENT AND**
**M.G.L. c.12, §11**
**BY DEFENDANT-CIAVOLA**

</div>

80. The Defendant repeats and reaffirms its responses to the allegations set forth in Paragraphs 1 through 79 and incorporates them by reference as if fully set forth herein.

81. The Defendant states that Paragraph 81 is directed to a Defendant other than the City of Lowell and no answer is required.

82. The Defendant states that Paragraph 82 is directed to a Defendant other than the City of Lowell and no answer is required.

83. The Defendant states that Paragraph 83 is directed to a Defendant other than the City of Lowell and no answer is required.

84. The Defendant states that Paragraph 84 is directed to a Defendant other than the City of Lowell and no answer is required.

85. The Defendant states that Paragraph 85 is directed to a Defendant other than the City of Lowell and no answer is required.

86. The Defendant states that Paragraph 86 is directed to a Defendant other than the City of Lowell and no answer is required.

87. The Defendant states that Paragraph 87 is directed to a Defendant other than the City of Lowell and no answer is required.

## DEMAND FOR TRIAL BY JURY

88. The Defendant demands a trial by jury on all issues so triable.

WHEREFORE the Defendant, City of Lowell, requests that this Honorable Court dismiss the Plaintiff's Complaint and award the Defendant, City of Lowell, attorney's fees and other costs incurred in defending this action.

## FIRST AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state a claim upon which relief can be granted under 42 U.S.C. §1983, because he fails to allege a municipal custom, policy or practice or that any custom, policy or practice of Defendant, City of Lowell, caused injury to Plaintiff.

## SECOND AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state a claim under M.G.L. c.12, §11I, because he fails to allege a deprivation of constitutional rights by threats, intimidation or coercion by Defendant, City of Lowell.

## THIRD AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it has not violated a well-established constitutional right of the Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff's action is barred by the relevant statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff is not entitled to prospective equitable relief because he fails to support allegations of the likelihood of future injury, or to allege irreparable harm, or the unavailability of an adequate remedy at law.

### SIXTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that the Plaintiff has failed to state causes of action which rise to the level of constitutional violations.

### SEVENTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it is immune from liability based on respondeat superior as alleged under 42 U.S.C. §1983 and M.G.L. c.12, §§11H and 11I.

### EIGHTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that Plaintiff's Complaint fails to state a claim under M.G.L. c.12 §§11H and 11I in that the alleged failure to supervise, train and discipline by the Superintendent of Police does not amount to force, intimidation or coercion and the City of Lowell therefore cannot be held liable under the Massachusetts Civil Rights Act.

### NINTH AFFIRMATIVE DEFENSE

And further answering, the Defendant, City of Lowell, says that it has not committed any act or acts constituting deliberate indifference to Plaintiff's constitutional rights and the Complaint therefore should be dismissed as to Defendant, City of Lowell.



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAVASTORM, INC. )
)
    Plaintiff, )
)
    v. )    Civil Action No.
)
180 COMMERCE, INC., )
)
    Defendant. )
)

01-10   RWZ

## **COMPLAINT**

### **Introduction**

1.    This is an action to recover $506,250.00 in payments owed under a written Agreement entered into between plaintiff Lavastorm, Inc. ("Lavastorm") and defendant 180Commerce, Inc. ("180Commerce") for consulting services in connection with the design of a highly sophisticated Internet-based on-line return management system, and for multiple damages, costs and attorneys' fees pursuant to Mass. G.L. ch. 93A, as a result of the unfair and deceptive acts and practices engaged in by 180Commerce in its scheme to reap the benefit of Lavastorm's performance under this Agreement without paying for it.

### **Parties**

2.    Plaintiff Lavastorm is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Waltham, Massachusetts.  Lavastorm is engaged in the business of designing and implementing highly sophisticated intranet and Internet solutions for the business community.



3.    Defendant 180Commerce is a corporation organized and existing under the laws of the State of Georgia with a principal place of business in Atlanta, Georgia. 180Commerce is a start-up company that intends to develop an Internet based software system to streamline the process of returning goods and maximize the return manufacturers receive from their goods.

## Jurisdiction and Venue

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). This Court has personal jurisdiction over 180Commerce under the provisions of G.L. c. 223A, § 3, the Massachusetts long-arm statute, as 180Commerce transacts business in the Commonwealth, and has caused tortious injury in the Commonwealth by means of acts or omissions both in and outside of the Commonwealth.

5.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (c).

## Facts

6.    On or about March 30, 2000, Lavastorm entered into a written Agreement with 180Commerce in which Lavastorm and 180Commerce agreed that, in exchange for the payment of a total sum of $675,000, Lavastorm would provide 180Commerce consulting and design services with respect to a contemplated Internet based on-line returns management system that 180Commerce hoped to offer manufacturers and retail operations.  The services that Lavastorm contracted to provide 180Commerce were denominated under the Agreement the "Phase I Definition and Design" services and were to include creation of a series of four reports (functional specifications, product definition, system definition, and product plan) and a sales demonstration tool for 180Commerce to showcase at an upcoming trade show and on its World Wide Web site.  Upon the completion of these Phase I services, it was contemplated that the parties would enter into an Agreement for the provision of the "Phase II Build and Deliver" services, which were to include providing needed

database software, routing structure, and hardware for the implementation of the contemplated returns management system.

7.     The Agreement required payment by 180Commerce on the following payment schedule: (a) $168,750 due upon execution of the Agreement; (b) $168,750 due upon delivery of a sales demonstration tool for use at the QEII Trade Show; and (c) the balance of $337,250 due upon completion of the Phase I Design Services or upon receipt of 180Commerce's first round of financing, whichever event occurred later.

8.     180Commerce paid the $168,750 due upon execution of the Agreement and work under the Agreement commenced.  Lavastorm completed the sales demonstration tool for the QEII Trade Show prior to the May 2000 deadline established by the Agreement, and 180Commerce used the sales demonstration tool at the Trade Show and also linked the demonstration tool to its World Wide Web site.  180Commerce reported positive feedback from prospective customers.  Upon completion of the QEII sales demonstration tool, Lavastorm demanded payment of the next $168,750, then due and owing under the Agreement, but 180Commerce failed to pay this or any amount under the Agreement.

9.     In addition to providing the sales demonstration tool, Lavastorm provided additional features to 180 Commerce's corporate World Wide Web site in order to make the site more attractive to investors and customers.  Lavastorm licensed graphics for use on the 180Commerce site, which 180Commerce continued to use on its corporate site, without payment, until March 2001.

10.     On or about June 23, 2000, Lavastorm completed all Phase I Design Services.  At this point, 180Commerce had not yet paid the second milestone payment, which was due and owing upon completion of the sales demonstration tool, and Lavastorm indicated that it intended to withhold the four reports that were the balance of the Phase I deliverables until the second milestone payment had

been made.   The sales demonstration tool remained available to 180Commerce, which continued to show it to prospective customers and investors.   At the completion of Phase I Design Services, 180Commerce asked Lavastorm to contract for and commence Phase II "design and build" services, but Lavastorm declined to do so until it had been paid all amounts then due and owing.

11.   180Commerce indicated to Lavastorm that it did not have the money to pay amounts then due and owing under the Agreement.  180Commerce told Lavastorm that it needed the Phase I documentation -- the four reports Lavastorm had prepared that described *inter alia* functional specifications, user experience, competition outlook, performance requirements, logical and physcial architectures, and third party requirements -- to show prospective investors.  180Commerce represented that it believed that it would receive financing -- and Lavastorm would be paid -- if it were able to show investors this valuable Phase I documentation.

12.   Based upon these representations, Lavastorm released the Phase I documentation to 180Commerce.  Upon information and belief, 180Commerce used the Phase I documentation in seeking its first round of venture capital financing.  Upon information and belief, 180Commerce's use of the Phase I documentation was instrumental to its receipt of its first-round financing and, without the Phase I deliverables, including the four reports and the sales demonstration tool -- none of which it had paid for -- 180Commerce would not have received its first-round financing.

13.   Up to and through the time Lavastorm released the four reports that constituted the balance of the Phase I deliverables, despite 180Commerce's failure to pay amounts due and owing, 180Commerce raised no complaints about Lavastorm's performance under the Agreement or about the quality or completeness of Lavastorm's work under the contract.  180Commerce only lodged complaints about Lavastorm's performance after Lavastorm more forcefully expressed its concerns about 180Commerce's failure to make required payments.

14.     On or about February 20, 2001, 180Commerce announced that it had closed its first round of financing and was preparing to "build out" its technology.   Lavastorm demanded that 180Commerce pay the $337,500 that came due under the Agreement upon receipt of financing, as well as the $168,750 that had come due in May 2000, upon delivery of the demonstration sales tool. 180Commerce did not pay any of the balance due under the Agreement.

## COUNT I

### (Breach of Contract)

15.     Lavastorm repeats and realleges the allegations set forth in paragraphs 1 through 14 of the Complaint as if fully set forth herein.

16.     The Agreement required 180 Commerce to pay Lavastorm $168,750 upon completion of the QEII sales demonstration tool and $337,500 upon completion of Phase I or after 180 Commerce's second round of financing, whichever came later.   The QEII sales demonstration tool was completed in May 2000, Phase I was completed in June 2000, and 180Commerce completed a second round of financing in or around February 2001.   Nevertheless, 180Commerce has failed and refused to pay the remaining balance of $506,250.

16.     180Commerce has breached the Agreement by failing to make these payments.

17.     As a direct consequence of this breach, Lavastorm is entitled to money damages in the amount of $506,250, plus interest running from the date of breach.

## COUNT II

### (Unjust Enrichment)

18.     Lavastorm repeats and realleges the allegations set forth in paragraphs 1 through 17 of the Complaint as if fully set forth herein.

19.     180Commerce has benefited from Lavastorm's time, attention, efforts, and expertise and has been provided with a design solution for its Internet business without compensating Lavastorm fully therefor.

20.     As a result 180Commerce has been unfairly enriched in an amount exceeding $506,250, which amount in fairness and good conscience is owed to Lavastorm.

## COUNT III

### (Unfair and Deceptive Acts and Practices
### in Violation of Mass. G.L. ch. 93A)

21.     Lavastorm repeats and realleges the allegations set forth in paragraphs 1 through 20 of the Complaint as if fully set forth herein.

22.     The aforesaid acts of 180Commerce constitute unfair and deceptive trade acts or practices within the meaning of G.L. c. 93A, § 2.

23.     The aforesaid acts of 180Commerce were committed intentionally and willfully, entitling plaintiffs to treble their damages pursuant to G.L. c. 93A, § 2 and 11.

24.     The aforesaid unfair and deceptive acts and practices occurred primarily and substantially within the Commonwealth of Massachusetts.

WHEREFORE, Lavastorm request that this Court:

1.     Enter judgment in Lavastorm's favor in an amount of $560,250, plus prejudgment interest running from the date of breach, on Count I;

2.     Enter judgment in Lavastorm's favor for the amount by which 180Commerce has been unjustly enriched at Lavastorm's expense, plus prejudgment interest from the date of such unjust enrichment, on Count II of the complaint;

3.     Treble the amount of any judgment entered in Lavastorm's favor, pursuant to Mass. G.L. c. 93A, and award Lavastorm its costs and attorneys fees expended in pursuing this claim, as

also provided by Chapter 93A;

4.     Award Lavastorm its reasonable costs and attorney fees incurred bringing this suit;

5.     Award Lavastorm such other and further relief as may be just and appropriate.

## REQUEST FOR TRIAL BY JURY

Lavastorm requests a trial by jury on all claims so triable.

Respectfully submitted,

LAVASTORM, INC.

By its attorneys,

Marjorie Sommer Cooke (BBO#097800)
Paula M. Bagger (BBO#547703)
COOKE, CLANCY & GRUENTHAL, LLP
150 Federal Street
Boston, Massachusetts 02110
(617) 428-6800

Dated: March 19, 2001



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

METROWEST MEDICAL CENTER,
            Plaintiff,

v.                                                  CIVIL ACTION NO.

MASSACHUSETTS NURSES
ASSOCIATION,                          01-10455 MEL
            Defendant.

## COMPLAINT

1.      This is an action brought pursuant to Section 301 of the Labor Management

Relations Act, 29 U.S.C. §185 (hereafter "the Act") and the Federal Arbitration Act, 9 U.S.C.

§10 seeking to set aside and vacate an arbitration award, reinstating with back pay, a registered

nurse whom the Plaintiff had discharged for, among other things, serious substandard nursing

practice. This action seeks to vacate the arbitration award on the grounds that: (1) enforcement of

such an award would violate public policy; and (2) the arbitrator exceeded his authority, as

defined by the parties' Collective Bargaining Agreement and an agreement between the parties,

in issuing the award.

2.      This Court has jurisdiction over this action under 28 U.S.C. § 1331, as amended.

3.      Plaintiff, MetroWest Medical Center ("the Hospital"), is a hospital having an

office and place of business in Framingham and Natick, Massachusetts and is an employer in an

industry affecting commerce within the meaning of Section 301 of the Act.

4.      Defendant, Massachusetts Nurses Association ("the Union") is an unincorporated

labor organization within the meaning of Section 301 of the Act and represents employees in an

industry affecting commerce. The Union is the authorized bargaining representative for registered nurses ("RNs") at the Hospital's facility in Natick, Massachusetts.

5.      The Hospital and the Union entered into a Collective Bargaining Agreement effective from March 18, 1996 to November 15, 1997, covering the terms and conditions of employment for RNs represented by the Union ("the Agreement"). The Agreement was in effect at all times material to this action.    (A true and accurate copy of the Agreement is attached hereto as Exhibit A).

6.      Article VI of the Agreement governs matters of discipline and discharge with respect to RNs represented by the Union and it provides that "[a] nurse who has completed the probationary period, will be demoted, suspended, discharged, or otherwise disciplined only for just cause."   The Agreement contains no progressive discipline clause.

7.      During the evening of May 12, 1997, Frank Burke, a registered nurse represented by the Union (hereinafter "the grievant"), engaged in a number of acts of misconduct and poor nursing practices while working on the Hospital's Psychiatric and Addictions Unit.  In particular, the grievant (1) removed a patient from a family visit against the explicit instructions of his supervisors; (2) in response to a proper instruction by his supervisor, violently slammed down a medical records administration record down on the desk in front of his supervisor, threw his pen in the direction of the supervisor, and made inappropriate comments to her; (3) in front of a patient, ignored his supervisor's instructions to assess a patient for medication before rudely and reluctantly complying with the request; and (4) unnecessarily allowed a pregnant patient to remain for an extended period of time in serious discomfort at risk to her fetus and herself.

8.      As a result of the grievant's conduct, the Hospital conducted an investigation and ultimately terminated the grievant's employment on or about May 20, 1997.

9.      The Union filed a grievance and subsequently commenced an arbitration pursuant to the Agreement, with regard to grievant's discharge.

10.     On numerous days during 1998, 1999 and 2000, a hearing was conducted before Arbitrator Timothy J. Buckalew at which both parties appeared and were represented by counsel with the right of cross-examination. At the hearing, the Hospital presented testimonial and documentary evidence demonstrating that grievant had committed multiple incidents of substandard nursing.   The Hospital also presented evidence that the grievance had not timely been filed by the Union as required by the Agreement.

11.     During the arbitration, the Hospital and the Union agreed, with the arbitrator's approval, to bifurcate the proceeding into a liability stage (i.e., whether there was just cause for termination) and a remedy stage.  As part of that agreement, the parties agreed the arbitrator would not prescribe a remedy in the Award, but rather that a decision about a remedy, if any, would be rendered after a separate hearing following the issuance of the Award, if necessary.

12.     Upon the conclusion of the hearings for the just cause stage, the parties submitted post-arbitration briefs to the arbitrator.  After the briefs were submitted, the parties' agreed the arbitrator's Award was due on December 11, 2000.

13.     The arbitrator requested and the parties agreed to several extensions of the deadline for the Award, with the last agreed-upon extension mandating that the award would be due on February 2, 2001.

14.     The arbitrator failed to issue his award by the  February 2, 2001 deadline.

3

15.     On or about February 14, 2001, the American Arbitration Association mailed the Award to the Hospital and the Union.

16.     In the Award, Arbitrator Buckalew found the grievance to be timely, found there was not just cause for termination, and ordered the Plaintiff to "reinstate Burke to a nursing position, and make Burke whole for all losses suffered by the violation of the agreement, including restoration of lost seniority and other benefits, and back pay from May 12, 1997 until Burke is offered reinstatement."

## COUNT I - VACATION OF AWARD

17.     The allegations of paragraphs 1 through 16 are repeated and incorporated by reference as if set forth fully herein.

18.     The Arbitrator exceeded his authority under the Collective Bargaining Agreement, the rules of the American Arbitration Association, and the parties' agreement by, among other things: (1) failing to issue his award by the appropriate deadline; (2) reinstating the grievant with back pay in violation of the agreement of the Hospital and the Union by which the Hospital and the Union agreed the Arbitrator would not rule on a remedy without a hearing subsequent to the issuance of the Award; and (3) failing to find the grievance untimely.

19.     Enforcing the Award of reinstatement in favor of the grievant would also violate established Massachusetts public policy in favor of ensuring the delivery of safe and competent nursing care.

**WHEREFORE**, Plaintiff prays the Court:

(1)     Vacate the Award issued by the Arbitrator on the grounds that enforcement of the Award would be in violation of public policy;

(2)     Vacate the Award as in excess of the Arbitrator's authority; and

4

(3)     Grant such other further and equitable relief as the Court deems just and
        necessary.

                              Respectfully submitted,

                              METROWEST MEDICAL CENTER

                              By its attorneys,


                              Howard M. Bloom, BBO #046440
                              Jeffrey S. Brody, BBO #566032
                              Jackson Lewis Schnitzler & Krupman
                              One Beacon Street, Suite 3300
                              Boston, Massachusetts  02108
                              (617) 367-0025

Dated:  March 16, 2001

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

### EASTERN DIVISION

ALEJANDRO ORTIZ, )
                   )
          PLAINTIFF, )     CIVIL ACTION FILE NO._____
                   )
VS. )     **COMPLAINT**
                   )
UNITED STATES OF AMERICA, )
                   )     **01 · 104 ⸱ 2 MEL**
          DEFENDANT. )

Plaintiff, complaining of the defendant, alleges:

1.     This action arises under the Federal Tort Claims Act, 28 USC §§1271 et seq., and this Court has jurisdiction under the provisions of 28 USC §1346 (b).

2.     The plaintiff is a citizen and a resident of Essex County, Massachusetts, and the cause of action on which this case is based arose in Middlesex County, Massachusetts. Thus, venue is properly with this Court.

3.     On or about May 26, 1997 at approximately 3:05 PM the plaintiff, Alejandro Ortiz, was a passenger in a car driven by Monica E. Bettencourt on Cabot Street, at its intersection with Father Morrisette Blvd., Lowell, Middlesex County, Massachusetts.

**MARCOTTE**
**LAW FIRM**
45 MERRIMACK ST.
LOWELL, MA 01852
(978) 458-1229



4.    At the same time, Eric Provencher was operating a car on Father Morrisette Blvd., Lowell, Massachusetts, at its intersection with said Cabot Street.

5.    At the time, Eric Provencher was an employee of the United States government and was acting within the course and scope of that employment.

6.    The vehicle operated by Monica E. Bettencourt entered the above referenced intersection on a green traffic control signal and was struck on its left side by the front end of the vehicle operated by Eric Provencher, the Provencher vehicle having entered the intersection in violation of a red traffic control signal.

7.    Eric Provencher was negligent in the operation of his vehicle by entering the intersection when it was unsafe to do so, failing to yield the right of way at an intersection, failing to obey a traffic signal, failing to attempt or take reasonable avoidance action and otherwise failing to act prudently under the circumstances, all of which negligence and carelessness constituted the proximate cause of the collision.

8.    As a result thereof the plaintiff was injured, was prevented from transacting his business, suffered great pain of body and mind, and incurred reasonable and necessary expenses in excess of two thousand ($2,000.00) dollars, for medical care and attention.

9.   On February 26, 1999, the plaintiff submitted his claim in the amount of
     $55,000.00 to the National Park Service, on August 23, 1999 such claim was
     denied by Regional Solicitor Anthony R. Conte of the office of the Solicitor of the
     United States Department of the Interior.  In said denial Mr. Conte invited the
     plaintiff to resubmit the claim within six months, which the plaintiff did on
     February 15, 2000 with affidavits of witnesses.  On December 22, 2000 a letter of
     final determination denying the plaintiff's claim was mailed to plaintiff's counsel.


     WHEREFORE, the plaintiff demands judgment against the United States of
America as follows: The sum of $55,000.00 for past and future medical expenses and lost
wages and pain and suffering; costs of this action; and such other relief as the Court may
deem proper.

                                        Respectfully submitted,
                                        By his attorney,


DATE:____3/15/01_____              _____
                                        William J. Hamilton, Esq.
                                        B.B.O.#543330


**MARCOTTE**
**LAW FIRM**
45 MERRIMACK ST.
LOWELL, MA 01852
(978) 458-1229

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID H. JUDSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| INFONAUTICS, INC. | § | |
| | § | JURY DEMANDED |
| Defendant. | § | |

01 - 10464 RWZ

### ORIGINAL COMPLAINT

Plaintiff, David H. Judson ("Judson"), files this Original Complaint *Pro Se* against

Defendant, Infonautics, Inc. ("Infonautics"), and for his cause of action would show the Court the

following:

1.  Judson is an individual residing in Marblehead, Massachusetts.  Judson is a

Member in good standing of the Bar of the State of Texas.

2.  Infonautics is a corporation organized and existing under the laws of the State of

Pennsylvania and having a principal place of business at 590 North Gulph Road

King of Prussia, Pa 19406-2800.  Infonautics sometimes does business under the name

Infonautics Corporation.

3.  At all times material herein, Defendant has engaged in business in Massachusetts

and is amenable to personal jurisdiction in Massachusetts.

4.  This case is an action for infringement of United States patents arising under the

patent laws of the United States, Title 35, United States Code, and in particular, 35 U.S.C. § 271.

Jurisdiction is based on 28 U.S.C. § §1331 and 1338(a).

5.  Venue is proper within this judicial district.

**PLAINTIFF'S ORIGINAL COMPLAINT** - Page 1

## THE PATENTS-IN-SUIT

6.      On November 7, 1996, United States Patent No. 5,572,643 ("the '643 patent") entitled "Web Browser With Dynamic Display of Information Objects During Linking" was duly and legally issued to Judson. A copy of the '643 patent is attached hereto as Exhibit "A." Judson owns the '643 patent.

7.      On April 7, 1998, United States Patent No. 5,737,619 ("the '619 patent") entitled "World Wide Web Browsing With Content Delivery Over An Idle Connection And Interstitial Content Display" was duly and legally issued to Judson. A copy of the '619 patent is attached hereto as Exhibit "B." Judson owns the '619 patent.

8.      On February 6, 2001, United States Patent No. 6,185,586 ("the '586 patent") entitled "Content Display During Idle Time As A User Waits For Information During An Internet Transaction" was duly and legally issued to Judson.  A copy of the '586 patent is attached hereto as Exhibit "C."  Judson owns the '586 patent.

## DEFENDANT'S ACTIVITIES

9.      Infonautics is an Internet information services company and provider of online information.  Infonautics operates a network of Web sites.

10.     Infonautics operates a web site at the Internet address www.elibrary.com and known as Electric Library.  Electric Library provides individual users on the Web with a digital library made up of well-known published sources.  According to recent reports published by Infonautics, the site currently has approximately 100,000 registered paying users making it one of the largest paid subscription sites on the Internet.  The site enables users to satisfy their general and special interest information requirements in a manner highly differentiated from other search engines and directories.  The site also provides users with the ability to see related Internet

**PLAINTIFF'S ORIGINAL COMPLAINT - Page 2**

content from thousands of Web sites.  Users are able to access Electric Library through any

standard web browser.  The Electric Library site is marketed to end-users through paid

advertisements, bounty and royalty incentive arrangements, and a variety of other methods

including affiliates.

      11.     The following is a fair and accurate representation of the home page of the

Electric Library web site available to an end user running web browser software on or about

February 18, 2001, as well as currently.



      12.     The home page of the Electric Library site, as illustrated above, includes number

of links to other resources on the Internet including, e.g., an inforocket.com image link:



**PLAINTIFF'S ORIGINAL COMPLAINT - Page 3**

13.    The following is a fair and accurate representation of a screen display following an end user's selection of the inforocket.com image link on the home page shown in Paragraph 11:



14.    The screen display in Paragraph 13 illustrates a window commonly referred to as a "popup." The popup window is separate from the inforocket.com web page that loads in the main browser window.

15.    The popup window shown in the screen display in Paragraph 13 includes an advertisement. This advertisement is comprised of separate web page and a set of graphics files. The web page has a Uniform Resource Locator (URL), its Internet address, of http://www.elibrary.com/interstital1.html.   This page includes at least a pair of graphics files identified by the separate URLs: http://www.elibrary.com/top.gif and http://www.elibrary.com/bot.gif.

**PLAINTIFF'S ORIGINAL COMPLAINT - Page 4**

16.     The Electric Library site serves web pages.  The home page shown in Paragraph 11 above is one such page.  Infonautics operates the Electric Library web site and, as a consequence, makes this page available for delivery over the Internet, a computer network, to a requesting user's browser running on a personal computer.

17.     Content that is available from the Electric Library web site is delivered from a computer known generally as a "server."  At least one server from which the Electric Library home page is delivered receives page requests from requesting end users running browser software.  The home page is a document formatted according to the hypertext markup language ("HTML").

18.     The inforocket.com image as it exists on the site's home page illustrated in Paragraph 11 is commonly referred to as a link.  Activation of this link, for example, by directing a personal computer mouse cursor to the image and clicking the mouse, navigates the user's web browser to a another resource on the Internet, in this case the inforocket.com home page.  The inforocket.com home page is also a hypertext document.

19.     The source code of the Electric Library home page included the following line of code on February 18, 2001, and this code is included in the page today:

ONUNLOAD="return open_window('http://www.elibrary.com/interstital1.html')

20.     The execution of this code by a web browser (together with other code in the page) is designed to and does, in fact, generate a popup window on the web browser.  The screen display in Paragraph 13 above illustrates the popup window, and this window is independent of the Electric Library home page and the inforocket.com home page.   The popup window is an interstitial web page that is displayed on an end user's web browser when a link in the Electric Library home page is selected.

**PLAINTIFF'S ORIGINAL COMPLAINT - Page 5**

21.    One or more of the graphics files identified as "…/top.gif" and "…/bot.gif" in Paragraph 15 above may be stored in an end user's personal computer for some time period after these files are first downloaded to the user's machine because these graphics files are not associated with any specific expiration date.  Once stored in an end user's personal computer, the graphics files identified as "…/top.gif" and "…/bot.gif" are hidden from the end user's view when other pages are displayed on the end user's web browser.

22.    Once stored in an end user's personal computer, the graphics files identified as "…/top.gif" and "…/bot.gif" are retrievable by a web browser for display in the interstital1.html page at a later time.   For example, if these graphics files are stored in the end user's personal computer, they are retrieved and displayed in the interstital1.html page whenever an end user selects a link on the Electric Library home page and that page unloads from the web browser.

23.    Infonautics operates a content notification web site that it calls Entertainment Sleuth.  This service provides users with daily news on today's Hollywood and music stars and is designed to help entertainment fans find the latest information on their favorite celebrities. The site investigates over 1,000 entertainment Web sites every day and notifies registered users about newly discovered celebrity content in a daily e-mail. The site provides a wide-range of information including multimedia, photos, gossip, interviews and news on over 5,000 current stars.

24.    On information and belief, Infonautics has used popup advertising on the Entertainment Sleuth web site.  Infonautics is currently using popup advertising on the Entertainment Sleuth web site.

25.    Infonautics operates a research web site that it calls Encyclopedia.com.  This web site has used and is currently using popup advertising.

**PLAINTIFF'S ORIGINAL COMPLAINT** - Page 6

26.     Infonautics publishes an online Media Kit.  The Media Kit describes how third parties may purchase advertising on the Infonautics network of web sites.  This Media Kit offers for sale "Interstitials" as a form of site advertising.

27.     Infonautics has described publicly that its business model for the Infonautics network of web sites relies in part on site advertising including banner and sponsor ads.

<div align="center">

### COUNT 1
### PATENT INFRINGEMENT

</div>

28.     Infonautics provides an information service to Internet end users in this district. At least some of the nearly 100,000 subscribers to the Electric Library site are believed to actually reside in this district.  When an Internet end user navigates to or from an Infonautics web site, given advertising content is displayed to the end user in a popup window.  On information and belief, Infonautics earns revenues from the display of this advertising content in this district. By providing the information service advertising display to end users, Infonautics is directly or indirectly operating within the scope of at least Claims 6 and 9 of the '643 patent, at least Claim 12 of the '619 patent, and at least Claims 5 and 9 of the '586 patent.

29.     Infonautics has directly, or by contribution or inducement, infringed the '643, '619 and '586 patents under 35 U.S.C. § 271(a)-(c) by making, using, selling and/or offering for sale the information service advertising display to prospective advertisers and end users in this judicial district.

30.     Judson has complied with 35 U.S.C. § 287.  Infonautics has both actual and constructive notice of its infringement of the '643, '619 and '586 patents.

31.     In particular, on or about February 20, 2001, Judson notified Infonautics of the patents and requested a license.  Judson had become aware of the Infonautics infringement

shortly before that date.  On March 9, 2001, Infonautics, through its counsel, rejected Judson's offer.

32.     On information and belief, by the time Infonautics counsel delivered its response to Judson on March 9, 2001, Infonautics counsel had not reviewed the Patent & Trademark Office prosecution histories for any of the Judson patents.

33.     To date, and on information and belief, Infonautics counsel has not rendered a written opinion to Infonautics regarding alleged infringement of any of the Judson patents. Further, Infonautics continues to provide the interstitial advertising display in the same manner that it did prior to receiving Judson's offer of a license.

34.     The Judson '643 patent was one of the earliest Internet-related patents to issue from the United States Patent & Trademark Office.  It has been cited as relevant prior art by approximately 300 other later patents, indicating its importance as an early development in the field.  The '643 patent has been cited by the Patent & Trademark Office during the prosecution of several patent applications filed by Infonautics or an affiliate thereof.  Thus, Infonautics or its counsel were aware of this patent for some time before receiving Judson's offer of a license.

35.     Infonautics's infringing activities have been and are now being conducted willfully and deliberately, with full knowledge of the Judson patents.

36.     Infonautics's conduct constitutes willful and deliberate infringement of the Judson patents and justifies an increase of three times the damages to be assessed under 35 U.S.C. § 284. Such conduct further characterizes this suit as an exceptional case supporting the award of attorneys' fees pursuant to 35 U.S.C. § 285.

37.     As a result of said infringement, Judson has suffered and will continue to suffer irreparable injury and damage to his business opportunities with respect to the patents.  Judson

**PLAINTIFF'S ORIGINAL COMPLAINT - Page 8**

has suffered a loss of revenues and profits, as a result of Defendant's infringement, for which

Judson requests damages.  Alternatively, Judson requests the award of a reasonable royalty

suffered by him for Defendant's infringement.

## REQUEST FOR JURY TRIAL

38.     Judson requests a jury trial.

WHEREFORE, Judson requests:

(a)      that Infonautics, its officers, agents, employees, directors, servants, successors,

and assigns, and all those acting in concert with it or them, or any of them, be restrained and

enjoined both during the pendency of this action and permanently thereafter from directly or

indirectly infringing the '643,  '619 and '586 patents;

(b)      that Judson be awarded actual damages he has suffered as a result of the

infringement of the '643,  '619 and '586 patents by Infonautics, and that such damages be trebled

because of the willful and deliberate character of the infringement;

(c)      that Judson be awarded his costs of court;

(d)      that Judson be awarded pre-judgment and post-judgment interest in the maximum

legal amount; and,

(e)      that Judson be awarded such other and further relief as this Court shall deem just

and proper.

Respectfully submitted,

David H. Judson, Pro Se
Pursuant To Local Rule 83.5.3(c)

**PLAINTIFF'S ORIGINAL COMPLAINT** - Page 9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARK DAPONTE, MARIA F.
DAPONTE STEPHANIE DAPONTE
and MARK AND MARIE DAPONTE
as parents and natural guardians of
MARK DAPONTE, JR., minor

                       VS.

DANAHER CORP., EASCO HAND
TOOLS, INC. d/b/a DANAHER TOOL
GROUP, J.S. TECHNOLOGIES, INC.
and CAMPBELL SUPPLY CO., INC.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action
No.: 00-11277-RWZ

## ANSWER OF DEFENDANT J.S. TECHNOLOGIES, INC.
## TO THE SECOND AMENDED COMPLAINT

### FIRST DEFENSE

    1. Lacks knowledge or information sufficient to form a belief as to the allegations

of paragraph 1.

    2. Lacks knowledge or information sufficient to form a belief as to the allegations

of paragraph 2.

    3. Lacks knowledge or information sufficient to form a belief as to the allegations

of paragraph 3.

    4. Lacks knowledge or information sufficient to form a belief as to the allegations

of paragraph 4.

    5. Lacks knowledge or information sufficient to form a belief as to the allegations

of paragraph 5.

    6.  Lacks knowledge or information sufficient to form a belief as to the allegations

of paragraph 6.

    7. Defendant admits it is a corporation organized and existing under the laws of the

State of Delaware with a principle place of business in the State of Pennsylvania; except as so admitted lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7.

8.  Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 8.

## COUNT I

9.  The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 8 of the complaint.

10.  Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 10.

11.  Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 11.

12.  Admits the allegations of paragraph 12.

13.  Denies the allegations of paragraph 13.

14.  Denies the allegations of paragraph 14.

15.  Denies the allegations of paragraph 15.

16.  Denies the allegations of paragraph 16.

17.  Denies the allegations of paragraph 17.

18.  Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 18.

19.  Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 19.

20.  Denies the allegations of paragraph 20.

21.  Denies the allegation of paragraph 21.

22.  Denies the allegations of paragraph 22.

23.  Lack knowledge or information sufficient to form a belief as to paragraph 23 of the complaint.

## COUNT II

24.   The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 23 of the complaint.

25.  Denies the allegations of paragraph 25.

26.  Denies the allegations of paragraph 26.

## COUNT III

27.  The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 26 of the complaint.

28.  Denies the allegations of paragraph 28.

29.  Denies the allegations of paragraph 29.

30.   Admits that on or about November 10, 2000 defendant received  a written demand for relief which identified the claimant; except as so admitted, denies the allegations of paragraph 30 of the complaint.

31.  Denies the allegations of paragraph 31.

## COUNT IV

32.  The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 31 of the complaint.

33.  Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 33.

3

34.  Denies the allegations of paragraph 34.

## COUNT V

35.  The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 34 of the complaint.

36.  Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 36.

37.  Denies the allegations of paragraph 37.

## COUNT VI

38.  The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 37 of the complaint.

39.  Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 39.

40.  Denies the allegations of paragraph 40.

## SECOND DEFENSE

41.  Plaintiff, Mark Daponte, was negligent and his negligence caused or contributed to plaintiffs' injuries, if any.

## THIRD DEFENSE

42.  Plaintiff, Mark Daponte, assumed the risk of his injuries, if any.

## FOURTH DEFENSE

43.  Plaintiffs' injuries, if any, result from the negligence of others for whom this defendant is not responsible.

## FIFTH DEFENSE

44.  This court lacks personal jurisdiction over this defendant.

4

## SIXTH DEFENSE

45.  The complaint fails to state a claim for relief upon which relief may be granted against this defendant.

WHEREFORE, defendant J.S. Technologies, Inc., hereby demands judgment dismissing plaintiff's complaint with prejudice, and costs.

Defendant J.S. Technologies, Inc. hereby demands trial by jury.

DEFENDANT
By its attorneys,

Thomas W. Lyons
STRAUSS, FACTOR & LOPES
403 South Main Street
Providence, RI  02903
(401) 456-0700
BBO No.:  631582

## CERTIFICATE OF SERVICE

I hereby certify that on this 20 day of January, March 2001, I mailed a copy of the within to Michael G. Sarli, Esq., Gidley, Sarli & Marusak, LLP, One Turks Head Place, Suite 900, Providence, RI 02903 and William O. Monahan, Esq., Monahan & Associates, 175 Federal Street, Boston, MA  02110.

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARK DAPONTE, MARIA F.              :
DAPONTE STEPHANIE DAPONTE           :
and MARK AND MARIE DAPONTE          :
as parents and natural guardians of :
MARK DAPONTE, JR., minor            :
                                    :     Civil Action
              VS.                   :     No.: 00-11277-RWZ
                                    :
DANAHER CORP., EASCO HAND           :
TOOLS, INC. d/b/a DANAHER TOOL      :
GROUP, J.S. TECHNOLOGIES, INC.      :
and CAMPBELL SUPPLY CO., INC.       :

**DOCKETED**

### ANSWER OF DEFENDANT EASCO HAND TOOLS, INC. d/b/a DANAHER TOOL GROUP TO THE SECOND AMENDED COMPLAINT

#### FIRST DEFENSE

1. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 1.

2. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 2.

3. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 3.

4. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 4.

5. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 5.

6. Defendant admits it is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in the State of Pennsylvania; except as

so admitted, lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 6.

7. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 7.

8. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 8.

## COUNT I

9. The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 8 of the complaint.

10. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 10.

11. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 11.

12. Admits the allegations of paragraph 12.

13. Denies the allegations of paragraph 13.

14. Denies the allegations of paragraph 14.

15. Denies the allegations of paragraph 15.

16. Denies the allegations of paragraph 16.

17. Denies the allegations of paragraph 17.

18. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 18.

19. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 19.

20.  Denies the allegations of paragraph 20.

21.  Denies the allegation of paragraph 21.

22.  Denies the allegations of paragraph 22.

23.  Lack knowledge or information sufficient to form a belief as to paragraph 23 of the complaint.

### COUNT II

24.  The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 23 of the complaint.

25.  Denies the allegations of paragraph 25.

26.  Denies the allegations of paragraph 26.

### COUNT III

27.  The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 26 of the complaint.

28.  Denies the allegations of paragraph 28.

29.  Denies the allegations of paragraph 29.

30.  Admits that on or about November 10, 2000 defendant received  a written demand for relief which identified the claimant; except as so admitted, denies the allegations of paragraph 30 of the complaint.

31.  Denies the allegations of paragraph 31.

### COUNT IV

32. The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 31 of the complaint.

33. Lacks knowledge or information sufficient to form a belief as to the allegations

3

of paragraph 33.

34. Denies the allegations of paragraph 34.

## COUNT V

35. The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 34 of the complaint.

36. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 36.

37. Denies the allegations of paragraph 37.

## COUNT VI

38. The defendant repeats and incorporates herein by reference its responses to paragraphs 1 through 37 of the complaint.

39. Lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 39.

40. Denies the allegations of paragraph 40.

### SECOND DEFENSE

40. Plaintiff, Mark Daponte, was negligent and his negligence caused or contributed to plaintiffs' injuries, if any.

### THIRD DEFENSE

41. Plaintiff, Mark Daponte assumed the risk of his injuries, if any.

### FOURTH DEFENSE

42. Plaintiffs' injuries, if any, result from the negligence of others for whom this defendant is not responsible.

### FIFTH DEFENSE

4

43. This court lacks personal jurisdiction over this defendant.

## SIXTH DEFENSE

44. The complaint fails to state a claim for relief upon which relief may be granted against this defendant.

WHEREFORE, defendant Easco Hand Tools, Inc., hereby demands judgment dismissing plaintiff's complaint with prejudice, and costs.

Defendant Easco Hand Tools, Inc. hereby demands trial by jury.

DEFENDANT
By its attorneys,

Thomas W. Lyons
STRAUSS, FACTOR & LOPES
403 South Main Street
Providence, RI 02903
(401) 456-0700
BBO No.: 631582

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2001, I mailed a copy of the within to Michael G. Sarli, Esq., Gidley, Sarli & Marusak, LLP, One Turks Head Place, Suite 900, Providence, RI 02903 and William O. Monahan, Esq., Monahan & Associates, 175 Federal Street, Boston, MA 02110.

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 01-

|  |  |
|---|---|
| COMPUTER RECOGNITION SYSTEMS, INC., | ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| ADESTA COMMUNICATIONS, INC. d/b/a ADESTA TRANSPORTATION and SOUTHERN ALUMINUM & STEEL CORPORATION, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**01  1 0491 MEL**

## COMPLAINT AND JURY DEMAND

### BACKGROUND

Plaintiff Computer Recognition Systems, Inc. ("CRS") brings this action against

Adesta Communications, Inc. d/b/a Adesta Transportation ("Adesta") and Southern

Aluminum and Steel Corporation ("SASCO") (collectively "Defendants") for breach of

contract, misappropriation of trade secrets, conversion, violation of Mass. Gen. L. c. 93A

and related claims.  CRS sells proprietary Violation Enforcement Systems ("System" or

"Systems") used to monitor motorist compliance with highway toll collection points.

Defendants requested that CRS modify certain components of its proprietary system to

interface with a system used by Defendants.  CRS agreed to do so, but only after the

execution of a confidentiality agreement.  After CRS shared its confidential information

and trade secrets with the Defendants and delivered nearly half of the components, the

Defendants wrongfully cancelled the contract.  CRS subsequently

{B0187704.DOC;2}

learned that Defendants used CRS' proprietary and confidential information to develop its own components in place of those provided by CRS.

For cause of action and by way of Complaint, the Plaintiff states as follows:

## PARTIES

1.     Plaintiff CRS is a Massachusetts corporation with a usual place of business located at 625 Massachusetts Avenue, Cambridge, Middlesex County, Massachusetts.

2.     Defendant Adesta is a Delaware Corporation with usual place of business located at 200 East Park Drive, Suite 600, Mt. Laurel, New Jersey.

3.     Defendant SASCO is a Florida Corporation with a usual place of business located at 405 Atlantis Road, Suite D, Cape Canaveral, Florida.

## JURISDICTION AND VENUE

4.     Diversity jurisdiction is based on 28 U.S.C. § 1332(a)(2) because CRS is a Massachusetts corporation with its principal place of business in the Commonwealth of Massachusetts, Adesta is a Delaware Corporation, registered to do business in the Commonwealth of Massachusetts, with its principle place of business in the State of New Jersey, and SASCO is a Florida corporation with its principle place of business in the State of Florida. The amount in controversy exceeds the sum of Seventy-five Thousand Dollars ($75,000), exclusive of interest and costs.

5.     This Court has personal jurisdiction over SASCO pursuant to Mass. Gen. L. c. 223A, § 3(a) because, in its dealings with CRS, SASCO has transacted business in the Commonwealth of Massachusetts and has minimum contacts sufficient to submit itself to the jurisdiction of the Massachusetts' courts.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL COUNTS

7.      For twenty years, CRS has been in the business of the design and development of License Plate Readers, and for the last seven years Violation Enforcement Systems ("System" or "Systems") for use in monitoring motorist compliance at toll collection points on highways throughout the United States. CRS's System was created through thousands of hours of engineering, research and development.

8.      The operation of CRS's System relies upon proprietary technology consisting of video capture cards, commonly referred to as boards ("Boards"), software for use in capturing digital images of automobiles and their license plates as they pass through toll plazas, and the configuration of the System. The System developed by CRS is generally more reliable than other similar systems on the market.

9.      The software developed by CRS contains a computer code, or algorithm ("Algorithm"), that optimizes the license plate imaging process by automatically adjusting the camera's parameters, including the shutter speed, gain, and f-stop, based on the time of day, and the current lighting conditions.

10.     CRS's Algorithm is unique in that it uses the camera's sensor to determine the lighting conditions at any particular time, and adjust the camera parameters accordingly in order to obtain a license plate image of a sufficient quality.

11.     The Algorithm provides CRS with a competitive advantage in comparison to its competitors because CRS's System offers superior performance, and fewer component parts.

3

{B0187704.DOC;2}

12.     CRS has treated the System as a trade secret by, among other things, insisting on entering into confidentiality agreements with those with whom it shares its proprietary information.

13.     In February of 1999, Adesta and CRS entered into a purchase agreement pursuant to which CRS was to supply ninety-four (94) Systems, consisting of cameras, camera mounts and enclosures, lights, boards, software, and software licenses, to Adesta for Phase I of the New York/New Jersey Regional Consortium Project ("Regional Consortium Project"), a highway project being constructed in Delaware and New Jersey. The ninety-four (94) Systems provided by CRS were to be installed in ninety-four (94) toll lanes on the Delaware Turnpike and the Atlantic City Expressway.

14.     During the period in which CRS was fulfilling the purchase orders on Phase I, Adesta requested that CRS work with Adesta to modify CRS's software and Algorithm so that it would work with two other operating systems used by Adesta, CExec and Lynx in connection with Phase II of the Regional Consortium Project ("Phase II"). CRS's Algorithm was originally developed to work with the Windows NT operating system.

15.     Accordingly, Adesta issued a purchase order for this development work. CRS and Adesta agreed that upon successful completion of the development work, CRS would be issued purchase orders to supply components for the Systems for Phase II. Unlike Phase I where CRS supplied the entire System consisting of cameras, camera mounts and enclosures, lights, and an industrial computer including Boards, software, and software licenses, CRS and Adesta agreed that on Phase II, CRS would be requested to supply only Boards, software, and software licenses.

4

{B0187704.DOC;2}

16.     In connection with this development work, CRS insisted upon entering

into a Confidentiality Agreement with Adesta in order to protect CRS's trade secret and

proprietary information.  A true and correct copy of the Confidentiality Agreement is

attached hereto as Exhibit A.

17.     Pursuant to the terms of the Confidentiality Agreement, CRS and Adesta

agreed to:

> develop a combined lane controller and violation image capture system in
> which [Adesta] and CRS would jointly perform product development,
> during the course of which CRS may be required to provided proprietary
> information related to violation image capture and specifically camera
> control algorithms . . ..  In the course of this development, the Parties may
> exchange information and data that is confidential and proprietary, and in
> such event the Parties agree that such information shall be governed by
> this Agreement.

18.     Further, pursuant to the Confidentiality Agreement, CRS and Adesta

specifically agreed to restrict the use and disclosure of information classified as

confidential pursuant to the Confidentiality Agreement as follows:

> Each Party agrees to use Confidential Information received from the other
> Party only (i) to perform the specific scope of work defined in Paragraph I
> above and (ii) to collaborate on other Projects after the Parties have agreed
> to do so, but not for any other purpose.

19.     Near the completion of the development work, Adesta indicated to CRS

that the purchase orders for Phase II of the Regional Consortium Project would be issued

through SASCO, Adesta's sister company.

20.     In a subsequent letter, SASCO requested that CRS provide a price for

CRS to supply Boards, software, and software licenses ("Units") for Phase II of the

Regional Consortium Project.

5

21.    CRS quoted SASCO a price of $1,750 for each Unit.  Thereafter, Adesta contacted CRS to negotiate a lower price.  CRS again submitted a quote to SASCO, this time at a lower price of $1575 per Unit.  Accordingly, SASCO issued the two purchase orders, PO Nos. F99-1986-3019 dated December 17, 1999 and F99-1988-3021 dated December 20, 1999, offering to purchase 834 Units for a total price of $1,313,550.

22.    By facsimile dated January 20, 2001, CRS accepted SASCO's offer by indicating shipment dates for the Units.

23.    Over the next year, while CRS was providing Units under the first of the two purchase orders, CRS also provided significant technical consultation to remedy Adesta's defective installation of the Units.  CRS's consultation was provided at no cost to SASCO or Adesta.  Although CRS was prompt and timely with all of its shipments to Adesta, and generous with its technical guidance, SASCO and Adesta were consistently slow to pay, and CRS communicated frequently with SASCO and Adesta regarding outstanding payments.

24.    From January 1, 2000 to December 31, 2000, CRS made eleven (11) shipments to Adesta and delivered 340 of the 387 Units under PO No. PO No. F99-1986-3019.  CRS issued eleven (11) invoices for the 340 Units in the total amount of $546,552. Of that amount, Adesta paid CRS directly on two invoices, in the total amount of $120,600.  SASCO paid the remaining invoices in the total amount of $425,952.

25.    During a telephone conversation in late December of 2000, Adesta advised CRS that Adesta no longer required CRS to provide its software or software licenses with the Units, but, instead, only required delivery of the boards.  Adesta claimed that CRS's software, containing CRS's secret Algorithm, was not functioning properly,

6

and, accordingly, Adesta had developed its own software to replace that provided by CRS. This was the first time in the six months that CRS was supplying Units pursuant to the Contract that CRS was notified that Adesta was unhappy with the performance of CRS's software.

26.     By letter dated January 3, 2001 from Adesta to SASCO, Adesta requested that the purchase orders be modified both quantitatively and substantively. SASCO forwarded this request to CRS in a letter dated January 4, 2001. Specifically, Adesta requested that PO No. F99-1986-3019 for 387 Units be reduced to 358 Units, and that PO No. F99-1988-3021 for 447 Units be reduced to 341 Units. Further, Adesta requested that the purchase orders be changed such that CRS provide only the boards, and not the software, or software licenses for the balance of the purchase orders.

27.     Adesta notified CRS through SASCO that the reason for this requested modification to the Purchase Orders was that Adesta had developed its own algorithm to replace the Algorithm developed by CRS.

28.     Since it was not clear to CRS exactly what Adesta wanted, CRS attempted to obtain clarification by telephone. Neither Adesta, nor SASCO, responded to CRS's inquiries. Accordingly, CRS continued to perform in good faith pursuant to the Contract, and shipped 30 Units that had already been manufactured to Adesta on January 22, 2001. Adesta refused delivery.

29.     In an effort to accommodate SASCO, CRS responded to SASCO's requests to modify the Purchase Orders with a letter dated January 29, 2001 indicating that the requested changes to the purchase orders would cause an increase in the price per Unit. Further CRS indicated that the remaining 17 Units for PO No. F99-1986-3019, as

7

well as 63 Units for PO No. F99-1988-3021, were scheduled to ship on February 14, 2001. CRS also stated that due to the requests to re-price, it had put its manufacturing of remaining Units on hold pending clarification of SASCO's request to re-price.   Finally, CRS notified SASCO that the algorithm developed by Adesta to replace CRS's Algorithm likely violated the Confidentiality Agreement between CRS and Adesta.

30.     By letter dated February 8, 2001, SASCO cancelled all remaining Units to be provided under the two purchase orders claiming that CRS's boards and software were not required since Adesta had developed its own algorithm and necessarily obtaining boards elsewhere.

31.     The Units manufactured by CRS were custom made for SASCO and Adesta and cannot be readily resold.

## COUNT I – BREACH OF CONTRACT

32.     CRS restates the allegations contained in paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.     CRS and Defendants entered into a Contract pursuant to which CRS was to deliver 834 Units.

34.     Defendants' refusal to accept delivery of Units supplied in good faith by CRS, and subsequent cancellation of the Contract in the absence of any contractual right to do so, was a breach of contract.

35.     CRS and Adesta entered into a Confidentiality Agreement dated March 31, 1999 the purpose of which was to protect CRS's trade secrets.

36.     Adesta breached the Confidentiality Agreement by improperly using CRS's trade secrets and confidential information.

8

37.     As a result of Defendants' breaches, CRS incurred, and continues to incur damages.

38.     All conditions precedent to the maintenance of this action have been performed.

## COUNT II -- BREACH OF IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING

39.     CRS restates the allegations contained in paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40.     The Contract between CRS and Defendants pursuant to the Purchase Orders, as well as the Confidentiality Agreement, carry with them implied covenants of good faith and fair dealing.

41.     Defendants conduct, as set forth above, constitutes a violation of the obligation of good faith and fair dealing implicit in these contracts.

42.     As a direct and proximate result, CRS incurred, and continues to incur damages.

## COUNT III - MISAPPROPRIATION OF TRADE SECRETS
## MASS. GEN. L. c. 93, § § 42 and 42A AND MASSACHUSETTS COMMON LAW

43.     CRS restates the allegations contained in paragraphs 1 through 42 of the Complaint as if fully set forth herein.

44.     CRS maintained its System as a trade secret.

45.     CRS had possession or an immediate right to possession of trade secret and/or confidential information.  Defendants were, and remain, under a duty not to use or disclose CRS's trade secrets and confidential information.

9

46.     On information and belief, Defendants have and continues to exercise dominion and control over CRS's trade secrets and confidential information in a manner inconsistent with CRS's rights.

47.     On information and belief, Defendants unlawfully took CRS's trade secrets for its own use in violation of common law and of Mass. Gen. L. c. 93.

48.     CRS has and continues to suffer irreparable harm and other damages as a result of Defendants' conduct.

## COUNT IV – CONVERSION

49.     CRS restates the allegations contained in paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.     CRS has an immediate right to possession of its trade secrets and confidential information.

51.     Defendants have intentionally and wrongfully exercised dominion and/or control over CRS's trade secrets and confidential information.

52.     As a result of Defendants' conversion of CRS's property, CRS has suffered and continues to suffer substantial damage.

## COUNT V – UNFAIR AND DECEPTIVE TRADE PRACTICES MASS. GEN. L. C. 93A

53.     CRS restates the allegations contained in paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54.     At all times relevant to this Complaint, CRS and the Defendants were engaged in trade or commerce as defined by Mass. Gen. L. c. 93A.

55.     The conduct of the Defendants described herein constitutes unfair and deceptive trade practices.

{B0187704.DOC;2}

56.     Defendant's conduct was committed knowingly and willingly.

57.     As a result of Defendants violations of Mass. Gen. L. c. 93A, CRS has

suffered substantial damages.

WHEREFORE, CRS respectfully requests that the Court grant the following

relief:

(A)     Issue an Order enjoining Defendants from further use or disclosure of CRS's trade secrets or confidential information;

(B)     Enter judgment on behalf of CRS in an amount to be determined at trial plus treble damages, interest, costs and attorneys fees; and

(C)     Grant such other or additional relief as the Court deems just and proper under the circumstances.

### JURY DEMAND

CRS respectfully request a trial by jury on all issues so triable.


COMPUTER RECOGNITION
SYSTEMS, INC.

By its Attorneys,


John R. Halal, BBO# 559473
John P. Giffune, BBO# 636599
GADSBY HANNAH LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

March 22, 2001

11

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 01-

COMPUTER RECOGNITION )
SYSTEMS, INC., )
        Plaintiffs, )
v. )
)
ADESTA COMMUNICATIONS, INC. )
d/b/a ADESTA TRANSPORTATION )
and )
SOUTHERN ALUMINUM & STEEL )
CORPORATION, )
        Defendants. )

01   1 0 4 9 1   MEL

## COMPLAINT AND JURY DEMAND

## BACKGROUND

Plaintiff Computer Recognition Systems, Inc. ("CRS") brings this action against

Adesta Communications, Inc. d/b/a Adesta Transportation ("Adesta") and Southern

Aluminum and Steel Corporation ("SASCO") (collectively "Defendants") for breach of

contract, misappropriation of trade secrets, conversion, violation of Mass. Gen. L. c. 93A

and related claims.  CRS sells proprietary Violation Enforcement Systems ("System" or

"Systems") used to monitor motorist compliance with highway toll collection points.

Defendants requested that CRS modify certain components of its proprietary system to

interface with a system used by Defendants.  CRS agreed to do so, but only after the

execution of a confidentiality agreement.  After CRS shared its confidential information

and trade secrets with the Defendants and delivered nearly half of the components, the

Defendants wrongfully cancelled the contract.  CRS subsequently

{B0187704.DOC;2}

learned that Defendants used CRS' proprietary and confidential information to develop its own components in place of those provided by CRS.

For cause of action and by way of Complaint, the Plaintiff states as follows:

## PARTIES

1.      Plaintiff CRS is a Massachusetts corporation with a usual place of business located at 625 Massachusetts Avenue, Cambridge, Middlesex County, Massachusetts.

2.      Defendant Adesta is a Delaware Corporation with usual place of business located at 200 East Park Drive, Suite 600, Mt. Laurel, New Jersey.

3.      Defendant SASCO is a Florida Corporation with a usual place of business located at 405 Atlantis Road, Suite D, Cape Canaveral, Florida.

## JURISDICTION AND VENUE

4.      Diversity jurisdiction is based on 28 U.S.C. § 1332(a)(2) because CRS is a Massachusetts corporation with its principal place of business in the Commonwealth of Massachusetts, Adesta is a Delaware Corporation, registered to do business in the Commonwealth of Massachusetts, with its principle place of business in the State of New Jersey, and SASCO is a Florida corporation with its principle place of business in the State of Florida.  The amount in controversy exceeds the sum of Seventy-five Thousand Dollars ($75,000), exclusive of interest and costs.

5.      This Court has personal jurisdiction over SASCO pursuant to Mass. Gen. L. c. 223A, § 3(a) because, in its dealings with CRS, SASCO has transacted business in the Commonwealth of Massachusetts and has minimum contacts sufficient to submit itself to the jurisdiction of the Massachusetts' courts.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL COUNTS

7.     For twenty years, CRS has been in the business of the design and development of License Plate Readers, and for the last seven years Violation Enforcement Systems ("System" or "Systems") for use in monitoring motorist compliance at toll collection points on highways throughout the United States. CRS's System was created through thousands of hours of engineering, research and development.

8.     The operation of CRS's System relies upon proprietary technology consisting of video capture cards, commonly referred to as boards ("Boards"), software for use in capturing digital images of automobiles and their license plates as they pass through toll plazas, and the configuration of the System. The System developed by CRS is generally more reliable than other similar systems on the market.

9.     The software developed by CRS contains a computer code, or algorithm ("Algorithm"), that optimizes the license plate imaging process by automatically adjusting the camera's parameters, including the shutter speed, gain, and f-stop, based on the time of day, and the current lighting conditions.

10.    CRS's Algorithm is unique in that it uses the camera's sensor to determine the lighting conditions at any particular time, and adjust the camera parameters accordingly in order to obtain a license plate image of a sufficient quality.

11.    The Algorithm provides CRS with a competitive advantage in comparison to its competitors because CRS's System offers superior performance, and fewer component parts.

3

12.     CRS has treated the System as a trade secret by, among other things, insisting on entering into confidentiality agreements with those with whom it shares its proprietary information.

13.     In February of 1999, Adesta and CRS entered into a purchase agreement pursuant to which CRS was to supply ninety-four (94) Systems, consisting of cameras, camera mounts and enclosures, lights, boards, software, and software licenses, to Adesta for Phase I of the New York/New Jersey Regional Consortium Project ("Regional Consortium Project"), a highway project being constructed in Delaware and New Jersey. The ninety-four (94) Systems provided by CRS were to be installed in ninety-four (94) toll lanes on the Delaware Turnpike and the Atlantic City Expressway.

14.     During the period in which CRS was fulfilling the purchase orders on Phase I, Adesta requested that CRS work with Adesta to modify CRS's software and Algorithm so that it would work with two other operating systems used by Adesta, CExec and Lynx in connection with Phase II of the Regional Consortium Project ("Phase II"). CRS's Algorithm was originally developed to work with the Windows NT operating system.

15.     Accordingly, Adesta issued a purchase order for this development work. CRS and Adesta agreed that upon successful completion of the development work, CRS would be issued purchase orders to supply components for the Systems for Phase II. Unlike Phase I where CRS supplied the entire System consisting of cameras, camera mounts and enclosures, lights, and an industrial computer including Boards, software, and software licenses, CRS and Adesta agreed that on Phase II, CRS would be requested to supply only Boards, software, and software licenses.

4

16.     In connection with this development work, CRS insisted upon entering

into a Confidentiality Agreement with Adesta in order to protect CRS's trade secret and

proprietary information.  A true and correct copy of the Confidentiality Agreement is

attached hereto as Exhibit A.

17.     Pursuant to the terms of the Confidentiality Agreement, CRS and Adesta

agreed to:

> develop a combined lane controller and violation image capture system in
> which [Adesta] and CRS would jointly perform product development,
> during the course of which CRS may be required to provided proprietary
> information related to violation image capture and specifically camera
> control algorithms . . .. In the course of this development, the Parties may
> exchange information and data that is confidential and proprietary, and in
> such event the Parties agree that such information shall be governed by
> this Agreement.

18.     Further, pursuant to the Confidentiality Agreement, CRS and Adesta

specifically agreed to restrict the use and disclosure of information classified as

confidential pursuant to the Confidentiality Agreement as follows:

> Each Party agrees to use Confidential Information received from the other
> Party only (i) to perform the specific scope of work defined in Paragraph I
> above and (ii) to collaborate on other Projects after the Parties have agreed
> to do so, but not for any other purpose.

19.     Near the completion of the development work, Adesta indicated to CRS

that the purchase orders for Phase II of the Regional Consortium Project would be issued

through SASCO, Adesta's sister company.

20.     In a subsequent letter, SASCO requested that CRS provide a price for

CRS to supply Boards, software, and software licenses ("Units") for Phase II of the

Regional Consortium Project.

{B0187704.DOC;2}

21.     CRS quoted SASCO a price of $1,750 for each Unit.  Thereafter, Adesta contacted CRS to negotiate a lower price.  CRS again submitted a quote to SASCO, this time at a lower price of $1575 per Unit.  Accordingly, SASCO issued the two purchase orders, PO Nos. F99-1986-3019 dated December 17, 1999 and F99-1988-3021 dated December 20, 1999, offering to purchase 834 Units for a total price of $1,313,550.

22.     By facsimile dated January 20, 2001, CRS accepted SASCO's offer by indicating shipment dates for the Units.

23.     Over the next year, while CRS was providing Units under the first of the two purchase orders, CRS also provided significant technical consultation to remedy Adesta's defective installation of the Units.  CRS's consultation was provided at no cost to SASCO or Adesta.  Although CRS was prompt and timely with all of its shipments to Adesta, and generous with its technical guidance, SASCO and Adesta were consistently slow to pay, and CRS communicated frequently with SASCO and Adesta regarding outstanding payments.

24.     From January 1, 2000 to December 31, 2000, CRS made eleven (11) shipments to Adesta and delivered 340 of the 387 Units under PO No. PO No. F99-1986-3019.  CRS issued eleven (11) invoices for the 340 Units in the total amount of $546,552.  Of that amount, Adesta paid CRS directly on two invoices, in the total amount of $120,600.  SASCO paid the remaining invoices in the total amount of $425,952.

25.     During a telephone conversation in late December of 2000, Adesta advised CRS that Adesta no longer required CRS to provide its software or software licenses with the Units, but, instead, only required delivery of the boards.  Adesta claimed that CRS's software, containing CRS's secret Algorithm, was not functioning properly,

6

and, accordingly, Adesta had developed its own software to replace that provided by CRS. This was the first time in the six months that CRS was supplying Units pursuant to the Contract that CRS was notified that Adesta was unhappy with the performance of CRS's software.

26.     By letter dated January 3, 2001 from Adesta to SASCO, Adesta requested that the purchase orders be modified both quantitatively and substantively. SASCO forwarded this request to CRS in a letter dated January 4, 2001. Specifically, Adesta requested that PO No. F99-1986-3019 for 387 Units be reduced to 358 Units, and that PO No. F99-1988-3021 for 447 Units be reduced to 341 Units. Further, Adesta requested that the purchase orders be changed such that CRS provide only the boards, and not the software, or software licenses for the balance of the purchase orders.

27.     Adesta notified CRS through SASCO that the reason for this requested modification to the Purchase Orders was that Adesta had developed its own algorithm to replace the Algorithm developed by CRS.

28.     Since it was not clear to CRS exactly what Adesta wanted, CRS attempted to obtain clarification by telephone. Neither Adesta, nor SASCO, responded to CRS's inquiries. Accordingly, CRS continued to perform in good faith pursuant to the Contract, and shipped 30 Units that had already been manufactured to Adesta on January 22, 2001. Adesta refused delivery.

29.     In an effort to accommodate SASCO, CRS responded to SASCO's requests to modify the Purchase Orders with a letter dated January 29, 2001 indicating that the requested changes to the purchase orders would cause an increase in the price per Unit. Further CRS indicated that the remaining 17 Units for PO No. F99-1986-3019, as

7

well as 63 Units for PO No. F99-1988-3021, were scheduled to ship on February 14,

2001. CRS also stated that due to the requests to re-price, it had put its manufacturing of

remaining Units on hold pending clarification of SASCO's request to re-price. Finally,

CRS notified SASCO that the algorithm developed by Adesta to replace CRS's

Algorithm likely violated the Confidentiality Agreement between CRS and Adesta.

     30.    By letter dated February 8, 2001, SASCO cancelled all remaining Units to

be provided under the two purchase orders claiming that CRS's boards and software were

not required since Adesta had developed its own algorithm and necessarily obtaining

boards elsewhere.

     31.    The Units manufactured by CRS were custom made for SASCO and

Adesta and cannot be readily resold.

## COUNT I – BREACH OF CONTRACT

     32.    CRS restates the allegations contained in paragraphs 1 through 31 of the

Complaint as if fully set forth herein.

     33.    CRS and Defendants entered into a Contract pursuant to which CRS was

to deliver 834 Units.

     34.    Defendants' refusal to accept delivery of Units supplied in good faith by

CRS, and subsequent cancellation of the Contract in the absence of any contractual right

to do so, was a breach of contract.

     35.    CRS and Adesta entered into a Confidentiality Agreement dated March

31, 1999 the purpose of which was to protect CRS's trade secrets.

     36.    Adesta breached the Confidentiality Agreement by improperly using

CRS's trade secrets and confidential information.

8

37.     As a result of Defendants' breaches, CRS incurred, and continues to incur damages.

38.     All conditions precedent to the maintenance of this action have been performed.

## COUNT II – BREACH OF IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING

39.     CRS restates the allegations contained in paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40.     The Contract between CRS and Defendants pursuant to the Purchase Orders, as well as the Confidentiality Agreement, carry with them implied covenants of good faith and fair dealing.

41.     Defendants conduct, as set forth above, constitutes a violation of the obligation of good faith and fair dealing implicit in these contracts.

42.     As a direct and proximate result, CRS incurred, and continues to incur damages.

## COUNT III - MISAPPROPRIATION OF TRADE SECRETS
## MASS. GEN. L. c. 93, § § 42 and 42A AND MASSACHUSETTS COMMON LAW

43.     CRS restates the allegations contained in paragraphs 1 through 42 of the Complaint as if fully set forth herein.

44.     CRS maintained its System as a trade secret.

45.     CRS had possession or an immediate right to possession of trade secret and/or confidential information.  Defendants were, and remain, under a duty not to use or disclose CRS's trade secrets and confidential information.

{B0187704.DOC;2}

46.     On information and belief, Defendants have and continues to exercise dominion and control over CRS's trade secrets and confidential information in a manner inconsistent with CRS's rights.

47.     On information and belief, Defendants unlawfully took CRS's trade secrets for its own use in violation of common law and of Mass. Gen. L. c. 93.

48.     CRS has and continues to suffer irreparable harm and other damages as a result of Defendants' conduct.

## COUNT IV – CONVERSION

49.     CRS restates the allegations contained in paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.     CRS has an immediate right to possession of its trade secrets and confidential information.

51.     Defendants have intentionally and wrongfully exercised dominion and/or control over CRS's trade secrets and confidential information.

52.     As a result of Defendants' conversion of CRS's property, CRS has suffered and continues to suffer substantial damage.

## COUNT V – UNFAIR AND DECEPTIVE TRADE PRACTICES
## MASS. GEN. L. C. 93A

53.     CRS restates the allegations contained in paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54.     At all times relevant to this Complaint, CRS and the Defendants were engaged in trade or commerce as defined by Mass. Gen. L. c. 93A.

55.     The conduct of the Defendants described herein constitutes unfair and deceptive trade practices.

10

56.     Defendant's conduct was committed knowingly and willingly.

57.     As a result of Defendants violations of Mass. Gen. L. c. 93A, CRS has

suffered substantial damages.

WHEREFORE, CRS respectfully requests that the Court grant the following

relief:

(A)     Issue an Order enjoining Defendants from further use or disclosure of CRS's trade
        secrets or confidential information;

(B)     Enter judgment on behalf of CRS in an amount to be determined at trial plus
        treble damages, interest, costs and attorneys fees; and

(C)     Grant such other or additional relief as the Court deems just and proper under the
        circumstances.

### JURY DEMAND

CRS respectfully request a trial by jury on all issues so triable.

COMPUTER RECOGNITION
SYSTEMS, INC.

By its Attorneys,

John R. Haller, BBO# 559473
John P. Giffune, BBO# 636599
GADSBY HANNAH LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

March 22, 2001

11

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ACCESS 123, INC. and | ) | Civil Action No. 01 CV 10507 RWZ |
| DAVID HEIM, | ) | |
|     Plaintiffs | ) | |
| | ) | **ANSWER OF THE** |
| vs. | ) | **DEFENDANT** |
| | ) | |
| GERALD N. SEYMOUR | ) | |
| d/b/a THE WILDWOOD RESTAURANT, | ) | |
|     Defendants | ) | |

NOW comes the Defendant in the above entitled matter and does hereby Answer the Complaint of the Plaintiffs as follows:

1.    The Defendant admits that the Court has original jurisdiction of this matter.

2.    The Defendant admits that proper venue in this matter lies in this District.

3.    The Defendant admits the allegations contained in Paragraph 3 of the Complaint.

4.    The Defendant admits the allegations contained in Paragraph 4 of the Complaint

5.    The Defendant admits the allegations contained in Paragraph 5 of the Complaint.

6.    The Defendant neither admits nor denies the allegations contained in Paragraph 6 of the Complaint and calls for proof of same.

7.    The Defendant neither admits nor denies the allegations contained in Paragraph 7 of the Complaint and calls for proof of same.

8.    The Defendant admits that he is the owner of The Wildwood Restaurant.  The Defendant neither admits nor denies the remaining allegations of Paragraph 8 of the Complaint.

9.    The Defendant denies the allegations contained in Paragraph 9 of the Complaint.

10.    The Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.    The Defendant neither admits nor denies the allegations contained in Paragraph 11 of the Complaint and calls for proof of same.

12.    The Defendant denies the allegations contained in Paragraph 12 of the Complaint.

13.    The Defendant admits the allegations contained in Paragraph 13 of the Complaint.

14.     The Defendant denies the allegations contained in Paragraph 14 of the Complaint.

15.     The Defendant denies the allegations contained in Paragraph 15 of the Complaint.

16.     The Defendant denies the allegations contained in Paragraph 16 of the Complaint.

17.     The Defendant denies the allegations contained in Paragraph 17 of the Complaint.

18.     The Defendant neither admits nor denies the allegations contained in Paragraph 18 of the Complaint and calls for proof of same.

19.     The Defendant admits the allegations contained in Paragraph 19 of the Complaint

## FIRST AFFIRMATIVE RESPONSE

The Plaintiffs has failed to state a claim for which relief may be granted.

## SECOND AFFIRMATIVE RESPONSE

The Plaintiffs have failed to comply with the relevant notice provisions contained in *42 U.S.C. §12181 et seq.*

## THIRD AFFIRMATIVE RESPONSE

The Plaintiffs lack proper standing.

By his Attorney,

William H. Mayer, Esquire
Hargraves, Karb, Wilcox & Galvani
550 Cochituate Road
P.O. Box 966
Framingham, MA 01701
508-620-0140
BBO #325840

Date:  March 20, 2001

## CERTIFICATE OF SERVICE

I, William H. Mayer, attorney for the Defendant, hereby certify that I have this date served a copy of the within Answer to Complaint upon the Plaintiffs, by mailing said copy postage prepaid to their attorney, Mark Orlove, Esquire at 8 Park Plaza - #215, Boston, MA 02116-3902.

Signed under the penalties of perjury this 21 day of March, 2001.

William H. Mayer, Esquire

F:\MAYER.WM\Seym-ger\ANSWER.WPD-March 21, 2001

UNITED STATES DISTRICT COUNT
FOR THE DISTRICT OF MASSACHUSETTS

CASE No. <u>00-12492 MLW</u>

)
NEXTEL COMMUNICATIONS OF THE )
MID-ATLANTIC, INC. d/b/a/ )
NEXTEL COMMUNICATIONS) )
)
Plaintiff, )
)
THE TOWN OF EASTON, )
ZONING BOARD OF APPEALS  and Paul )
G. Pino, Chairman, Walter Mirrione, Clerk, )
Stephen A. Freitas, Stephen J. McAlarney, )
Brian T. O'Neil, Jr. and Stephen Pinzari, )
in their capacities as Members of the Zoning )
Board of Appeals of the Town of Easton )
)
Defendants. )
)

**ANSWER**

1.    Defendants admit the allegations contained in sentence 1of paragraph 1 and deny the allegations contained in sentence 2 of paragraph 1.

2.    Defendants admit the allegations contained in paragraph 2.

3.    Defendants are without sufficient knowledge or knowledge to admit or deny the allegations in paragraph 3 and call upon Plaintiff to prove the same.

4.    Defendants admit the allegations contained in paragraph 4.

5.    Defendants admit the allegations contained in paragraph 5.

6.    Defendants admit the allegations contained in paragraph 6.



7.    Paragraph 7 states a conclusion of law and, therefore, no response is required.

8.    Defendants admit the allegations of paragraph 8.

9.    Defendants admit the allegations of paragraph 9.

10.   Defendants admit the allegations of paragraph 10.

11.   Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 11 and call upon Plaintiff to prove the same.

12.   Defendants admit the allegations in sentence 1 of paragraph 12.  Defendants are without sufficient knowledge to admit or deny the allegations in sentence 2 of paragraph 12.  Defendants admit the allegations in sentence 3 of paragraph 12.

13.   Defendants deny the allegations contained in paragraph 13.

14.   Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 14 and call upon Plaintiff to prove the same.

15.   Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 15 and call upon Plaintiff to prove the same.

16.   Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 16 and call upon Plaintiff to prove the same.

17.   Defendants admit the allegations contained in paragraph 17.

18.   Defendants deny the allegations contained in paragraph 18.

19.   Defendants admit the allegations contained in sentence 1of paragraph 19. Defendants are without sufficient knowledge or information to admit or deny the allegations contained in the last sentence of paragraph 19.

20.   Defendants admit the allegations contained in paragraph 20.

21.    Defendants admit the allegations contained in sentence 1 of paragraph 21.
Defendants deny the allegations contained in sentence 2 of paragraph 21.
Defendants admit the allegations contained in the last sentence of paragraph 21.

22.    Defendants are without sufficient knowledge or information to admit or deny the
allegations contained in paragraph 22 and call upon Plaintiff to prove the same.

23.    Defendants deny the allegations contained in paragraph 23 and in further
answering state that the location of the proposed facility  in an historically
sensitive area subject to the jurisdiction of the Massachusetts Historical Society
and the Easton Historical Commission.

24.    Defendants deny the allegations contained in paragraph 24.

25.    Defendants are without sufficient knowledge or information to admit or deny the
allegations contained in paragraph 25 and call upon Plaintiff to prove the same.

26.    Defendants repeat and realleges their answers contained in paragraphs 1 through
25 as if fully set forth herein.

27.    Defendants deny the allegations contained in paragraph 27.

28.    Defendants deny the allegations contained in paragraph 28.

29.    Defendants repeat and realleges their answers contained in paragraphs 1 through
28 as if fully set forth herein.

30.    Defendants admit the allegations contained in paragraph 30.

31.    The defendants deny the allegations contained in paragraph 31.

32.    Defendants deny the allegations contained in paragraph 32.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed because Defendants' decisions were based on substantial evidence contained in a written record and did not prohibit or have the effect of prohibiting service to the area.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed because the Defendants' decisions ere within the Board's authority and not arbitrary or capricious.

### THIRD AFFIRMATIAVE DEFENSE

Plaintiff's Complaint should be dismissed for failure to comply with the statute of limitations and other procedural requirements as set forth in Mass. Gen. Laws c. 40A.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed because the Telecommunications Act of 1996 is unconstitutional in that it violates the 10th Amendment of the U.S. Constitution.

WHEREFORE, the Defendants request that this Court enter judgment for the

Defendants on all counts and award Defendants their costs.

> TOWN OF EASTON AND THE
> ZONING BOARD OF APPEALS
> OF EASTON
> By their attorneys,
>
> *[signature]*
>
> Joan E. Langsam (BBO# 276888)
> Gary S. Brackett (BB0#  052940)
> BRACKETT & LUCAS
> 10 Converse Place 2nd Floor
> Winchester, MA.  01890
> (781) 721-2425

## CERTIFICATE OF SERVICE

I, Joan E. Langsam, hereby certify on the 26th day of March, 2001, that I have

served a true and accurate copy of the within Answer by mail via first class,

postage prepaid, addressed to:

> Steven E. Grill, Esquire
> Devine, Millimet & Branch, P.A.
> 111 Amherst Street, P.O. Box 719
> Manchester, N.H.  03105-0719

*[signature]*
Joan E. Langsam, Esquire

5

UNITED STATES DISTRICT COUNT
FOR THE DISTRICT OF MASSACHUSETTS

CASE No. <u>00-12492 MLW</u>

|  |  |
|---|---|
| NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a/ NEXTEL COMMUNICATIONS)<br><br>Plaintiff,<br><br>THE TOWN OF EASTON, ZONING BOARD OF APPEALS  and Paul G. Pino, Chairman, Walter Mirrione, Clerk, Stephen A. Freitas, Stephen J. McAlarney, Brian T. O'Neil, Jr. and Stephen Pinzari, in their capacities as Members of the Zoning Board of Appeals of the Town of Easton<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ANSWER**

1.   Defendants admit the allegations contained in sentence 1of paragraph 1 and deny the allegations contained in sentence 2 of paragraph 1.

2.   Defendants admit the allegations contained in paragraph 2.

3.   Defendants are without sufficient knowledge or knowledge to admit or deny the allegations in paragraph 3 and call upon Plaintiff to prove the same.

4.   Defendants admit the allegations contained in paragraph 4.

5.   Defendants admit the allegations contained in paragraph 5.

6.   Defendants admit the allegations contained in paragraph 6.



7.  Paragraph 7 states a conclusion of law and, therefore, no response is required.

8.  Defendants admit the allegations of paragraph 8.

9.  Defendants admit the allegations of paragraph 9.

10. Defendants admit the allegations of paragraph 10.

11. Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 11 and call upon Plaintiff to prove the same.

12. Defendants admit the allegations in sentence 1 of paragraph 12.  Defendants are without sufficient knowledge to admit or deny the allegations in sentence 2 of paragraph 12.  Defendants admit the allegations in sentence 3 of paragraph 12.

13. Defendants deny the allegations contained in paragraph 13.

14. Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 14 and call upon Plaintiff to prove the same.

15. Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 15 and call upon Plaintiff to prove the same.

16. Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 16 and call upon Plaintiff to prove the same.

17. Defendants admit the allegations contained in paragraph 17.

18. Defendants deny the allegations contained in paragraph 18.

19. Defendants admit the allegations contained in sentence 1of paragraph 19.  Defendants are without sufficient knowledge or information to admit or deny the allegations contained in the last sentence of paragraph 19.

20. Defendants admit the allegations contained in paragraph 20.

21.     Defendants admit the allegations contained in sentence 1 of paragraph 21. Defendants deny the allegations contained in sentence 2 of paragraph 21. Defendants admit the allegations contained in the last sentence of paragraph 21.

22.     Defendants are without sufficient knowledge or information to admit or deny the allegations contained in paragraph 22 and call upon Plaintiff to prove the same.

23.     Defendants deny the allegations contained in paragraph 23 and in further answering state that the location of the proposed facility in an historically sensitive area subject to the jurisdiction of the Massachusetts Historical Society and the Easton Historical Commission.

24.     Defendants deny the allegations contained in paragraph 24.

25.     Defendants are without sufficient knowledge or information to admit or deny the allegations contained in paragraph 25 and call upon Plaintiff to prove the same.

26.     Defendants repeat and realleges their answers contained in paragraphs 1 through 25 as if fully set forth herein.

27.     Defendants deny the allegations contained in paragraph 27.

28.     Defendants deny the allegations contained in paragraph 28.

29.     Defendants repeat and realleges their answers contained in paragraphs 1 through 28 as if fully set forth herein.

30.     Defendants admit the allegations contained in paragraph 30.

31.     The defendants deny the allegations contained in paragraph 31.

32.     Defendants deny the allegations contained in paragraph 32.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed because Defendants' decisions were based on substantial evidence contained in a written record and did not prohibit or have the effect of prohibiting service to the area.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed because the Defendants' decisions ere within the Board's authority and not arbitrary or capricious.

## THIRD AFFIRMATIAVE DEFENSE

Plaintiff's Complaint should be dismissed for failure to comply with the statute of limitations and other procedural requirements as set forth in Mass. Gen. Laws c. 40A.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed because the Telecommunications Act of 1996 is unconstitutional in that it violates the 10th Amendment of the U.S. Constitution.

WHEREFORE, the Defendants request that this Court enter judgment for the

Defendants on all counts and award Defendants their costs.


TOWN OF EASTON AND THE
ZONING BOARD OF APPEALS
OF EASTON
By their attorneys,

Joan E. Langsam (BBO# 246888)
Gary S. Brackett (BB0#  052940)
BRACKETT & LUCAS
10 Converse Place 2nd Floor
Winchester, MA.  01890
(781) 721-2425


## CERTIFICATE OF SERVICE

I, Joan E. Langsam, hereby certify on the 26th day of March, 2001, that I have

served a true and accurate copy of the within Answer by mail via first class,

postage prepaid, addressed to:

Steven E. Grill, Esquire
Devine, Millimet & Branch, P.A.
111 Amherst Street, P.O. Box 719
Manchester, N.H.  03105-0719


Joan E. Langsam, Esquire

UNITED STATES DISTRICT COUNT
FOR THE DISTRICT OF MASSACHUSETTS

CASE No. <u>00-12492 MLW</u>

|  |  |
|---|---|
| )<br>NEXTEL COMMUNICATIONS OF THE )<br>MID-ATLANTIC, INC. d/b/a/ )<br>NEXTEL COMMUNICATIONS) <br>)<br>Plaintiff, )<br>)<br>THE TOWN OF EASTON, )<br>ZONING BOARD OF APPEALS  and Paul )<br>G. Pino, Chairman, Walter Mirrione, Clerk, )<br>Stephen A. Freitas, Stephen J. McAlarney, )<br>Brian T. O'Neil, Jr. and Stephen Pinzari, )<br>in their capacities as Members of the Zoning )<br>Board of Appeals of the Town of Easton )<br>)<br>Defendants. ) | **ANSWER** |

1.  Defendants admit the allegations contained in sentence 1 of paragraph 1 and deny the allegations contained in sentence 2 of paragraph 1.

2.  Defendants admit the allegations contained in paragraph 2.

3.  Defendants are without sufficient knowledge or knowledge to admit or deny the allegations in paragraph 3 and call upon Plaintiff to prove the same.

4.  Defendants admit the allegations contained in paragraph 4.

5.  Defendants admit the allegations contained in paragraph 5.

6.  Defendants admit the allegations contained in paragraph 6.



7.      Paragraph 7 states a conclusion of law and, therefore, no response is required.

8.      Defendants admit the allegations of paragraph 8.

9.      Defendants admit the allegations of paragraph 9.

10.     Defendants admit the allegations of paragraph 10.

11.     Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 11 and call upon Plaintiff to prove the same.

12.     Defendants admit the allegations in sentence 1 of paragraph 12.  Defendants are without sufficient knowledge to admit or deny the allegations in sentence 2 of paragraph 12.  Defendants admit the allegations in sentence 3 of paragraph 12.

13.     Defendants deny the allegations contained in paragraph 13.

14.     Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 14 and call upon Plaintiff to prove the same.

15.     Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 15 and call upon Plaintiff to prove the same.

16.     Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 16 and call upon Plaintiff to prove the same.

17.     Defendants admit the allegations contained in paragraph 17.

18.     Defendants deny the allegations contained in paragraph 18.

19.     Defendants admit the allegations contained in sentence 1of paragraph 19. Defendants are without sufficient knowledge or information to admit or deny the allegations contained in the last sentence of paragraph 19.

20.     Defendants admit the allegations contained in paragraph 20.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED IN CLERK'S
OFFICE

MAR 26  12 00 PM '01

U.S. DISTRICT COURT
THE DISTRICT OF
MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF ALEX C CORP., AS OWNER OF THE TUG ALEX C, AND BAY STATE TOWING COMPANY, INC., AS OPERATOR OF THE TUG ALEX C, FOR EXONERATION FROM AND LIMITATION OF LIABILITY | ) ) ) ) ) ) ) ) | IN ADMIRALTY CIVIL ACTION NO: 12500-DPW 00— |

ANSWER OF THE PLAINTIFFS ALEX C CORP.
AND BAY STATE TOWING COMPANY, INC.
TO COUNTERCLAIM OF SEABOATS, INC.

**FIRST DEFENSE**

The Counterclaim of the plaintiff-in-counterclaim fails to state claims against the defendants-in-counterclaim upon which relief can be granted.

**SECOND DEFENSE**

The defendants in counterclaim respond to the allegations contained in the plaintiff-in-counterclaim's Counterclaim, paragraph by paragraph, as follows:

1.      The defendants-in-counterclaim neither admit nor deny the allegations contained in paragraph 1 of the plaintiff-in-counterclaim's Counterclaim, because they have no personal knowledge of same, and call upon the plaintiff-in-counterclaim to prove same at trial.

2.      The defendants-in-counterclaim deny that at all times relevant hereto Bay State was in control of the Tug ALEX C, as well as other tugs assisting or intending to assist the M/T POSAVINA, and admit the remaining allegations contained in paragraph 2 of the plaintiff-in-counterclaim's Counterclaim.

**DOCKETED** 20

3.     The defendants-in-counterclaim deny that at all times relevant hereto, Alex C Corp. controlled the Tug ALEX C, and admit the remaining allegations contained in paragraph 3 of the plaintiff-in-counterclaim's Counterclaim.

4.     The defendants-in-counterclaim deny the allegations contained in paragraph 4 of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

5.     The defendants-in-counterclaim neither admit nor deny the allegations contained in paragraph 5 of the plaintiff-in-counterclaim's Counterclaim, as said allegations do not pertain to them.

6.     The defendants-in-counterclaim neither admit nor deny the allegations contained in paragraph 6 of the plaintiff-in-counterclaim's Counterclaim, as said allegations do not pertain to them.

7.     The defendants-in-counterclaim neither admit nor deny that at all times relevant, the M/T POSAVINA was in a defective and unseaworthy condition, because they have no personal knowledge of same, and admit the remaining allegations contained in paragraph 7 of the plaintiff-in-counterclaim's Counterclaim.

8.     The defendants-in-counterclaim admit the allegations contained in paragraph 8 of the plaintiff-in-counterclaim's Counterclaim.

9.     The defendants-in-counterclaim admit that the Tug ALEX C and M/T POSAVINA collided, puncturing the M/T POSAVINA'S hull and resulting in the discharge of fuel oil into the Chelsea Creek, Boston Harbor, and deny the remaining allegations contained in paragraph 9 of the plaintiff-in-counterclaim's Counterclaim.

2

10.     The defendants-in-counterclaim deny the allegations contained in paragraph 10 of the plaintiff-in-counterclaim's Counterclaim to the extent that said allegations pertain to them, and neither admit nor deny the allegations to the extent that said allegations pertain to the M/T POSAVINA, because they have no personal knowledge of same.

11.     The defendants-in-counterclaim deny the allegations contained in paragraph 11 of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

12.     The defendants-in-counterclaim admit that as a result of the aforesaid oil spill, the United States Coast Guard closed the Chelsea Creek, and neither admit nor deny the remaining allegations contained in paragraph 12 of the plaintiff-in-counterclaim's Counterclaim, because they have no personal knowledge of same, and call upon the plaintiff-in-counterclaim to prove same at trial

13.     The defendants-in-counterclaim neither admit nor deny the allegations contained in paragraph 13 of the plaintiff-in-counterclaim's Counterclaim, because they have no personal knowledge of same, and call upon the plaintiff-in-counterclaim to prove same at trial.

14.     The defendants-in-counterclaim deny the allegations contained in paragraph 14 of the plaintiff-in-counterclaim's Counterclaim to the extent that said allegations pertain to them, and neither admit nor deny the allegations to the extent that said allegations pertain to Posavina Shipping Company and Sociedad Naviera Ultragas, Ltd., because they have no personal knowledge of same.

3

## COUNT I

15.     The defendants-in-counterclaim reallege their answers as set forth in paragraphs 1 – 13 of this Answer and incorporate them herein by reference.

16.     The defendants-in-counterclaim deny the allegations contained in paragraph 16 of Count I of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

17.     The defendants-in-counterclaim deny the allegations contained in paragraph 17 of Count I of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The defendants-in-counterclaim deny that the plaintiff-in-counterclaim is entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT II

18.     The defendants-in-counterclaim reallege their answers as set forth in paragraphs 1 – 17 of this Answer and incorporate herein by reference.

19.     The defendants-in-counterclaim deny the allegations contained in paragraph 19 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

20.     The defendants-in-counterclaim deny the allegations contained in paragraph 20 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

21.     The defendants-in-counterclaim deny the allegations contained in paragraph 21 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

22.     The defendants-in-counterclaim deny the allegations contained in paragraph 22 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

23.     The defendants-in-counterclaim deny the allegations contained in paragraph 23 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT III

24.     The defendants-in-counterclaim reallege their answers as set forth in paragraph 1 –23 of this Answer and incorporate them herein by reference.

25.     The defendants-in-counterclaim deny the allegations contained in paragraph 25 of Count III of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

26.     The defendants-in-counterclaim deny the allegations contained in paragraph 26 of Count III of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

27.     The defendants-in-counterclaim deny the allegations contained in paragraph 27 of Count III of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

28.     The defendants-in-counterclaim deny the allegations contained in paragraph 28 of Count III of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT IV

29.    The defendants-in-counterclaim reallege their answers as set forth in Paragraph 1-28 of this Answer and incorporate them herein by reference.

30.    The defendants-in-counterclaim deny the allegations contained in paragraph 30 of Count IV of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

31.    The defendants-in-counterclaim deny the allegations contained in paragraph 31 of Count IV of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

32.    The defendants-in-counterclaim deny the allegations contained in paragraph 32 of Count IV of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

33.    The defendants-in-counterclaim deny the allegations contained in paragraph 33 of Count IV  of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT V

34.    The defendants-in-counterclaim reallege their answers as set forth in paragraphs 1-33 of this Answer and incorporate them herein by reference.

35.     The defendants-in-counterclaim deny the allegations contained in paragraph 35 of Count V of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

36.     The defendants-in-counterclaim deny the allegations contained in paragraph 36 of Count V of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT VI

37.     The defendants-in-counterclaim reallege their answers as set forth in paragraph 1-36 of this Answer and incorporate them herein by reference.

38.     The defendants-in-counterclaim deny the allegations contained in paragraph 38 of Count VI of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

39.     The defendants-in-counterclaim deny the allegations contained in paragraph 39 of Count VI of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

40.     The defendants-in-counterclaim deny the allegations contained in paragraph 40 of Count VI of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT VII

41.     The defendants-in-counterclaim reallege their answers as set forth in paragraph 1-40 of this Answer and incorporate them herein by reference.

42.     The defendants-in-counterclaim deny the allegations contained in paragraph 41 of Count VII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

43.     The defendants-in-counterclaim deny the allegations contained in paragraph 43 of Count VII of the plaintiff-in-counterclaim's Counterclaim, and call upon plaintiff-in-counterclaim to prove same at trial.

44.     The defendants-in-counterclaim deny the allegations contained in paragraph 44 of Count VII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT VIII

45.     The defendants-in-counterclaim reallege their answers as set forth in paragraphs 1-44 of this Answer and incorporate them herein by reference.

46.     The defendants-in-counterclaim deny the allegations contained in paragraph 46 of Count VIII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

47.     The defendants-in-counterclaim deny the allegations contained in paragraph 47 of Count VIII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

48.     The defendants-in-counterclaim deny the allegations contained in paragraph 48 of Count VIII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

### COUNTS IX – XV (CROSS-CLAIM)

The defendants-in-counterclaim neither admit nor deny the allegations contained in Counts IX –XV of the plaintiff-in-counterclaim's Cross–Claim, as said allegations do not pertain to them.

### THIRD DEFENSE

By way of affirmative defense, the defendants-in-counterclaim say that if the plaintiff-in-counterclaim suffered injuries or damage, as alleged, such injuries or damages were caused by someone or something for whose conduct the defendants-in-counterclaim were not and are not legally responsible.

### FOURTH DEFENSE

By way of affirmative defense, the defendants-in-counterclaim say that if the plaintiff-in-counterclaim suffered injuries or damage, as alleged, the damages, if any, recovered by the plaintiff-in-counterclaim from the defendants-in-counterclaim, should be reduced to the extent that any such damages are attributable to the failure of the plaintiff-in-counterclaim, or that of its agents, servant or employees, to mitigate its damages.

## FIFTH DEFENSE

By way of affirmative defense, the defendants-in-counterclaim say that if they are found to be liable to the plaintiff-in-counterclaim for any of its alleged damages, the amount of such liability is limited pursuant to the provisions of the Limitation of Liability Act, 46 USCA, §§181, et seq.

## SIXTH DEFENSE

By way of affirmative defense, the defendants-in-counterclaim say that if they are found to be liable to the plaintiff-in-counterclaim for any of its alleged damages, the amount of such liability is limited pursuant to the provisions of the Federal Water Pollution Control Act, 33 USCA,§§1251, et seq., and the Oil Pollution Act of 1990, 23 USCA, §§2701, et seq.

## SEVENTH DEFENSE

The defendants-in-counterclaim reserve the right to assert additional affirmative defenses should such defenses be warranted based upon facts disclosed through discovery.

By Their Attorneys,

DAVIS, WHITE, PETTINGELL & SULLIVAN, LLC

Richard H. Pettingell -- BBO # 397320
50 Staniford Street
Boston, MA 02114
(617) 720-4060

O'LEARY & SBARRA


*William B. O'Leary /RWP*

William B. O'Leary – BBO # 378575
63 Shore Road, suite 25
Winchester, MA 01890

WELTE & WELTE, P.A.


*William H. Welte /RWP*

William H. Welte – BBO # 522670
13 Wood Street
Camden, ME 04843
(207) 236-7786


Dated: March 23, 2001

35028

11

## CERTIFICATE OF SERVICE

I hereby certify that the attached document has been served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

Richard H. Pettingell, Esquire

FILED IN CLERK'S
OFFICE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MAR 26  12 00 PM '01

U.S. DISTRICT COURT
THE DISTRICT OF
MASSACHUSETTS

```
_____
                                      )
IN THE MATTER OF THE COMPLAINT OF     )
ALEX C CORP., AS OWNER OF THE TUG     )    IN ADMIRALTY
ALEX C, AND BAY STATE TOWING          )    CIVIL ACTION
COMPANY, INC., AS OPERATOR OF THE     )    NO: 12500-DPW
TUG ALEX C, FOR EXONERATION FROM      )    00~
AND LIMITATION OF LIABILITY           )
_____ )
```

## ANSWER OF THE PLAINTIFFS ALEX C CORP.
## AND BAY STATE TOWING COMPANY, INC.
## TO COUNTERCLAIM OF SEABOATS, INC.

### FIRST DEFENSE

The Counterclaim of the plaintiff-in-counterclaim fails to state claims against the defendants-in-counterclaim upon which relief can be granted.

### SECOND DEFENSE

The defendants in counterclaim respond to the allegations contained in the plaintiff-in-counterclaim's Counterclaim, paragraph by paragraph, as follows:

1.     The defendants-in-counterclaim neither admit nor deny the allegations contained in paragraph 1 of the plaintiff-in-counterclaim's Counterclaim, because they have no personal knowledge of same, and call upon the plaintiff-in-counterclaim to prove same at trial.

2.     The defendants-in-counterclaim deny that at all times relevant hereto Bay State was in control of the Tug ALEX C, as well as other tugs assisting or intending to assist the M/T POSAVINA, and admit the remaining allegations contained in paragraph 2 of the plaintiff-in-counterclaim's Counterclaim.

**DOCKETED**  20

3.     The defendants-in-counterclaim deny that at all times relevant hereto, Alex C Corp. controlled the Tug ALEX C, and admit the remaining allegations contained in paragraph 3 of the plaintiff-in-counterclaim's Counterclaim.

4.     The defendants-in-counterclaim deny the allegations contained in paragraph 4 of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

5.     The defendants-in-counterclaim neither admit nor deny the allegations contained in paragraph 5 of the plaintiff-in-counterclaim's Counterclaim, as said allegations do not pertain to them.

6.     The defendants-in-counterclaim neither admit nor deny the allegations contained in paragraph 6 of the plaintiff-in-counterclaim's Counterclaim, as said allegations do not pertain to them.

7.     The defendants-in-counterclaim neither admit nor deny that at all times relevant, the M/T POSAVINA was in a defective and unseaworthy condition, because they have no personal knowledge of same, and admit the remaining allegations contained in paragraph 7 of the plaintiff-in-counterclaim's Counterclaim.

8.     The defendants-in-counterclaim admit the allegations contained in paragraph 8 of the plaintiff-in-counterclaim's Counterclaim.

9.     The defendants-in-counterclaim admit that the Tug ALEX C and M/T POSAVINA collided, puncturing the M/T POSAVINA'S hull and resulting in the discharge of fuel oil into the Chelsea Creek, Boston Harbor, and deny the remaining allegations contained in paragraph 9 of the plaintiff-in-counterclaim's Counterclaim.

2

10.     The defendants-in-counterclaim deny the allegations contained in paragraph 10 of the plaintiff-in-counterclaim's Counterclaim to the extent that said allegations pertain to them, and neither admit nor deny the allegations to the extent that said allegations pertain to the M/T POSAVINA, because they have no personal knowledge of same.

11.     The defendants-in-counterclaim deny the allegations contained in paragraph 11 of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

12.     The defendants-in-counterclaim admit that as a result of the aforesaid oil spill, the United States Coast Guard closed the Chelsea Creek, and neither admit nor deny the remaining allegations contained in paragraph 12 of the plaintiff-in-counterclaim's Counterclaim, because they have no personal knowledge of same, and call upon the plaintiff-in-counterclaim to prove same at trial

13.     The defendants-in-counterclaim neither admit nor deny the allegations contained in paragraph 13 of the plaintiff-in-counterclaim's Counterclaim, because they have no personal knowledge of same, and call upon the plaintiff-in-counterclaim to prove same at trial.

14.     The defendants-in-counterclaim deny the allegations contained in paragraph 14 of the plaintiff-in-counterclaim's Counterclaim to the extent that said allegations pertain to them, and neither admit nor deny the allegations to the extent that said allegations pertain to Posavina Shipping Company and Sociedad Naviera Ultragas, Ltd., because they have no personal knowledge of same.

<div align="center">**COUNT I**</div>

15.    The defendants-in-counterclaim reallege their answers as set forth in paragraphs 1 – 13 of this Answer and incorporate them herein by reference.

16.    The defendants-in-counterclaim deny the allegations contained in paragraph 16 of Count I of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

17.    The defendants-in-counterclaim deny the allegations contained in paragraph 17 of Count I of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The defendants-in-counterclaim deny that the plaintiff-in-counterclaim is entitled to recovery, in any amount, from the defendants-in-counterclaim.

<div align="center">**COUNT II**</div>

18.    The defendants-in-counterclaim reallege their answers as set forth in paragraphs 1 – 17 of this Answer and incorporate herein by reference.

19.    The defendants-in-counterclaim deny the allegations contained in paragraph 19 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

20.    The defendants-in-counterclaim deny the allegations contained in paragraph 20 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

21.    The defendants-in-counterclaim deny the allegations contained in paragraph 21 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

22.     The defendants-in-counterclaim deny the allegations contained in paragraph 22 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

23.     The defendants-in-counterclaim deny the allegations contained in paragraph 23 of Count II of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT III

24.     The defendants-in-counterclaim reallege their answers as set forth in paragraph 1 –23 of this Answer and incorporate them herein by reference.

25.     The defendants-in-counterclaim deny the allegations contained in paragraph 25 of Count III of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

26.     The defendants-in-counterclaim deny the allegations contained in paragraph 26 of Count III of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

27.     The defendants-in-counterclaim deny the allegations contained in paragraph 27 of Count III of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

28.     The defendants-in-counterclaim deny the allegations contained in paragraph 28 of Count III of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT IV

29.　The defendants-in-counterclaim reallege their answers as set forth in Paragraph 1-28 of this Answer and incorporate them herein by reference.

30.　The defendants-in-counterclaim deny the allegations contained in paragraph 30 of Count IV of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

31.　The defendants-in-counterclaim deny the allegations contained in paragraph 31 of Count IV of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

32.　The defendants-in-counterclaim deny the allegations contained in paragraph 32 of Count IV of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

33.　The defendants-in-counterclaim deny the allegations contained in paragraph 33 of Count IV  of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT V

34.　The defendants-in-counterclaim reallege their answers as set forth in paragraphs 1-33 of this Answer and incorporate them herein by reference.

6

35.     The defendants-in-counterclaim deny the allegations contained in paragraph 35 of Count V of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

36.     The defendants-in-counterclaim deny the allegations contained in paragraph 36 of Count V of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT VI

37.     The defendants-in-counterclaim reallege their answers as set forth in paragraph 1-36 of this Answer and incorporate them herein by reference.

38.     The defendants-in-counterclaim deny the allegations contained in paragraph 38 of Count VI of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

39.     The defendants-in-counterclaim deny the allegations contained in paragraph 39 of Count VI of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

40.     The defendants-in-counterclaim deny the allegations contained in paragraph 40 of Count VI of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT VII

41.     The defendants-in-counterclaim reallege their answers as set forth in paragraph 1-40 of this Answer and incorporate them herein by reference.

42.     The defendants-in-counterclaim deny the allegations contained in paragraph 41 of Count VII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

43.     The defendants-in-counterclaim deny the allegations contained in paragraph 43 of Count VII of the plaintiff-in-counterclaim's Counterclaim, and call upon plaintiff-in-counterclaim to prove same at trial.

44.     The defendants-in-counterclaim deny the allegations contained in paragraph 44 of Count VII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNT VIII

45.     The defendants-in-counterclaim reallege their answers as set forth in paragraphs 1-44 of this Answer and incorporate them herein by reference.

46.     The defendants-in-counterclaim deny the allegations contained in paragraph 46 of Count VIII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

47.     The defendants-in-counterclaim deny the allegations contained in paragraph 47 of Count VIII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

48.     The defendants-in-counterclaim deny the allegations contained in paragraph 48 of Count VIII of the plaintiff-in-counterclaim's Counterclaim, and call upon the plaintiff-in-counterclaim to prove same at trial.

The plaintiff-in-counterclaim is not entitled to recovery, in any amount, from the defendants-in-counterclaim.

## COUNTS IX – XV (CROSS-CLAIM)

The defendants-in-counterclaim neither admit nor deny the allegations contained in Counts IX –XV of the plaintiff-in-counterclaim's Cross–Claim, as said allegations do not pertain to them.

## THIRD DEFENSE

By way of affirmative defense, the defendants-in-counterclaim say that if the plaintiff-in-counterclaim suffered injuries or damage, as alleged, such injuries or damages were caused by someone or something for whose conduct the defendants-in-counterclaim were not and are not legally responsible.

## FOURTH DEFENSE

By way of affirmative defense, the defendants-in-counterclaim say that if the plaintiff-in-counterclaim suffered injuries or damage, as alleged, the damages, if any, recovered by the plaintiff-in-counterclaim from the defendants-in-counterclaim, should be reduced to the extent that any such damages are attributable to the failure of the plaintiff-in-counterclaim, or that of its agents, servant or employees, to mitigate its damages.

## FIFTH DEFENSE

By way of affirmative defense, the defendants-in-counterclaim say that if they are found to be liable to the plaintiff-in-counterclaim for any of its alleged damages, the amount of such liability is limited pursuant to the provisions of the Limitation of Liability Act, 46 USCA, §§181, et seq.

## SIXTH DEFENSE

By way of affirmative defense, the defendants-in-counterclaim say that if they are found to be liable to the plaintiff-in-counterclaim for any of its alleged damages, the amount of such liability is limited pursuant to the provisions of the Federal Water Pollution Control Act, 33 USCA,§§1251, et seq., and the Oil Pollution Act of 1990, 23 USCA, §§2701, et seq.

## SEVENTH DEFENSE

The defendants-in-counterclaim reserve the right to assert additional affirmative defenses should such defenses be warranted based upon facts disclosed through discovery.

By Their Attorneys,

DAVIS, WHITE, PETTINGELL & SULLIVAN, LLC

Richard H. Pettingell – BBO # 397320
50 Staniford Street
Boston, MA 02114
(617) 720-4060

10

O'LEARY & SBARRA


*William B. O'Leary* /RWP
William B. O'Leary – BBO # 378575
63 Shore Road, suite 25
Winchester, MA 01890

WELTE & WELTE, P.A.


*William H. Welte* /RWP
William H. Welte – BBO # 522670
13 Wood Street
Camden, ME 04843
(207) 236-7786


Dated: March 23, 2001

35028

## CERTIFICATE OF SERVICE

I hereby certify that the attached document has been served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

_____

Richard H. Pettingell, Esquire

AO 245B (Rev. 8/96) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | (For Offenses Committed On or After November 1, 1987) |
| **VICTOR  SANTANA** | Case Number:  **1:01CR10062-001** |
| | **OWEN S. WALKER, ESQ.** |
| **THE DEFENDANT:** | Defendant's Attorney |

- ☒ pleaded guilty to count(s)  **1 OF AN INFORMATION**
- ☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
- ☐ was found guilty on count(s) _____ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C.  § 1542 | **PASSPORT FRAUD** | 03/01/1999 | 1 |

The defendant is sentenced as provided in pages 2 through __8__ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

- ☐ The defendant has been found not guilty on count(s) _____
- ☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.:  **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** | **03/14/2001** |
| Defendant's Date of Birth:  **01/14/1969** | Date of Imposition of Judgment |
| Defendant's USM No.:  **23521-038** | |
| Defendant's Residence Address: | |
| **44 HILLSIDE RD.** | Signature of Judicial Officer |
| **#2** | |
| **LAWRENCE            MA** | **GEORGE A. O'TOOLE** |
| | **UNITED STATES DISTRICT JUDGE** |
| | Name & Title of Judicial Officer |
| Defendant's Mailing Address: | |
| **44 HILLSIDE RD.** | |
| **#2** | *March 23, 2001* |
| **LAWRENCE            MA** | Date |

DEFENDANT:        **VICTOR SANTANA**

CASE NUMBER:      **1:01CR10062-001**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of         **time served**         .

The court makes the following recommendations to the Bureau of Prisons:

The defendant is remanded to the custody of the United States Marshal.

The defendant shall surrender to the United States Marshal for this district:

at _____ a.m./p.m.  on _____ .

as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

before 2 p.m. on _____ .

as notified by the United States Marshal.

as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ _____ to _____

at _____ , with a certified copy of this judgment.

_____
                                                    UNITED STATES MARSHAL

By _____
                                                    Deputy U.S. Marshal

DEFENDANT:        **VICTOR SANTANA**
CASE NUMBER:    **1:01CR10062-001**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____ **1** **year(s)** .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

**See Special Conditions of Supervision - Page    4**

# STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;
2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)  the defendant shall support his or her dependents and meet other family responsibilities;
5)  the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6)  the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7)  the defendant shall refrain from excessive use of alcohol;
8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)  the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT:        VICTOR  SANTANA

CASE NUMBER:      1:01CR10062-001

## SPECIAL CONDITIONS OF SUPERVISION

1. THE DEFENDANT SHALL NOT POSSESS OR PURCHASE A FIREARM OR OTHER DANGEROUS WEAPON;

2. THE DEFENDANT, IF DEPORTED, SHALL NOT RETURN TO THE UNITED STATES WITHOUT PRIOR PERMISSION OF THE UNITED STATES ATTORNEY GENERAL;

3. THE DEFENDANT SHALL PAY THE $100.00 SPECIAL ASSESSMENT AS AN ADDITIONAL CONDITION OF SUPERVISED RELEASE.

DEFENDANT:     **VICTOR SANTANA**

CASE NUMBER:     **1:01CR10062-001**

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A   ☒  in full immediately; or

B      $            immediately, balance due (in accordance with C, D, or E); or

C      not later than        ; or

D      in installments to commence       day(s) after the date of this judgment.  In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E      in        *(e.g. equal, weekly, monthly, quarterly)* installments of $        over a period of       year(s) to commence      day(s) after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

The defendant shall pay the cost of prosecution.

The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

DEFENDANT: **VICTOR SANTANA**

CASE NUMBER: **1:01CR10062-001**

# STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

## OR

☒ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**See Additional Factual Findings and Guideline Application Exceptions - Page 8**

**Guideline Range Determined by the Court:**

Total Offense Level: **6**

Criminal History Category: **I**

Imprisonment Range: **0 TO 6 MONTHS**

Supervised Release Range: **1 TO 3 YEARS**

Fine Range: $ **500.00** to $ **5,000.00**

 ☐ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

 ☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

 ☐ For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the forseeable future under any reasonable schedule of payments.

 ☐ Partial restitution is ordered for the following reason(s):

☒ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

## OR

☐ The sentence departs from the guideline range:

 ☐ upon motion of the government, as a result of defendant's substantial assistance.

 ☐ for the following specific reason(s):

DEFENDANT:       **VICTOR SANTANA**

CASE NUMBER:     **1:01CR10062-001**

## ADDITIONAL FINDINGS AND GUIDELINE APPLICATIONS EXCEPTIONS

**PURSUANT TO THE COURT'S GRANTING OF DEFENDANT'S UNOPPOSED MOTION FOR SENTENCING AT THE TIME OF PLEA WITHOUT A PRESENTENCE REPORT, THE COURT BASES IT'S SENTENCE ON THE FOLLOWING CALCULATIONS AS MADE APPLICABLE IN U.S.S.G SECTION 2L2.2:**

AO 245B (Rev. 8/96) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>**MARIO  ENCARNATION** | **JUDGMENT IN A CRIMINAL CASE**<br>(For Offenses Committed On or After November 1, 1987)<br>Case Number:  **1:00CR10121-001**<br>**IVAN E. MERCADO, ESQ.**<br>Defendant's Attorney |

### THE DEFENDANT:

☒ pleaded guilty to count(s)   **1 OF A SUPERSEDING INDICTMENT**

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 8 U.S.C.  § 1326 | **UNLAWFUL RE-ENTRY OF A DEPORTED ALIEN** | 03/20/2000 | 1 |

The defendant is sentenced as provided in pages 2 through   7   of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.:  **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** | **02/14/2001** |
| Defendant's Date of Birth:  **05/27/1964** | Date of Imposition of Judgment |
| Defendant's USM No.:  **23050-038** | |
| Defendant's Residence Address: | Signature of Judicial Officer |
| **PLYMOUTH COUNTY CORRECTIONAL FACILITY** | |
| **26 LONG POND ROAD** | **GEORGE A. O'TOOLE** |
| **PLYMOUTH**            **MA**      **02360** | **UNITED STATES DISTRICT JUDGE** |
| | Name & Title of Judicial Officer |
| Defendant's Mailing Address: | |
| **PLYMOUTH COUNTY CORRECTIONAL FACILITY** | March 23, 2001 |
| **26 LONG POND ROAD** | Date |
| **PLYMOUTH**            **MA**      **02360** | |

30

DEFENDANT:        **MARIO ENCARNATION**
CASE NUMBER:      **1:00CR10121-001**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of     **57**     month(s)   .

☒   The court makes the following recommendations to the Bureau of Prisons:

**THE COURT MAKES A JUDICIAL RECOMMENDATION THAT ATTENTION BE PAYED TO THE DEFENDANT'S MEDICAL CONDITION AND THAT THE DEFENDANT BE HOUSED AT A FACILITY LOCATED CLOSE TO HIS FAMILY IN NEW JERSEY.**

☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

☐   at                    a.m./p.m.  on                    .

☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐   before 2 p.m. on                    .

☐   as notified by the United States Marshal.

☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
                    Deputy U.S. Marshal

DEFENDANT:        **MARIO ENCARNATION**
CASE NUMBER:    **1:00CR10121-001**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____**3**_____ **year(s)** .

 

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

**See Special Conditions of Supervision - Page      4**

# STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;
2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)  the defendant shall support his or her dependents and meet other family responsibilities;
5)  the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6)  the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7)  the defendant shall refrain from excessive use of alcohol;
8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)  the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT:        **MARIO ENCARNATION**

CASE NUMBER:    **1:00CR10121-001**

## SPECIAL CONDITIONS OF SUPERVISION

**1. THE DEFENDANT IS NOT TO PURCHASE OR POSSESS A FIREARM OR OTHER DANGEROUS WEAPON;**

**2. THE DEFENDANT, IF DEPORTED, SHALL NOT RETURN TO THE UNITED STATES WITHOUT PRIOR PERMISSION FROM THE UNITED STATES ATTORNEY GENERAL.**

DEFENDANT:      **MARIO ENCARNATION**

CASE NUMBER:    **1:00CR10121-001**

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $         100.00 | $ | $ |

If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .   $

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  The interest requirement is waived.

☐  The interest requirement is modified as follows:

# RESTITUTION

☐  The determination of restitution is deferred until _____ . An Amended Judgment in a Criminal Case will be entered after such a determination.

☐  The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| **Name of Payee** | **\* Total Amount of Loss** | **Amount of Restitution Ordered** | **Priority Order or Percentage of Payment** |
|---|---|---|---|
|  |  |  |  |

| | Totals: | $ _____ | $ _____ |

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

DEFENDANT:      **MARIO ENCARNATION**

CASE NUMBER:    **1:00CR10121-001**

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  ☒  in full immediately; or

B  ☐  $ _____  immediately, balance due (in accordance with C, D, or E); or

C  ☐  not later than _____ ; or

D  ☐  in installments to commence _____ day(s) after the date of this judgment.  In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  ☐  in _____ *(e.g. equal, weekly, monthly, quarterly)* installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

DEFENDANT:      **MARIO ENCARNATION**

CASE NUMBER:    **1:00CR10121-001**

# STATEMENT OF REASONS

☒ The court adopts the factual findings and guideline application in the presentence report.

## OR

☐ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level:      **21**

Criminal History Category:      **IV**

Imprisonment Range:   **57 TO 71 MONTHS**

Supervised Release Range:   **2 TO 3 YEARS**

Fine Range:  $ _____7,500.00_____  to $ _____75,000.00_____

    ☒ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution:  $ _____

    ☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

    ☐ For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the forseeable future under any reasonable schedule of payments.

    ☐ Partial restitution is ordered for the following reason(s):

  ☒ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

## OR

☐ The sentence departs from the guideline range:

    ☐ upon motion of the government, as a result of defendant's substantial assistance.

    ☐ for the following specific reason(s):

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-10677-GAO

CAROLYN E. O'CONNOR
Plaintiff

v.

NORTHSHORE INTERNATIONAL INSURANCE SERVICES, INC.
and JOHN DOES (Numbers One through Ten),
Defendants

ORDER
March 22, 2001

O'TOOLE, D.J.

The defendant, Northshore International Insurance Services, Inc. (Northshore), has moved to dismiss the plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, as well as pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons below, the motion is GRANTED and the plaintiff's case is DISMISSED.

According to the amended complaint, the plaintiff, Carolyn E. O'Connor, accepted employment with Northshore in the Spring of 1998. Approximately one year later, her employment was terminated. O'Connor contends that the termination was the result of unlawful employment discrimination by Northshore.

This is the second time this Court has addressed a motion to dismiss the complaint in this action. On June 22, 2000, the Court granted Northshore's motion to dismiss for want of subject matter jurisdiction, but because O'Connor is proceeding *pro se*, the Court allowed her an opportunity to restate her claims in sufficient detail to demonstrate that they fell within the subject matter



jurisdiction of the federal courts.  Her amended complaint met this burden in part.  By alleging

violations of federal law under 42 U.S.C. § 2000e-2(a)(1) and by pleading adequate compliance with

the administrative procedures proscribed by Title VII of the Civil Rights Act of 1964, she has

sufficiently shown that her claim of religious discrimination is properly before the Court.[1]

However, her claims of age and sex discrimination, appearing for the first time in the amended

complaint, must be dismissed for failure to satisfy the necessary prerequisite of first filing an

administrative charge.  See 29 U.S.C. §§ 623(a)(1), 626(d); 42 U.S.C. § 2000e-5(f)(1); Lattimore

v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).  The bounds of this civil action are set by the

violations alleged in the prior administrative action.  Lattimore, 99 F.3d at 464.  O'Connor failed to

raise her claims of age and sex discrimination in her claim filed with the Equal Employment

Opportunities Commission ("EEOC"), and therefore, these claims cannot be presented for the first

time here.[2]  See id.

To say that the Court has subject matter jurisdiction for O'Connor's claim of employment

discrimination is not to say that the amended complaint adequately states a claim upon which relief

can be granted.  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), a motion to dismiss is properly

granted if "it appears to a certainty that the plaintiff would be unable to recover  under any set of

---

[1] The claims are all presented in terms generally used to plead state law causes of action, i.e., "negligence' (Count I), "slander" (Count IV), etc.  However, the substance of at least part of her claims appears to be employment discrimination on the basis of her religion.  The language is liberally construed in the plaintiff's favor.

[2] The claim of age discrimination falls outside of the scope of Title VII's protection, but the Age Discrimination in Employment Act ("ADEA") similarly requires that certain administrative procedures be timely followed as a condition precedent to the filing of a civil action under the act. The filing of a charge with the EEOC within the statutory period is among the required conditions. See 29 U.S.C. § 626(d).

2

facts." See Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996). The facts alleged in the amended complaint in support of any federal claim are notably few, but the Court considers the well-pleaded facts and "extend[s] plaintiff every reasonable inference." Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993). Even under this standard, O'Connor falls short of stating a claim for religious discrimination under Title VII. A prima facie case of religious discrimination consists of three components: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 30 F. Supp.2d 217, 220-21 (D.P.R. 1998) (quoting Turpen v. Missouri-Kansas-Texas R.R. Co., 736 F.2d 1022, 1026 (5th Cir. 1984)). If shown to be true, the facts alleged in the complaint are nonetheless insufficient to establish the necessary elements of religious discrimination. As a result, the claim of employment discrimination under Title VII is DISMISSED with prejudice. The state law claims are DISMISSED without prejudice.

The parties shall bear their own costs with respect to this action.

It is SO ORDERED.


_____
DATE                March 22, 2001

_____
DISTRICT JUDGE

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DORNELL WIGFALL,
    Plaintiff,

    v.

RONALD DUVAL, ET AL.,
    Defendants.

CIVIL ACTION
NO. 00-12274-DPW

**PROCEDURAL ORDER AND ORDER RE: PENDING MOTIONS**

WOODLOCK, District Judge

    With respect to the pending motions, it is hereby ORDERED:

1)    Motion #25 (By Medic Roy, HSU, et al to waive Local Rule 7.1 (A) (2) is <u>DENIED</u>;

2)    Motion #27 (By plaintiff Wigfall for an Order of the Dept of Corrections to forward all legal documents) is <u>DENIED</u> without prejudice to renew after Defendants have filed an Answer;

3)    Motion #28 (By plaintiff Wigfall to extend time to oppose defendants motion to dismiss for lack of service) is DENIED as moot in view of this Order and the denial of defendants' motion.

4)    Defendants' Motion to Dismiss for Lack of Service is DENIED without prejudice to renew after the filing of a substantive response to the Complaint.

It is further ORDERED:

1)    The Defendants are directed to file a **substantive** response to the allegations contained in Plaintiffs' Complaint, by no later than **APRIL 30, 2001**. The defendants may file an Answer by **APRIL 30, 2001**, however, this is in addition to, and not in lieu of, a motion to dismiss. Any Motions to Dismiss (on substantive grounds) shall be filed and served by no later than **APRIL 30, 2001.** **No extensions of this deadline shall be permitted**.

2)    The Plaintiffs shall file any opposition to the Defendants' Motion to Dismiss by **MAY 30, 2001.**

3)    Any reply by the Defendants shall be filed by **JUNE 10, 2001.**

BY THE COURT,
*Rebecca Greenbey*
Deputy Clerk

DATED: March 20, 2001

31



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

ATLAS TACK CORPORATION,

Plaintiff,

v.

THE TOWN OF FAIRHAVEN, AND THE
HATHAWAY BRALEY WHARF CO.,
INC.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

**COMPLAINT**

## 0 1 - 1 0 5 0 1 WGY

Plaintiff Atlas Tack Corporation ("Atlas Tack" or "Plaintiff"), through its undersigned

counsel, files the following Complaint against Defendants the Town of Fairhaven (the "Town")

and the Hathaway Braley Wharf Co., Inc. ("Hathaway Braley") (collectively, the "Defendants").

### NATURE OF THE ACTION

1.     Plaintiff brings this action pursuant to Section 113(f) of the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C.

§ 9601 et seq. ("CERCLA").

2.     Plaintiff seeks to recover from the Defendants certain necessary costs of response

that Plaintiff has incurred consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part

300, et seq., and response costs for which Plaintiff may be liable to the United States or to the

Commonwealth of Massachusetts under 42 U.S.C. §9607, caused by the release or threatened

release of hazardous substances at portions of the Atlas Tack Superfund Site (the "Site").

# DOCKETED



3.      Plaintiff also seeks declaratory judgment on the liability of the Defendants pursuant to 28 U.S.C. §§ 2201, 2202 and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), declaring the Plaintiff's right to recover past and future response costs relating to the Site.

4.      Plaintiff also seeks a temporary restraining order and an order of preliminary injunction enjoining Hathaway Braley pursuant to Rule 65 of the Federal Rules of Civil Procedure from selling, transferring, encumbering, or otherwise hypothecating ownership of the corporate shares and restraining and enjoining Hathaway Braley from making any distributions to shareholders.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and under 28 U.S.C. § 1331.  In addition, the Declaratory Judgments Act, 28 U.S.C. § 2201, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), authorize this Court to grant Plaintiff declaratory relief.

6.      Venue lies in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the Defendants reside, and because the releases or threatened releases alleged herein occurred, within the Commonwealth of Massachusetts.

## PARTIES

7.      Plaintiff Atlas Tack is a corporation organized and incorporated in 1967 under the laws of the Commonwealth of Massachusetts.  Atlas Tack is a "person" as that term is defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

8.      Defendant the Town of Fairhaven was incorporated as a town in 1812 in the Commonwealth of Massachusetts.  The Town is a "person" as that term is defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

9.     Defendant Hathaway Braley Wharf Co., Inc. is a corporation organized and incorporated on August 2, 1940 in the Commonwealth of Massachusetts.  Hathaway Braley is a "person" as that term is defined under Section 101(21) of CERCLA, 42, U.S.C. § 9601(21). Hathaway Braley is a Reach and Apply Defendant.

## BACKGROUND

### THE SITE

10.     The Site is an approximately 24-acre area of land located on Pleasant Street, Town of Fairhaven, Bristol County, Commonwealth of Massachusetts.

11.     The Site is comprised of the Atlas Tack property (the "Atlas Tack property"), a disposal area at the end of Church Street located on property owned by Hathaway Braley (the "Hathaway Braley property"), a portion of property owned by the Town of Fairhaven (the "Town property"), and a portion of Boys Creek and its tidal marsh (the "Marsh Area").  A hurricane dike runs through a portion of the Marsh Area to the southeast.  Boys Creek serves as a drain for storm water from the Town of Fairhaven.

12.     The Atlas Tack portion of the Site comprises approximately 13.6 acres of upland area historically used for commercial and industrial activities and 7.2 acres of tidal wetlands.

13.     The Hathaway Braley portion of the Site comprises approximately 3.2 acres of upland and tidal wetlands.

14.     In 1987, groundwater monitoring conducted at the Site resulted in the detection of contaminants in the groundwater, including benzene, toluene, chromium, and cyanide.

15.     In January 1987, the Site was added to the Massachusetts Department of Environmental Protection ("MDEP") list of hazardous waste sites.

16.    In June 1988, the Site was proposed for inclusion on the National Priorities List ("NPL"), which was promulgated by the United States Environmental Protection Agency ("EPA") pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and which is codified at 40 C.F.R. Part 300.

17.    In February 1990, the Site was placed on the NPL.

18.    In May of 1991, the EPA, the lead remedial agency at the Site, began the Remedial Investigation/Feasibility Study ("RI/FS") of the Site.

19.    As a result of the RI/FS process, EPA selected a remedy for the Site (the "Selected Remedy"). The Selected Remedy is described in EPA's March 2000 Record of Decision ("ROD").

20.    The Selected Remedy adopted by EPA in its ROD includes the excavation, treatment, and disposal at off-site hazardous waste facilities, as appropriate, of 54,000 cubic yards of contaminated soils and sediments. The Selected Remedy also proposes on-site treatment of certain contaminated materials where practicable. The Selected Remedy proposes to address groundwater contamination by removing the source, through natural attenuation enhanced in certain areas by phytoremediation; by installing a long-term monitoring program ("Long Term Monitoring Program"); and by implementing institutional controls that would limit the types of uses permitted on the Site in the future.

21.    The identified contaminants stated by EPA to be of concern at the Site include the following hazardous substances: polychlorinated biphenyls ("PCBs"), pesticides, polyaromatic hydrocarbons ("PAHs"), metals, cyanide, and volatile organic compounds ("VOCs") (together, the "Contaminants of Concern").

22.     The Selected Remedy proposes that a Long Term Monitoring Program be undertaken for 30 years after the completion of the source control remedy.  The Long Term Monitoring Program includes sampling and analysis of soils, sediments, surface water and vegetation for the Contaminants of Concern.  The trees will be monitored for metals.

23.     EPA estimates the cost of the Proposed Remedy will be $18.6 million.

## ATLAS TACK

24.     Atlas Tack and its predecessors manufactured wire tacks, steel nails, rivets, bolts and similar items on the Atlas Tack portion of the Site from 1901 until it ceased all manufacturing operations on the Site in 1985.

25.     Atlas Tack has been notified by EPA pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, that Atlas Tack is a responsible party under Section 107 of CERCLA, 42 USC § 9607.  EPA has demanded that Atlas Tack undertake the remedial action specified in the ROD.

26.     Atlas Tack has incurred "response costs" as defined in Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), in the amount of more than $3.5 million.

27.     Atlas Tack anticipates it will continue to incur response costs in connection with the Site.

## HATHAWAY BRALEY

28.     Hathaway Braley owns the Hathaway Braley property off Church Street at the Site, located in Fairhaven, Massachusetts.  Hathaway Braley also owns other property located at 12-14 Main Street in Fairhaven, Massachusetts (the "Main Street property").

29.     Upon information and belief, the Main Street property was used for the manufacture of ice sold to members of the fishing industry and for the manufacture of winches for fishing vessels.  The Main Street property is not a part of the Site.

30.     Upon information and belief, the Hathaway Braley property is approximately 3.2 acres and was used for the storage and disposal of wastes containing hazardous substances.  This area is also known as the "Church Street Dump," the "Church Street Disposal Area," the "Commercial-Industrial Debris Area," and/or the "CID Area" (the "Church Street Dump").

31.     The Church Street Dump is located approximately 500 feet southeast of the main Atlas Tack building.

32.     Upon information and belief, the Church Street Dump contains a variety of general industrial waste, debris, sludge, and/or trash, each of which contains hazardous substances.

33.     According to Hathaway Braley's 104(e) Information Request response dated April 15, 1998 (the "Hathaway Braley 104(e) Response"), Hathaway Braley permitted fishing vessel owners to store fishing gear, including dredges, booms and trawl doors, on the Hathaway Braley property.

34.     According to the Hathaway Braley 104(e) Response, during the period in which Hathaway Braley owned and operated the property, members of the public disposed of waste on the Hathaway Braley property.

35.     The Church Street Dump is low in elevation and is frequently inundated with surface water.

36.     The Church Street Dump is contaminated with, among other things, PCBs, PAHs, copper, nickel, and antimony in concentrations significantly above background levels.  PCBs,

PAHs, and metals are all Contaminants of Concern at the Site and are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

37.    The Church Street Dump comprises a portion of the "Solid Waste and Debris Area" (the "SWD Area") described in the EPA ROD. The SWD Area includes all fill and disposal areas on the Site outside of the Commercial Area and the Church Street Dump (called the "CID area," or "Commercial Industrial Debris area" in the ROD). The SWD Area contains some of the highest concentrations of semi-volatile organic compounds, metals and cyanide at the Site.

38.    According to EPA's ROD, contamination in the SWD Area is migrating, via groundwater and surface water runoff to Boys Creak and Marsh Areas, and eventually offsite into Buzzards Bay.

39.    The SWD Area, including the Church Street Dump, is part of the Selected Remedy.

40.    On July 31, 1998, EPA issued a notice of potential responsibility to Hathaway Braley.

41.    Upon information and belief, Hathaway Braley has recently conveyed its most valuable portion of land to the Steamship Authority for over $2.815 million in cash. The parcel of land Hathaway Braley sold constituted its most valuable asset.

## THE TOWN OF FAIRHAVEN

42.    Upon information and belief, the Town owns a portion of the Site consisting of approximately one-half acre in the northeasterly portion between the hurricane dike and the Atlas Tack property.

43.     Upon information and belief, until approximately 1941, the Town owned a portion of the premises that now make up the Atlas Tack property.

44.     Upon information and belief, on or about the 1920s onward, the Town has periodically sprayed, and/or arranged for spraying of, pesticides and other hazardous substances on the Site.

45.     Upon information and belief, the Town formerly operated a dump on the property adjacent to and to the north of the Atlas Tack property.

46.     Upon information and belief, the Town maintained a Department of Public Works facility adjacent to and immediately north of the Atlas Tack property on which vehicles and other materials and equipment were stored, maintained, and/or serviced.

47.     Upon information and belief, the Town has periodically ordered the closing of the sluiceway of the hurricane dike that crosses the Atlas Tack property, causing contaminated waters from, among other things, the Town's streets and disposal sites to divert onto the Atlas Tack property.

48.     Upon information and belief, Boys Creek serves as a storm water drain for the Town.

49.     Upon information and belief, the Town itself disposed, and/or permitted others to dispose, of refuse and/or waste material on the Atlas Tack property.

50.     Upon information and belief, the Town permitted and/or acquiesced in the use of the Church Street Dump by members of the public for the disposal of waste materials.

51.     Upon information and belief, and according to Hathaway Braley's 104(e) Response, the Town dumped a pile of dirt roughly 50 feet long and 5 feet high partially on the Hathaway Braley property.

## FIRST CLAIM FOR RELIEF
## CONTRIBUTION:  CERCLA SECTION 113(f)
## OWNER AND/OR OPERATOR LIABILITY

52.     Plaintiff incorporates by reference paragraphs 1 through 51 as if fully set forth herein.

53.     Pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), any person who falls within one of the four categories of liable parties defined in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), may seek contribution from any other person who falls within one of the four categories of liable parties defined in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

54.     Plaintiff and Defendants are "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

55.     The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

56.     There has been a "release" or threat of a "release" of "hazardous substances" from the Site within the meaning of Sections 101(14) and 101(22), 42 U.S.C. §§ 9601(14) and (22).

57.     Pursuant to Sections 107(a)(1) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9607(a)(1) and (a)(2), any person who currently owns or operates a facility from which there is or has been a release or a threat of a release of a hazardous substance, and any person who formerly owned or operated a facility at the time of disposal of a hazardous substance, is liable for response costs under CERCLA.  In the parlance of CERCLA, those persons are "owners and/or operators."

58.     Upon information and belief, Defendant Hathaway Braley is the current owner of the Hathaway Braley property portion of the Site or owned and/or operated the Hathaway Braley

portion of the Site at the time hazardous substances were disposed thereon, 42 U.S.C. §

9607(a)(1), and such substances are of the type found at the Site.

59.     Hathaway Braley is a "person" within the meaning of Section 101(21) of

CERCLA, 42 U.S.C. § 9601(21).

60.     Upon information and belief, Defendant the Town owned and/or operated a

facility on the Site at the time hazardous substances were disposed thereon, 42 U.S.C. §

9607(a)(1) and (a)(2), and such substances are of the type found at the Site.

61.     The Town is a "person" within the meaning of Section 101(21) of CERCLA, 42

U.S.C. § 9601(21).

62.     Because Defendants are liable for costs incurred at the Site under Section 107(a)

of CERCLA, 42 U.S.C. § 9607(a), Plaintiff has a right of contribution against Defendants

pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

### SECOND CLAIM FOR RELIEF
### CONTRIBUTION:  CERCLA SECTION 113(f)
### GENERATOR AND/OR ARRANGER LIABILITY

63.     Plaintiff incorporates by reference paragraphs 1 through 51 as if fully set forth

herein.

64.     Plaintiff specifically repeats and realleges the allegations contained in paragraphs

53 through 57 above.

65.     Pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), any person

who by contract, agreement or otherwise arranged for disposal or treatment or arranged with a

transporter for transport for disposal or treatment of hazardous substances owned or possessed by

such person, by any other party or entity at any facility owned or operated by another party or

entity containing hazardous substances is liable for response costs under CERCLA.  In the

parlance of CERCLA, those persons whose hazardous substances are disposed of at a facility are known as "generators" and those persons who arrange for the disposal of hazardous substances are known as "arrangers."

66.     Upon information and belief, Defendant the Town generated and/or arranged for the disposal of materials, 42 U.S.C. § 9607(a)(3), containing hazardous substances as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at the Site, and such substances are of the type found at the Site.

67.     The Town is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

68.     Because the Town is liable for costs incurred at the Site under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Plaintiffs have a right of contribution against the Town pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

<div align="center">

**THIRD CLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT UNDER**
**CERCLA § 113(g)(2) and 28 U.S.C. § 2201(a)**

</div>

69.     Plaintiff incorporates by reference paragraphs 1 through 51 as if fully set forth herein.

70.     There is an actual controversy between Plaintiff and Defendants regarding their respective rights and duties concerning the investigation and remediation of hazardous substances at the Site.

71.     Plaintiff seeks a declaratory judgement pursuant to Sections 107(a) and 113(g)(2) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(g)(2), and 28 U.S.C. § 2201(a), as to the rights and duties of the parties declaring that Defendants are liable to Plaintiff for contribution for their share of all past, present, and future costs of response incurred by Plaintiff with respect to the

Site, including, but not limited to, costs of contamination assessment, containment, removal,

remediation, EPA administrative or oversight, attorneys' fees and costs and/or interest.

### FOURTH CLAIM FOR RELIEF:
### TEMPORARY RESTAINING ORDER
### AND PRELIMINARY INJUNCTION UNDER
### RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE

72.     Plaintiff incorporates by reference paragraphs 1 through 51 as if fully set forth

herein.

73.     Plaintiff specifically repeats and realleges that upon information and belief,

Hathaway Braley has recently conveyed its most valuable portion of land to the Steamship

Authority for over $2.815 million in cash.  The parcel of land Hathaway Braley sold constituted

its most valuable asset.

74.     Plaintiff seeks a temporary restraining order and an order of preliminary

injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure to prevent immediate and

irreparable injury, loss or damage from resulting.

### FIFTH CLAIM FOR RELIEF:
### REACH AND APPLY

75.     Plaintiff incorporates by reference paragraphs 1 through 51 as if fully set forth

herein.

76.     Reach and Apply Defendant Hathaway Braley is liable to Atlas Tack for its share

of all past, present, and future response costs incurred by Plaintiff with respect to the Site,

including, but not limited to, costs of contamination assessment, containment, removal,

remediation, EPA administrative or oversight, attorneys' fees and costs and/or interest.

77.     Plaintiff seeks to reach and apply the corporate shares of stock of Hathaway

Braley and to liquidate same in satisfaction of any judgment rendered herein.

WHEREFORE, Plaintiff requests judgment in its favor and against the Defendants as follows:

1)      Ordering the Defendants to pay Plaintiff all necessary costs of response incurred by the Plaintiff for which Defendants are responsible, consistent with the NCP, including, but not limited to, costs of contamination assessment, containment, removal, remediation, EPA administrative or oversight, attorneys' fees and costs and/or interest;

2)      Entering a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against the Defendants and in favor of Plaintiff declaring, adjudging, and decreeing that the Defendants are liable to the Plaintiff for response costs or damages at the Site, including, but not limited to, costs of contamination assessment, containment, removal, remediation, EPA administrative or oversight, attorneys' fees and costs and/or interest, such judgment to be binding on any subsequent action or actions to recover further response costs or damages;

3)      Allocating among the Plaintiff and the Defendants and any other persons found to be liable for all response costs incurred at or with respect to the Site, pursuant to 42 U.S.C. § 113(f)(1);

4)      Awarding Plaintiff interest and costs of suit;

5)      Awarding Plaintiff such other and further relief as the Court may deem just and proper;

6)      Issuing a temporary restraining order and, after notice, a preliminary and permanent injunction, restraining Reach and Apply Defendant Hathaway Braley from selling, transferring, encumbering, or otherwise hypothecating ownership of the corporate shares; and

7)      Issuing a temporary restraining order and, after notice, a preliminary and permanent injunction,  restraining and enjoining Hathaway Braley from making any distributions to shareholders.

8)      Ordering that the corporate shares of stock of Hathaway Braley be reached and

applied and liquidated pursuant to M.G.L. Chapter 214, Section 3 in satisfaction of any judgment

rendered herein.


Respectfully submitted,


Dated: March ___, 2001


*Donald W Stever/DLA*

Donald W. Stever (pro hac vice)
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY 10019-6092
(212) 259-8000


*David Aisenberg*

David C. Aisenberg (BBO # 545895)
Looney, Cohen Reagan & Aisenberg LLP
109 State Street
Boston, MA 02109
(617) 371-1050

ATTORNEYS FOR PLAINTIFF ATLAS TACK
CORPORATION

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 01-10314-GAO

JOANNE GARVEY; DEVORAH BARONOFSKY; and PATRICIA TYRA,
Plaintiffs

vs.

MASSACHUSETTS NURSES ASSOCIATION,
Defendant

<u>MEMORANDUM AND ORDER</u>
March 23, 2001

O'TOOLE, D.J.

The Board of Directors of the defendant Massachusetts Nursing Association ("MNA" or

"Association") has called a special meeting of the membership of the Association for the purpose of

considering a proposed amendment to MNA's By-Laws that would end the organization's formal

affiliation with the American Nurses Association ("ANA"). The MNA's By-Laws currently provide

that the MNA shall be a constituent member of the ANA. The special meeting is to be held at

1:00 p.m. on Saturday, March 24, 2001, at Mechanics' Hall in Worcester.

The plaintiffs complain that, for disparate reasons, they are unable to attend the special

meeting, and as a consequence they are disabled from casting a vote on the proposed By-Law



amendment.[1]  They contend that, by limiting the opportunity to vote on the proposal to those members who personally attend the Worcester meeting and by refusing to permit an alternate or supplemental   method of voting – such as mail ballot – that would enable absent members' participation in the vote, the MNA denies them rights and privileges equal to those extended to other members, in violation of 29 U.S.C. § 411, which provides, in pertinent part:

> (a)(1) Equal rights.
>
> Every member of a labor organization shall have equal rights and privileges within such organization . . . to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
> . . . .
>
> (b) Invalidity of constitution and bylaws.
>
> Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect.[2]

---

[1]   The action was originally brought only by plaintiff Joanne Garvey.  Earlier this week an amended complaint was filed in which the plaintiffs Devorah Baronofsky and Patricia Tyra joined as plaintiffs.  The defendants concede that Garvey had the right to amend without motion under Fed. R. Civ. P. 15(a), no responsive pleading having been filed, but argue that joinder of new plaintiffs requires a motion under Fed. R. Civ. P. 21.  Because the claims of the new plaintiffs are so closely related to the one asserted by Garvey, I think the permission of Rule 15(a) suffices, but if leave is needed, as called for by Rule 21, I grant it.  Even given the short time between the filing of the amended complaint and the hearing on the motions, the claims of the new plaintiffs were so similar to Garvey's that the defendants were not substantially prejudiced by the amendment.  In the circumstances, it was appropriate to consider Baronofsky's and Tyra's claims as well.

[2]   The defendants do not dispute that the MNA is a "labor organization" to which the statute applies.

2

The By-Laws of the MNA contain the following provision regarding amendments:

> These Bylaws may be amended by a two-thirds vote at any regular or special business meeting providing that the proposed amendment has been reviewed by the Board of Directors, that it has either been published in the official bulletin, or has been distributed to the officers and members at least 30 days prior to the business meeting.

MNA By-Laws, Art. XXII, sec. 1 (Pinkham Aff. Ex. A).

The gist of the plaintiffs' argument is that, although the amendment provision of the By-Laws ostensibly permits any member an equal right to participate in a meeting and to vote on a proposed amendment, the scheduling of this particular meeting and vote in actuality discriminates between those members who can freely attend the meeting and those, such as the plaintiffs, who for serious reasons are unable to attend. The plaintiff Garvey asserts that she, like many other nurses throughout Massachusetts, is required to be at work on Saturday, March 24, and cannot attend the meeting. She asserts that scheduling a meeting and vote during a time when an appreciable number of members of the MNA are required to be at work effectively disenfranchises them, in violation of the statute. (Am. Comp. ¶¶ 18, 19.) The plaintiff Baronofsky, a resident of Brookline, says that she is an observant Orthodox Jew who cannot attend the Saturday meeting without violating religious strictures against travel, work or other secular pursuits on the Sabbath. (Id. ¶ 20.) The plaintiff Tyra asserts that she is a resident of Martha's Vineyard, and her attendance at the meeting in Worcester would impose unequal burdens of travel and expense not imposed on other members of the MNA. (Id. ¶ 21.)

The plaintiffs have prayed for a preliminary injunction restraining the MNA from conducting a vote on the proposed By-Law amendment until the merits of their claims can be adjudicated. In addition to opposing the requested injunction, the defendants have moved to dismiss the complaint

3

for failure to state a claim upon which relief can be granted. A hearing was held Thursday, March 22. In light of the need for a prompt resolution of the issues presented, I provide a brief explanation of my orders in this memorandum. If the needs of the case make it appropriate, a more extended supplemental memorandum may follow.

The MNA has approximately 20,000 members, with about 18,000 belonging to its Labor Relations Program, which is concerned with employee collective bargaining issues. Historically, only a relatively small fraction of the membership has attended, or voted at, meetings of the Association. The By-Laws define the MNA's "Voting Body" as "the Board of Directors, members, and a designated representative of the organizational affiliates who have been registered as in attendance at the meeting." (Art. XVI, sec. 4.) "A majority of the Voting Body, including five members of the Board of Directors and the MNA President or a Vice President, shall constitute a quorum." ( Id. sec. 5.) The Voting Body is authorized to "take positions, determine policy, and set direction on substantive issues of a broad nature." (Id. sec. 6.)

There is nothing in these provisions that purports to treat some members unequally. All members have an equal right to attend meetings and vote on the matters presented there. Nonetheless, by-law provisions that do not discriminate between members on their face might be applied to deny some members rights and privileges granted to others. See McCafferty v. Local 254, Serv. Employees Int'l Union, 186 F.3d 52, 59 (1st Cir. 1999) (application of rule may have discriminatory effect); Molina v. Union de Trabajadores de Muelles, 762 F.2d 166, 169 (1st Cir. 1985) (uneven application of neutral rule can give rise to statutory claim).

The question here is whether MNA's requirement that members attend meetings in person in order to be eligible to cast a vote on such matters as may be duly presented to the meeting

4

discriminates against some members in a way forbidden by § 411(a)(1).   In the particular circumstances presented here, I conclude that it does.

Certainly, it is not unusual for organizations to determine fundamental issues of concern at a general membership meeting and to restrict the right to participate and vote to those members who are actually present at the meeting.  There might be a wide variety of reasons why a member would not or could not attend a particular meeting, and in many cases there would be no reason for faulting the organization for any member's nonattendance.

In this particular case, however, given the "24/7" nature of a significant segment of nursing employment, such as employment at hospitals, it is to be expected that a substantial number of members will be unable to attend a general meeting *whenever it is scheduled* because the meeting will occur during normal work hours.  Thus, the MNA must know that some proportion of its membership will be disabled from voting on important questions presented at *any* such meeting.  In such circumstances, the personal attendance requirement inevitably and predictably excludes members whose work schedules conflict with the meeting time.  While some such members may be able to change their work shifts to attend a meeting, their substitutes would themselves be unable to attend. It seems unlikely that substitutes would in all cases be nurses not interested in attending the meeting.

Some cases have concluded that scheduling meetings for times when some otherwise eligible members would be unable to attend because of work commitments does amount to a denial of equal voting rights to those members.  See Wirtz v. National Maritime Union, 284 F. Supp. 47 (S.D.N.Y. 1968); Goldberg v. Marine Cooks and Stewards Union, 204 F. Supp. 844 (N.D.Cal. 1962).  To be sure, the factual circumstances of maritime workers at sea seem rather more dramatic than the case of nurses working a Saturday shift, but the principle still is applicable.  The union is aware when it

5

schedules the meeting and the vote that some members will not be able to participate.  When the scheduled meeting occurs on a day, such as the Sabbath, that presents an additional obstacle to attendance to some members for religious reasons, the scope of exclusion widens.  In both cases, the exclusion is foreseeable, and applying the principle that a party normally intends the reasonably probable and foreseeable consequences of its actions, it may also be held to be intentional.

Although it is true, as the defendants point out,  that the object of the legislation of which § 411 is part was to combat union corruption, allegations of corruption, or allegations that the asserted discrimination was aimed specifically at opponents of those in control of the union, such as the Board of Directors, are not necessary to state a claim under § 411(a)(1).  The fact that such allegations are often present does not make them mandatory.  There is nothing in the statute itself that imposes that requirement, nor has any case specifically done so. The statute speaks simply of "equal rights and privileges."  It provides a guarantee of open democratic processes as much as a guarantee against entrenched union management.

It is also true, as the defendants argue, that there can be sound reasons to favor committing a decision to amend the By-Laws to an assembly where the resolution can be debated and, perhaps, itself amended.  However, those reasons, sound as they may be, would not justify an explicit limitation on which members could attend the meeting at which the debate would take place. Similarly, they cannot justify the functional equivalent of an express limitation, which appears to be the case here.

It also cannot be ignored that the method suggested by the plaintiffs – mail ballot – is not a suspect or inherently unreliable one.  It is one that the MNA uses for other business, including the election of officers.  Though it would permit only an "up or down" vote on the amendment

6

resolution, that does not appear to be a significant drawback in this case. The amendment at issue is pretty much a "yes or no" proposition: should affiliation with the ANA be discontinued?

If there is one thing the cases seem to agree on, it is that the issues presented by a suit under § 411(a)(1) must be resolved on a case-by-case basis, with the peculiar factual circumstances of each case pointing the way to the proper result. Having considered the broad principles of the statute in the factual circumstances of the present controversy, I conclude that the plaintiffs have established a reasonable likelihood of success on the merits of their claim that the MNA By-Law that requires an vote on a proposed amendment to the By-Laws to be taken only by those in personal attendance at a meeting conflicts with the guarantee of equal participation and voting contained in § 411(a)(1) and is therefore invalid under § 411(b).

By showing a reasonable likelihood that their participation and voting rights are infringed, the plaintiffs have also shown the degree of irreparable harm to justify a preliminary injunction. Though there will be some inconvenience and expense incurred by the MNA as a result of the injunction, the balance tips in favor of the plaintiffs. The public interest – the last factor to be evaluated in deciding whether to issue an injunction – is not notably implicated, except to the extent that the statutory policy of equal participation be vindicated.

For these reasons, the plaintiffs' request for a preliminary injunction is GRANTED. The defendant MNA is preliminarily enjoined from conducting a binding vote on the proposed amendment to its By-Laws at the March 24 meeting or any other meeting, without provision for an alternate or supplemental opportunity to vote on the question for members who are disabled by reason of work schedule or religious observance from attending such meeting.

7

In light of the interests to be vindicated by the injunction, no bond shall be required.  <u>See</u>

<u>Crowley v. Local No. 82, Furniture and Piano Moving</u>, 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd*

*on other grounds,* 467 U.S. 526 (1984).

The defendants' motion to dismiss for failure to state a claim is DENIED.

It is SO ORDERED.


_March 23, 2001_
DATE

_____
DISTRICT JUDGE

1   McCUTCHEN, DOYLE, BROWN & ENERSEN, LLP
    CHRISTOPHER B. HOCKETT, SB 121539
2   J. DAVID HADDEN, SB 176148
    3150 Porter Drive
3   Palo Alto, California  94304-1212
    Telephone:  (650) 849-4400
4   Facsimile:  (650) 849-4800

5   Attorneys for Defendant
    CMT PARTNERS, a/k/a and d/b/a CELLULAR ONE
6   OF SAN FRANCISCO

7

8               UNITED STATES DISTRICT COURT

9               DISTRICT OF MASSACHUSETTS

10

11  FREEDOM WIRELESS, INC.,                    No. 00-CV-12234-EFH

12              Plaintiff,

            v.

13                                             **DEFENDANT CMT PARTNERS,**
    BOSTON COMMUNICATIONS GROUP, INC.;         **a/k/a and d/b/a CELLULAR ONE OF**
14  AT&T WIRELESS SERVICES, INC.;              **SAN FRANCISCO'S ANSWER TO**
    AIRTOUCH COMMUNICATIONS, INC., a/k/a       **PLAINTIFF FREEDOM WIRELESS,**
15  AIRTOUCH CELLULAR; ALLTEL                  **INC.'S FIRST AMENDED**
    CORPORATION; BELL ATLANTIC MOBILE,         **COMPLAINT**
16  INC., a/k/a BELL ATLANTIC NYNEX
    MOBILE, a/k/a BANM; BELLSOUTH
17  CELLULAR CORP.; BELLSOUTH MOBILITY,        **[JURY TRIAL DEMANDED]**
    INC.; CMT PARTNERS, a/k/a and d/b/a
18  CELLULAR ONE OF SAN FRANCISCO;
    PRIMECO PERSONAL COMMUNICATIONS;
19  ROGERS WIRELESS, INC., a/k/a ROGERS
    AT&T WIRELESS; SOUTHWESTERN BELL
20  MOBILE SYSTEMS, INC.; WESTERN
    WIRELESS CORPORATION, a/k/a and d/b/a
21  CELLULAR ONE; CELLCO PARTNERSHIP,
    a/k/a and d/b/a VERIZON WIRELESS;
22  CINGULAR WIRELESS; and DOES 1-20,

23              Defendants.

24              Defendant CMT Partners, a/k/a and d/b/a Cellular One of San Francisco

25  ("CMT") submits this Answer in response to the First Amended Complaint for

26

DOCKETED
123

1   Patent Infringement (the "Amended Complaint") of Plaintiff Freedom Wireless, Inc.

2   ("Freedom") as follows:

3

4                                   **ANSWER**

5          1.      CMT admits that the Amended Complaint purports to set forth a claim

6   arising under the patent laws of the United States, and that subject matter jurisdiction is proper

7   for purposes of this action under 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.  Except as expressly

8   admitted, CMT denies each and every allegation contained in paragraph 1 of the Amended

9   Complaint.

10          2.      CMT admits that venue is proper in this judicial district for purposes of

11   this action under 28 U.S.C. §§ 1391 and 1400(b).  Except as expressly admitted, CMT denies

12   each and every allegation contained in paragraph 2 of the Amended Complaint.

13          3.      CMT lacks information sufficient to form a belief as to the truth of the

14   allegations of paragraph 3 of the Amended Complaint, and on that basis denies them.

15          4.      CMT lacks information sufficient to form a belief as to the truth of the

16   allegations of paragraph 4 of the Amended Complaint, and on that basis denies them.

17          5.      CMT lacks information sufficient to form a belief as to the truth of the

18   allegations of paragraph 4 of the Amended Complaint, and on that basis denies them.

19          6.      CMT lacks information sufficient to form a belief as to the truth of the

20   allegations of paragraph 6 of the Amended Complaint, and on that basis denies them.

21          7.      CMT lacks information sufficient to form a belief as to the truth of the

22   allegations of paragraph 7 of the Amended Complaint, and on that basis denies them.

23          8.      CMT lacks information sufficient to form a belief as to the truth of the

24   allegations of paragraph 8 of the Amended Complaint, and on that basis denies them.

25          9.      CMT lacks information sufficient to form a belief as to the truth of the

26   allegations of paragraph 9 of the Amended Complaint, and on that basis denies them.

ANSWER AND COUNTERCLAIM OF CMT PARTNERS, A/K/A AND D/B/A CELLULAR ONE OF SAN FRANCISCO.

2

1          10.    CMT lacks information sufficient to form a belief as to the truth of the

2  allegations of paragraph 10 of the Amended Complaint, and on that basis denies them.

3          11.    CMT denies the allegations of paragraph 11 of the Amended Complaint.

4          12.    CMT lacks information sufficient to form a belief as to the truth of the

5  allegations of paragraph 12 of the Amended Complaint, and on that basis denies them.

6          13.    CMT lacks information sufficient to form a belief as to the truth of the

7  allegations of paragraph 13 of the Amended Complaint, and on that basis denies them.

8          14.    CMT lacks information sufficient to form a belief as to the truth of the

9  allegations of paragraph 14 of the Amended Complaint, and on that basis denies them.

10          15.    CMT lacks information sufficient to form a belief as to the truth of the

11  allegations of paragraph 15 of the Amended Complaint, and on that basis denies them.

12          16.    CMT lacks information sufficient to form a belief as to the truth of the

13  allegations of paragraph 16 of the Amended Complaint, and on that basis denies them.

14          17.    CMT lacks information sufficient to form a belief as to the truth of the

15  allegations of paragraph 17 of the Amended Complaint, and on that basis denies them.

16          18.    CMT lacks information sufficient to form a belief as to the truth of the

17  allegations of paragraph 18 of the Amended Complaint, and on that basis denies them.

18

19                      **FIRST CLAIM FOR RELIEF**

20            **(Patent Infringement – 35 U.S.C. § 271(a)-(c))**

21     **(Against Boston Communications, AT&T Wireless, AirTouch, Alltel, Bell Atlantic,**

22  **BellSouth Cellular, BellSouth Mobility, CMT Partners, Cellco, Cingular, PrimeCo, Rogers,**

23              **Southwestern Bell and Western Wireless)**

24          19.    CMT incorporates by reference its responses to paragraphs 1-18 of the

25  Amended Complaint.

26          20.    CMT admits that on February 24, 1998, the United States Patent and

ANSWER AND COUNTERCLAIM OF CMT PARTNERS, A/K/A AND D/B/A CELLULAR ONE OF SAN FRANCISCO.

3

1    Trademark Office issued United States Patent No. 5,722,067 ("the '067 patent"), that the '067

2    patent is entitled "Security Cellular Telecommunications System," that the '067 patent states that

3    it was assigned to Freedom, that Freedom purports to be the owner of the '067 patent, and that

4    Freedom purports to have attached a copy of the '067 patent to the Amended Complaint.  CMT

5    denies the remaining allegations of the paragraph 20 of the Amended Complaint.

6              21.    CMT denies the allegations of paragraph 21 of the Amended Complaint.

7              22.    CMT lacks information sufficient to form a belief as to the truth of the

8    allegations of paragraph 22 of the Amended Complaint, and on that basis denies them.

9              23.    To the extent that the allegations in paragraph 23 are against CMT, CMT

10   admits that it has not taken a license from Freedom.  CMT denies each and every other allegation

11   contained in paragraph 23 of the Amended Complaint.

12             24.    CMT denies the allegations of paragraph 24 of the Amended Complaint

13   insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 24 concern

14   other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

15   basis denies them.

16             25.    CMT denies the allegations of paragraph 25 of the Amended Complaint

17   insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 25 concern

18   other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

19   basis denies them.

20             26.    CMT denies the allegations of paragraph 26 of the Amended Complaint

21   insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 26 concern

22   other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

23   basis denies them.

24             27.    CMT denies the allegations of paragraph 27 of the Amended Complaint

25   insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 27 concern

26   other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

ANSWER AND COUNTERCLAIM OF CMT PARTNERS, A/K/A AND D/B/A CELLULAR ONE OF SAN FRANCISCO.

4

1    basis denies them.

2              28.     CMT denies the allegations of paragraph 28 of the Amended Complaint

3    insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 28 concern

4    other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

5    basis denies them.

6

7                           <u>SECOND CLAIM FOR RELIEF</u>

8                    **(Patent Infringement – 35 U.S.C. § 271(a)-(c))**

9      **(Against Boston Communications, AT&T Wireless, AirTouch, Alltel, BellSouth Cellular,**

10         **BellSouth Mobility, CMT Partners, Cellco, Cingular, Rogers, Southwestern Bell and**

11                                    **Western Wireless)**

12             29.     CMT incorporates by reference its responses to paragraphs 1-28 of the

13   Amended Complaint.

14             30.     CMT admits that on December 5, 2000, the United States Patent and

15   Trademark Office issued United States Patent No. 6,157,823 ("the '832 patent"), that the '823

16   patent is entitled "Security Cellular Telecommunications System," that the '823 patent states that

17   it was assigned to Freedom, that Freedom purports to be the owner of the '823 patent, and that

18   Freedom purports to have attached a copy of the '823 patent to the Amended Complaint.  CMT

19   denies the remaining allegations of the paragraph 30 of the Amended Complaint.

20             31.     CMT denies the allegations of paragraph 31 of the Amended Complaint.

21             32.     CMT lacks information sufficient to form a belief as to the truth of the

22   allegations of paragraph 32 of the Amended Complaint, and on that basis denies them.

23             33.     To the extent that the allegations in paragraph 33 are against CMT, CMT

24   admits that it has not taken a license from Freedom.  CMT denies each and every other allegation

25   contained in paragraph 23 of the Amended Complaint.

26             34.     CMT denies the allegations of paragraph 34 of the Amended Complaint

1    insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 34 concern

2    other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

3    basis denies them.

4              35.      CMT denies the allegations of paragraph 35 of the Amended Complaint

5    insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 35 concern

6    other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

7    basis denies them.

8              36.      CMT denies the allegations of paragraph 36 of the Amended Complaint

9    insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 36 concern

10   other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

11   basis denies them.

12             37.      CMT denies the allegations of paragraph 37 of the Amended Complaint

13   insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 37 concern

14   other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

15   basis denies them.

16             38.      CMT denies the allegations of paragraph 38 of the Amended Complaint

17   insofar as such allegations concern CMT.  Insofar as the allegations of paragraph 38 concern

18   other defendants, CMT lacks information sufficient to form a belief as to their truth and on that

19   basis denies them.

20

21                                **AFFIRMATIVE DEFENSES**

22              **FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM**

23             39.      The Amended Complaint, and each cause of action contained therein, fails

24   to state any claim upon which relief can be granted.

25          **SECOND AFFIRMATIVE DEFENSE: NO WILLFUL INFRINGEMENT**

26             40.      CMT has not and does not willfully or otherwise infringe, contribute to the

ANSWER AND COUNTERCLAIM OF CMT PARTNERS, A/K/A AND D/B/A CELLULAR ONE OF SAN FRANCISCO.

6

1  infringement of, or actively induce others to infringe any claim of the '067 patent or the '823

2  patent.

### THIRD AFFIRMATIVE DEFENSE: PATENT INVALIDITY

4      41.    The claims of the '067 patent and the '823 patent are invalid for failure to

5  meet one or more of the requirements for patentability, including without limitation those

6  requirements set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

### FOURTH AFFIRMATIVE DEFENSE: PROSECUTION HISTORY ESTOPPEL ('067 PATENT)

8      42.    Freedom is estopped from asserting that any accused CMT product or

9  service infringes the '067 patent by reason of actions taken and statements made by the

10  applicants to the Patent and Trademark Office during the prosecution of the application which

11  led to the '067 patent.

### FIFTH AFFIRMATIVE DEFENSE: PROSECUTION HISTORY ESTOPPEL ('823 PATENT)

13      43.    Freedom is estopped from asserting that any accused CMT product or

14  service infringes the '823 patent by reason of actions taken and statements made by the

15  applicants to the Patent and Trademark Office during the prosecution of the application which

16  led to the '823 patent.

### SIXTH AFFIRMATIVE DEFENSE: INEQUITABLE CONDUCT

18      44.    The '067 patent and the '823 patent are unenforceable because Freedom

19  engaged in inequitable conduct in connection with the prosecution of the application that led to

20  the '067 patent, of which the '823 patent is a continuation, and in connection with the application

21  that led to the '823 patent.

### SEVENTH AFFIRMATIVE DEFENSE: LACHES

23      45.    Freedom is barred from obtaining the relief sought in the Amended

24  Complaint by the doctrine of laches.

### EIGHTH AFFIRMATIVE DEFENSE: EQUITABLE ESTOPPEL

26      46.    Freedom is barred from obtaining the relief sought in the Amended

ANSWER AND COUNTERCLAIM OF CMT PARTNERS, A/K/A AND D/B/A CELLULAR ONE OF SAN FRANCISCO.

7

1   Complaint by the doctrine of equitable estoppel.

2   **NINTH AFFIRMATIVE DEFENSE: UNCLEAN HANDS**

3         47.    Freedom is barred in whole or in part from obtaining the relief sought in

4   the Amended Complaint by the doctrine of unclean hands.

5

6   **PRAYER FOR RELIEF**

7       WHEREFORE, CMT prays for relief as follows:

8         A.    That the plaintiff take nothing by its action, and that the Amended

9   Complaint be dismissed with prejudice;

10        B.    That the Court find that this is an exceptional case and award to CMT its

11   attorneys' fees, costs, and expenses in this action; and

12        C.    That this Court grant to CMT such other relief as this Court may deem just

13   and equitable.

14

15   **JURY DEMAND**

16       CMT hereby demands a trial by jury on all issues so triable.

17

18   CMT PARTNERS, a/k/a and d/b/a CELLULAR ONE OF SAN FRANCISCO

19   By Its Attorneys,

20

21   J. David Hadden, Esq. CSB 176148     Lawrence G. Green, Esq., BBO #209060

22   McCUTCHEN, DOYLE, BROWN      PERKINS, SMITH & COHEN, LLP

23   & ENERSEN, LLP            One Beacon Street, 30th Floor
     3150 Porter Drive             Boston, MA  02108

24   Palo Alto, CA  94304          (617) 854-4000
     (650) 849-4400

25

26

ANSWER AND COUNTERCLAIM OF CMT PARTNERS, A/K/A AND D/B/A CELLULAR ONE OF SAN FRANCISCO.

8

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify that a true copy of the above document was served upon the attorney of

3

record for each other party by hand on plaintiff's counsel and by fax on defendants' counsel.

4

5

6

Date:  March 2‍0 , 2001

———————————————————

Lawrence G. Green

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ANSWER AND COUNTERCLAIM OF CMT PARTNERS, A/K/A AND D/B/A CELLULAR ONE OF SAN FRANCISCO.

9

## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS CARPENTERS<br>CENTRAL COLLECTION AGENCY,<br>Plaintiff<br><br>v.<br><br>E. B. WARE DRYWALL CO.,<br>Defendant. | CIVIL ACTION NO.:<br>00-10983-EFH |

## J U D G M E N T

March 22, 2001

HARRINGTON, S.D.J.

Upon plaintiff's motion for summary judgment, which this Court granted as unopposed and which demonstrated that defendant owes plaintiff the principal amount of $27,027.30, liquidated damages in the amount of $5,405.46, prejudgment interest in the amount of $4,198.13, and costs in the amount of $183.40, it is hereby

ORDERED, ADJUDGED AND DECREED that plaintiff recover from Defendant E. B. Ware Drywall Co. the sum of $36,841.29 with interest.

EDWARD F. HARRINGTON
United States Senior District Judge

DOCKETED

(18)

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS
### NO. 00-10593 EFH

**JAMES BUIEL**
**Plaintiff**

v.

**PLAINTIFF'S AMENDED**
**COMPLAINT**

**CITY OF BOSTON,**
**WARREN HOPPIE, AND**
**WALGREEN EASTERN CO.,**
**INC.**
        **Defendants**

## GENERAL ALLEGATIONS

A.    The plaintiff, James Buiel, is a resident of the Commonwealth and at all relevant times resided in Dorchester, Suffolk County.

B.    The defendant, Walgreen Eastern Co. Inc. is a duly organized business entity with a principal place of business in Illinois.

C.    The defendant, Walgreen Eastern Co. Inc. owns and operates a pharmacy and retail store at 825 Morton Street in Boston, Massachusetts, Suffolk County.

D.    The Defendant Warren Hoppie is a resident of the City of Boston, Suffolk County.

E.    Jurisdiction in this matter is premised upon 28 U.S.C. §§ 1331 and 1367.

F.    The Plaintiff has complied with all conditions precedent prior to filing this claim including the presentment requirement of Massachusetts G.L. c. 258.

## COUNT I
### Claim of the plaintiff against the defendant Walgreen Eastern Co. Inc. for False Imprisonment

1.    Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977), the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F from the General Allegations section of this Complaint.

2.    On December 30, 1996, the plaintiff was a customer in the defendant's store and had made various purchases therein.

3.    Plaintiff exited the store and he walked to his motor vehicle and attempted to leave but he was detained by Defendant Hoppie, an off-duty Boston Police officer acting as agent of the Defendant Walgreen Eastern Co. Inc. upon the false charge made by the Defendant Walgreen Eastern, Co., Inc., that the plaintiff had stolen property belonging to the defendant, Walgreen Eastern Co., Inc.

4.    Although it was ascertained that the plaintiff had not stolen any goods and had, in fact, paid for all the goods on his person, the defendant Walgreen Eastern Co. Inc. acting by and through its agents, including Defendant Hoppie caused the plaintiff to be detained and eventually caused him to be arrested by the Boston Police and charged with disorderly conduct, assault and battery on a police officer and resisting arrest.

5.    As a result of and during the course of the unlawful imprisonment of the plaintiff, the plaintiff suffered injuries by reason of the aforesaid unlawful acts of the defendant Walgreen Eastern Co. Inc. and its agents.

6.    By reason of the aforesaid injuries, the plaintiff was put to great emotional distress, was unable to perform his usual duties, and was otherwise damaged.

Wherefore the plaintiff demands judgment against the defendant Walgreen Eastern Co. Inc. on Count I of the complaint for all elements of damages and costs compensable under Massachusetts law.

## COUNT II
### Claim of the plaintiff against the defendant Warren Hoppie for False Imprisonment.

7.    Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977), the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-6 from the General Allegations section of this Complaint.

8.    The individual defendant, Warren Hoppie, falsely imprisoned the plaintiff for a long period of time, upon the charge that the plaintiff had stolen property belonging to the defendant Walgreen Eastern Co. Inc.

Wherefore the plaintiff demands judgment against the defendant Warren Hoppie for all elements of damages and costs compensable under Massachusetts law.

## COUNT III
### Claim of the plaintiff against the defendant Warren Hoppie

**for Malicious Prosecution**

9. Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977), the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-8 of this Complaint.

10. On or about December 30, 1996, the defendant Warren Hoppie made a complaint to the Police Department of the City of Boston accusing the plaintiff of having committed (1) disorderly conduct, (2) resisting arrest and (3) assault and battery on a police officer.

11. Thereafter, the defendant Hoppie filed a criminal complaint against the plaintiff in the Dorchester District Court.

12. At the trial held in that court, the plaintiff was found to be not guilty of all charges, and the case was therefore determined finally in the plaintiff's favor.

13. The prosecution was commenced and instituted by the defendant Warren Hoppie without basis, and was done maliciously and with intent to harm the plaintiff.

14. As a result of the malicious prosecution by the defendant Warren Hoppie, the plaintiff was injured, suffered in his business and reputation, and was otherwise damaged.

Wherefore the plaintiff demands judgment against the defendant Warren Hoppie, on Count III for all elements of damages and costs compensable under Massachusetts law.

## COUNT IV
### Claim of the plaintiff against the defendant, Walgreen Eastern Co. Inc. for Malicious Prosecution

15. Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977), the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-14 of this Complaint.

16. At all times relevant to the events alleged in this Complaint the Defendant Hoppie was employed by the Defendant Walgreen Eastern Co. Inc. and was acting withing the scope of that employment and was acting in furtherance of the goals and objectives of that defendant and/or upon

information supplied by Defendant Walgreen Eastern Co., Inc.

Wherefore the plaintiff demands judgment against the defendant Walgreen Eastern Co. Inc., on Count IV for all elements of damages and costs compensable under Massachusetts law.

## COUNT V
### Claim of the plaintiff against the defendant Warren Hoppie for Assault and Battery

17.    Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977),  the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-16 of this Complaint.

18.    On December 30, 1996, the defendant Warren Hoppie assaulted the plaintiff and struck him in the head and other parts of his body.

19.     As a result thereof, the plaintiff was injured, suffered great pain and anguish of body and mind, and was put to expense.

Wherefore the plaintiff demands judgment against the defendant Warren Hoppie on Count V for all elements of damages and costs compensable under Massachusetts law.

## COUNT VI
### Claim of the plaintiff against the defendant Walgreen Eastern Co. Inc. for Assault and Battery premised upon on Respondeat Superior

20.    Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977),  the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-19 of this Complaint.

21.    At all times relevant to the events alleged in this Complaint the Defendant Hoppie was employed by the defendant Walgreen Eastern Co. Inc. and was acting withing the scope of that employment and was acting in furtherance of the goals and objectives of that defendant.

Wherefore the plaintiff demands judgment against the defendant Walgreen Eastern Co. Inc. on Count VI for all elements of damages and costs compensable under Massachusetts law.

## COUNT VII

-4-

**Claim of the plaintiff against the defendant Walgreen Eastern Co. Inc.
predicated upon negligence.**

22.   Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977),  the plaintiff
repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-21 of this
Complaint.

23.   Upon information and belief, on the above referenced date, after the Plaintiff
had originally left the premises of defendant Walgreen Eastern Co. Inc., a
theft prevention device was caused to sound.

24.   Upon information and belief, the intended purpose of the theft prevention
device is to cause an alarm to sound when a customer alights from the
premises without first paying for merchandise.

25.   At the time the plaintiff had alighted from the store, the plaintiff had paid for
and properly purchased all merchandise of the defendant in his possession.

26.   On or about the above referenced date, the defendant owed the plaintiff and
all others lawfully on the premises a duty to use reasonable care and diligence
to maintain its premises in a condition reasonably safe for its intended uses
and free from all defects and conditions which would render it dangerous and
unsafe, or present an unreasonable risk of harm to persons lawfully on the
premises.

27.   On or about the above-referenced date the defendant breached its duty to the
Plaintiff by , inter alia, failing to operate, monitor, supervise and/or maintain
its theft prevention device(s) and/or train, supervise, monitor or select
personnel in a reasonably prudent manner.

28.   As a direct and proximate result thereof, the plaintiff was physically detained
and assaulted, arrested and charged with criminal violations and suffered great
pain and anguish of body and mind, and was put to expense.

Wherefore the plaintiff demands judgment against the defendant Walgreen Eastern
Co. Inc. on Count VII for all elements of damages and costs compensable under
Massachusetts law.

## COUNT VIII
**Claim of the plaintiff against the defendant Warren Hoppie predicated upon
negligence.**

29.   Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977),  the plaintiff

repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-28 of this Complaint.

30.     On or about the above referenced date, defendant Hoppie, owed the plaintiff and all others lawfully on the premises a duty to use reasonable care and diligence to perform his duties in a reasonably safe manner in order to avoid an unreasonable risk of harm to persons lawfully on the premises.

31.     On or about the above-referenced date the defendant breached his duty to the Plaintiff by, inter alia, failing to operate, monitor and/or use the theft prevention device and/or keep alert in a reasonably prudent manner.

32.     As a direct and proximate result thereof, the plaintiff was physically detained and assaulted, arrested and charged with criminal violations and suffered great pain and anguish of body and mind, and was put to expense.

Wherefore the plaintiff demands judgment against the defendant Warren Hoppie on Count VIII for all elements of damages and costs compensable under Massachusetts law.

## COUNT IX
### Claim of the plaintiff against the defendant Walgreen Eastern Co. Inc. for Negligence premised upon on Respondeat Superior

33.     Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977),  the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-32 of this Complaint.

34.     At all times relevant to the events alleged in this Complaint the Defendant Hoppie was employed by the defendant Walgreen Eastern Co. Inc. and was acting withing the scope of that employment and was acting in furtherance of the goals and objectives of that defendant.

Wherefore the plaintiff demands judgment against the defendant Walgreen Eastern Co. Inc. on Count IX for all elements of damages and costs compensable under Massachusetts law.

## COUNT X
### Claim of the plaintiff against the defendant Warren Hoppie premised upon violation of G.L. c. 12 §11I

35.     Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977),  the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-34 of this

Complaint.

36.     Defendant Hoppie interfered with plaintiff's exercise and enjoyment of rights
        secured by the Constitution and laws of the United States and the Constitution
        and laws of the Commonwealth including, but not limited to, the right to be
        free from unreasonable search and seizure, the right to be free from
        intimidation, humiliation and damage to reputation, the right to be free from
        the use of excessive, unreasonable force and the right to be free from
        malicious prosecution.

Wherefore the Plaintiff demands judgment against the Defendant Warren Hoppie on
Count X for all elements of damages and costs compensable under Massachusetts law
including attorney's fees and costs.

## COUNT XI

**Claim of the plaintiff against the defendant Hoppie premised upon violation
of 42 U.S.C. § 1983.**

37.     Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977),  the plaintiff
        repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-36 of this
        Complaint.

38.     At all times relevant hereto the defendant Hoppie acted under color of state
        law.

39.     Defendant Hoppie deprived plaintiff of rights, privileges and immunities
        secured by the Constitution and laws of the United States including, but not
        limited to, the right to be free from unreasonable search and seizure, the right
        to be free from intimidation, humiliation and damage to reputation, the right
        to be free from the use of excessive, unreasonable force and the right to be
        free from malicious prosecution.

Wherefore the Plaintiff demands judgment against the Defendant Warren Hoppie on
Count XI for all elements of damages and costs compensable under Massachusetts
law including attorney's fees and costs.

## COUNT XII

**Claim of the plaintiff against the defendant Walgreen Eastern Co. Inc. for
violation of G.L. c. 12 §11I**

40.     Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977),  the plaintiff
        repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-39 of this
        Complaint.

41.   Defendant Walgreen Eastern Co. Inc., by and through the actions of its agents, interfered with plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States and the Constitution and laws of the Commonwealth including, but not limited to, the right to be free from unreasonable search and seizure, the right to be free from intimidation, humiliation and damage to reputation, the right to be free from the use of excessive, unreasonable force and the right to be free from malicious prosecution.

Wherefore the Plaintiff demands judgment against the Defendant Walgreen Eastern Co. Inc. on Count XII for all elements of damages and costs compensable under the law including attorney's fees and costs.

### COUNT XIII
### Claim of the Plaintiff Against the Defendant
### City of Boston Premised Upon Negligence.

42.   Pursuant to Mass. R. Civ. P. 10(c), 371 Mass. 909 (1977), the plaintiff repeats, realleges and incorporates fully herein ¶¶ A-F and ¶¶ 1-41 of this Complaint.

43.   On or about the above referenced date, the City of Boston, acting through its agent, Officer Hoppie, owed the plaintiff and all others lawfully on the premises a duty to use reasonable care and diligence to perform his duties in a reasonably safe manner in order to avoid an unreasonable risk of harm to persons lawfully on the premises.

44.   On or about the above-referenced date the defendant breached its duty to the Plaintiff by failing to operate, monitor or use, inter alia, the theft prevention device in a reasonably prudent manner for its intended use.

45.   As a direct and proximate result thereof, the plaintiff was arrested and charged with criminal violations and suffered great pain and anguish of body and mind, and was put to expense.

Wherefore the plaintiff demands judgment against the defendant on Count XIII for all elements of damages and costs compensable under Massachusetts law.

-8-

The Plaintiff,
By his Lawyers,

Frank C. Corso, Esq.
BBO No. 545552
Peter J. Perroni, Esq.
BBO No. 634716
Law Office of Frank C. Corso
15 Court Square, Suite 240
Boston, MA 02108
(617) 227-0011

Dated 3/16/01

I, Peter J. Perroni, hereby certify that I served a copy of the within document(s) on all counsel of record by first class mail, postage prepaid, this _16_, day of _March_, 2001.

-9-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELENOR NANIA,                          )
          Plaintiff                    )
                                       )
v.                                     )    Civil Action No. 00 CV 12298-RGS
                                       )
ARTERY CLEANERS CORP.,                 )
          Defendant                    )

## ANSWER AND DEMAND FOR TRIAL BY JURY

### Jurisdiction

1.      Defendant admits the allegations contained in Paragraph 1 of the Complaint.

2.      Defendant admits the allegations contained in Paragraph 2 of the Complaint as it relates to Count II only. Defendant denies the allegations contained in Paragraph 2 of the Complaint as it relates to Count III.

### Parties

3.      Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4.      Defendant admits the allegations contained in Paragraph 4 of the complaint, except to deny the allegation that the name of the Defendant is Artery Cleaners Corp.. Defendant's name is Artery Cleaners and Launderers Corp..

### Facts

5.      Defendant admits the allegations contained in Paragraph 5 of the Complaint as it relates to the Plaintiff's period of employment. Defendant denies so much of Paragraph 5 as it relates to the Plaintiff's alleged position with the company.

6.      Defendant denies the allegations contained in Paragraph 6 of the Complaint.

1

7.    Defendant denies the allegations contained in Paragraph 7 of the Complaint.

8.    Defendant denies the allegations contained in Paragraph 8 of the Complaint.

9.    Defendant denies the allegations contained in Paragraph 9 of the Complaint.

10.    Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.    Defendant denies the allegations contained in Paragraph 11 of the Complaint.

12.    Defendant denies the allegations contained in Paragraph 12 of the Complaint.

13.    Defendant denies the allegations contained in Paragraph 13 of the Complaint.

14.    Defendant denies the allegations contained in Paragraph 14 of the Complaint.

## Count I

15.    Defendant restates and realleges Paragraphs 1 through 14 and incorporates them herein by reference.

16.    The Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and calls on Plaintiff to prove same.

17.    Defendant denies the allegations contained in Paragraph 17 of the Complaint.

18.    Defendant denies the allegations contained in Paragraph 18 of the Complaint.

19.    Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20.    Defendant denies the allegations contained in Paragraph 20 of the Complaint.

21.    Defendant denies the allegations contained in Paragraph 21 of the Complaint.

## Count II

22.    Defendant restates and realleges Paragraphs 1 through 21 and incorporates them herein by reference.

23.    The Defendant is without sufficient information or knowledge to form a belief as

to the truth of the allegations contained in Paragraph 23 of Plaintiff's complaint and calls

on Plaintiff to prove same.

## Count III

24.     Defendant restates and realleges Paragraphs 1 through 23 and incorporates them

herein by reference.

25.     Defendant denies the allegations contained in Paragraph 25 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Defendant states that the Plaintiff has failed to state a claim upon which relief can

be granted.

### SECOND DEFENSE

Defendant states that the action is barred by the applicable statutes of limitations.

### THIRD DEFENSE

Service of process is insufficient.

### FOURTH DEFENSE

Venue is improper.

### FIFTH DEFENSE

To the extent that discovery may so show, plaintiff's claims are barred by

estoppel, waiver and/or laches.

### SIXTH DEFENSE

Lack of jurisdiction over the subject matter of Count III of the Complaint.

3

## SEVENTH DEFENSE

Defendant states that if the Plaintiff suffered injuries or damage, such injuries or damage were caused by someone for whose conduct the Defendant was not and is not legally responsible.

## EIGHTH DEFENSE

Defendant states that the Defendant did not have actual or constructive notice of any alleged wrongful conduct by any co-employees.

## NINTH DEFENSE

Defendant states that it exercised reasonable care to prevent and correct promptly any harassing behavior and the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Defendant or to avoid harm otherwise.

## TENTH DEFENSE

Any alleged harassment was not of a sexual nature, it was not unwelcome, it did not have the purpose or effect of creating a hostile or humiliating or offensive work environment, it was not severe and/or pervasive, it was not because of sex, and it did not interfere with the plaintiff's ability to perform her job.

## ELEVENTH DEFENSE

Plaintiff has failed to mitigate her damages.

## JURY DEMAND

The defendant demands a trial by jury on all issues so triable.

4

Respectfully Submitted,
Artery Cleaners Corp.,
By its attorney,

Robert M. Goldstein
BBO #630584
10 McGrath Highway
Quincy, MA  02169
Telephone:     (617) 745-4612
Facsimile:     (617) 773-2612

Dated: March 22, 2001

## CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby state that a true copy of the foregoing document has been served upon Matthew Cobb, Esq., 101 Tremont Street, Boston, MA  02108, via first-class mail, on March 22, 2001.

Robert M. Goldstein

5

7.      Defendant denies the allegations contained in Paragraph 7 of the Complaint.

8.      Defendant denies the allegations contained in Paragraph 8 of the Complaint.

9.      Defendant denies the allegations contained in Paragraph 9 of the Complaint.

10.     Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.     Defendant denies the allegations contained in Paragraph 11 of the Complaint.

12.     Defendant denies the allegations contained in Paragraph 12 of the Complaint.

13.     Defendant denies the allegations contained in Paragraph 13 of the Complaint.

14.     Defendant denies the allegations contained in Paragraph 14 of the Complaint.

### Count I

15.     Defendant restates and realleges Paragraphs 1 through 14 and incorporates them herein by reference.

16.     The Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and calls on Plaintiff to prove same.

17.     Defendant denies the allegations contained in Paragraph 17 of the Complaint.

18.     Defendant denies the allegations contained in Paragraph 18 of the Complaint.

19.     Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20.     Defendant denies the allegations contained in Paragraph 20 of the Complaint.

21.     Defendant denies the allegations contained in Paragraph 21 of the Complaint.

### Count II

22.     Defendant restates and realleges Paragraphs 1 through 21 and incorporates them herein by reference.

23.     The Defendant is without sufficient information or knowledge to form a belief as

to the truth of the allegations contained in Paragraph 23 of Plaintiff's complaint and calls

on Plaintiff to prove same.

## Count III

24.     Defendant restates and realleges Paragraphs 1 through 23 and incorporates them

herein by reference.

25.     Defendant denies the allegations contained in Paragraph 25 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Defendant states that the Plaintiff has failed to state a claim upon which relief can

be granted.

### SECOND DEFENSE

Defendant states that the action is barred by the applicable statutes of limitations.

### THIRD DEFENSE

Service of process is insufficient.

### FOURTH DEFENSE

Venue is improper.

### FIFTH DEFENSE

To the extent that discovery may so show, plaintiff's claims are barred by

estoppel, waiver and/or laches.

### SIXTH DEFENSE

Lack of jurisdiction over the subject matter of Count III of the Complaint.

## SEVENTH DEFENSE

Defendant states that if the Plaintiff suffered injuries or damage, such injuries or damage were caused by someone for whose conduct the Defendant was not and is not legally responsible.

## EIGHTH DEFENSE

Defendant states that the Defendant did not have actual or constructive notice of any alleged wrongful conduct by any co-employees.

## NINTH DEFENSE

Defendant states that it exercised reasonable care to prevent and correct promptly any harassing behavior and the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Defendant or to avoid harm otherwise.

## TENTH DEFENSE

Any alleged harassment was not of a sexual nature, it was not unwelcome, it did not have the purpose or effect of creating a hostile or humiliating or offensive work environment, it was not severe and/or pervasive, it was not because of sex, and it did not interfere with the plaintiff's ability to perform her job.

## ELEVENTH DEFENSE

Plaintiff has failed to mitigate her damages.

## JURY DEMAND

The defendant demands a trial by jury on all issues so triable.

4

Respectfully Submitted,
Artery Cleaners Corp.,
By its attorney,

Robert M. Goldstein
BBO #630584
10 McGrath Highway
Quincy, MA  02169
Telephone:    (617) 745-4612
Facsimile:    (617) 773-2612

Dated: March 22, 2001

## CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby state that a true copy of the foregoing document has been served upon Matthew Cobb, Esq., 101 Tremont Street, Boston, MA  02108, via first-class mail, on March 22, 2001.

Robert M. Goldstein

5